UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE MCDAY, et al,

                               Plaintiffs,

                                                          20-cv-233

         -vs-

STEWART ECKERT, et al,

                               Defendants.
_____


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
David J. Sleight
Joel J. Terragnoli
Assistant Attorneys General of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
Tel: (716) 853-8419
Joel.Terragnoli@ag.ny.gov

## PRELIMINARY STATEMENT

Defendants Barall, Baron, Collett, Creighton, Eckert, Hague, Konesky, Murator, Prishel, Stirk, Stubeusz, and Theal (the "Moving Defendants") submit this reply memorandum of law in further support of their partial motion to dismiss. Plaintiffs' opposition relies primarily on outdated case law and emotional appeals in a futile attempt to save their facially deficient medical malpractice and intimate association claims. At the motion to dismiss stage, the only thing that matters is the sufficiency of the claims in the complaint. As stated below, those claims should either be dismissed on jurisdictional grounds, because they do not plausibly allege a cause of action, and/or because the Moving Defendants are entitled to qualified immunity.

## ARGUMENT

I.   **PLAINTIFFS' STATE LAW MEDICAL MALPRACTICE CLAIMS AGAINST ANY DOCCS EMPLOYEES ARE BARRED BY CORRECTION LAW 24.**

Plaintiffs seems to acknowledge that Corrections Law § 24 bars their medical malpractice claims against DOCCS medical personnel, but then argue an exception should be made by reason of the Supreme Court's decision in *Haywood v. Drown*, 556 U.S. 729 (2009). Dkt. 29, at 3-5. Plaintiffs are wrong. Fully cognizant of the Supreme Court's decision in *Haywood*, this Court previously held that to the extent a plaintiff wishes to pursue a medical malpractice claim against a DOCCS employee, they are required to pursue that State law claim in the New York Court of Claims. *See Brown v. Dep't of Corr. Servs.*, 2011 U.S. Dist. LEXIS 59633, at *22-25 (W.D.N.Y. 2011) (citing *Haywood* for its discussion on Corrections Law § 24 and dismissing Plaintiff's common law claims, including his claims for medical negligence and malpractice). Thus, at a minimum, the Court lacks subject matter jurisdiction over any medical malpractice claims brought against DOCCS employees, and those claims should be dismissed with prejudice.

## II. OMH PERSONNEL EMPLOYED BY DOCCS AT DOCCS FACILITIES SHOULD BE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S STATE LAW MEDICAL MALPRACTICE CLAIMS.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Riechle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "This is so even if the court would conclude that, under the law at the later time of the court's ruling, the defendant's conduct would be found to violate the Constitution." *Lynch v. Adkley*, 811 F.3d 569, 578 (2d Cir. 2016). The term "clearly established" means "the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that [his] conduct was unlawful." *Id.* at 578-79. This analysis considers "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terrebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). While case law does not need to be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate.' *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

The Moving Defendants assert that any OMH employees working in DOCCS facilities and providing medical care to inmates in those prisons should be entitled to immunity from state law claims in Federal Court by reason of Corrections Law § 24. For purposes of this motion, and per Plaintiff's opposition (Dkt. 29, at 9), that would include Defendant Stirk and Defendant Muratore (the "OMH Defendants"), both of whom Plaintiff has alleged exercised supervisory authority on behalf of both OMH **_and_** DOCCS. Dkt. 1, ¶¶ 18-34. But if the Court holds otherwise, because the extent of the protection from state law medical malpractice claims afforded by Corrections Law § 24 to OMH employees assigned to and working with inmates

2

within DOCCS facilities is not "clearly established" law, the OMH Defendants should be entitled to qualified immunity from that claim.

The Moving Defendants were unable to find any controlling Supreme Court or Second Circuit precedent resolving the issue. And when confronted with this exact dilemma, the N.D.N.Y. stated it was a "complex issue of state law" that "appears to present a close call." *Hall v. NYS Dep't of Corr. & Cmty. Superv.*, 2015 U.S. Dist. LEXIS 25749, at *61, n.30 (N.D.N.Y. Mar. 3, 2015) (citing numerous cases discussing the issue and ultimately dismissing pendent state law claims against OMH employees where no accompanying Federal claims remained); *see also Povoski v. Artus*, 2014 U.S. Dist. LEXIS 41577, at *2, 4, & n.2 (N.D.N.Y. Mar. 28, 2014 ) (treating social worker and nurse, employed by OMH at Clinton Correctional Facility, as "DOCCS employees" for purposes of Correction Law § 24); *Brown v. Dep't of Corr. Servs.*, 2011 U.S. Dist. LEXIS 59633, at *8 (W.D.N.Y. June 11, 2011) (treating mental health unit coordinator, employed by OMH at Southport Correctional Facility, as a "DOCCS employee" for purposes of N.Y. Correction Law § 24). The S.D.N.Y. case cited by Plaintiff (*Ramsay-Nobles v. Keyser*, 2019 WL 4383187, at *35 (S.D.N.Y. Aug. 21, 2019)), considered many of the same cases as the Court in *Hall* but reached a different conclusion.

Yet until this issue is resolved by either the Second Circuit or the United States Supreme Court, it should not be considered "clearly established" for qualified immunity purposes. Thus, the OMH Defendants should be entitled to qualified immunity from Plaintiff's state law medical malpractice claim by reason of Corrections Law § 24.[1]

---

[1]     The Moving Defendants would also note that to the extent the complaint has alleged claims against medical personnel employed by OMH within DOCCS facilities, most of those claims are common law, state law causes of action. Dkt. 1 (Count I, wrongful death, Count III, medical malpractice). Plaintiff's sole Federal law claim that concerns any OMH defendant fails to plausibly allege a cause of action. *See infra* Part III.

III.    **THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A LOSS OF INTIMATE ASSOCIATION CLAIM.**

While Plaintiffs correctly note the right to intimate association is protected by the Constitution, they cite no authority for the proposition that this right extends beyond "the relationship between parents and their adult children," such as to Plaintiff Temple McDay, Dante Taylor's grandmother. Dkt. 29, at 10-11. Thus, as an initial matter, Plaintiff Temple McDay likely does not even have standing to bring an intimate association claim based on the loss of her adult grandchild. *Able v. United States*, 863 F. Supp. 112 (E.D.N.Y. 1994) (noting to have standing to bring intimate association claim, a plaintiff must first have suffered an "injury in fact," or "an invasion of a legally-protected interest"). Her claim should be dismissed.[2]

Standing issues aside, Plaintiffs incorrectly argue the "Second Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." Dkt. 29, at 11 (citing *Patel v. Searle*, 305 F.3d 130, 135 (2d Cir. 2002)). Since *Patel*, the Second Circuit has clarified that for a plaintiff bringing an interference with familial association claim under the Due Process Clause of the Fourteenth Amendment, intent **_is_** a necessary element. *Gorman v. Renssalaer Cty.*, 910 F.3d 40, 47-48 (2d Cir. 2018) (discussing and distinguishing *Patel* and *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999), both of the cases relied on by Plaintiffs). Because the complaint is devoid of any allegations of such intent — Plaintiffs' opposition bends over backwards to argue why pleading intent was unnecessary (Dkt. 29, at 12-14) — Plaintiffs have not plausibly alleged a due process intimate association claim.

_____

[2]    At least one Court in this circuit has also questioned whether this right extends to parents of independent adult children (like Dante Taylor) who live separately from his parents. *See, e.g.*, *Pizzuto v. Cnty. of Nassau*, 240 F. Supp. 2d 203 (E.D.N.Y. 2002)

The sole exception to the intent requirement discussed in *Gorman* is where a plaintiff's right to intimate association claim is brought under the First Amendment – i.e. where defendants allegedly interfered with a familial relationship in retaliation for a family member's decision to exercise their First Amendment rights. *Gorman*, 910 F.3d at 47-48. But while the complaint makes a conclusory attempt to invoke the First Amendment in passing (Dkt 1, ¶¶ 287-288), the complaint is utterly devoid of any allegations claiming the defendants took any retaliatory action towards Plaintiffs in response to Dante Taylor exercising his First Amendment rights. Thus, the complaint has not plausibly alleged a First Amendment intimate association claim either.

## IV.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' INTIMATE ASSOCIATION CLAIM.

The Moving Defendants are also entitled to qualified immunity from Plaintiff's intimate association claim for two reasons: First, it is not clearly established law that this right survived Dante Taylor's incarceration. *See supra* Part II (discussing qualified immunity generally). This particular issue has been an unsettled and murky area of law ever since the Supreme Court's decision in *Overton v. Bazzetta*, 539 U.S. 126 (2003). There, the Supreme Court expressly questioned to what extent that right survived an inmate's incarceration, though it ultimately declined to resolve the issue. *See id.* at 131-32. Since then Courts across the country have confirmed that the boundaries of this right with respect to inmates remains up in the air.[3] Thus, because the extent of the Plaintiffs' right to intimate association with Dante Taylor following his

---

[3]    *See, e.g.*, *Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 Fed. App'x 890 (11th Cir. 2015) (discussing *Overton* and the right to intimate association for incarcerated persons); *Flow-Sunkett v. Diaz*, 2020 U.S. Dist. LEXIS 42474, at *7-8 (E.D. Cal. Mar. 11, 2020) (discussing status of right and citing to *Overton*); *Cordova v. City of Albuquerque*, 2013 WL 12033330, at *7-8 (D. New Mexico) (dismissing intimate association claim brought by incarcerated plaintiff on qualified immunity grounds) *Blanton v. Caruso*, 2011 U.S. Dist. LEXIS 4888, at *18-19 (W.D. Mich. Jan. 19, 2011) ("The Supreme Court, however, has not yet determined whether and to what extent any right to intimate association survives incarceration.").

incarceration is still not clearly established law, the Moving Defendants should be entitled to qualified immunity from claims invoking this ill-defined right.

Second, even assuming Plaintiffs did retain their right to intimate association with Dante Taylor following his incarceration, and recognizing that the Second Circuit's Dec. 6, 2018 decision in *Gorman* post-dated the events described in the complaint, the law on whether intent to interfere with the familial relationship was a necessary element of an Constitutional intimate association claim was arguably not "clearly established," meaning the Moving Defendants should still be qualified immunity. Again, qualified immunity will attach if the conduct at issue: (1) is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not 'clearly established' ***at the time*** of the conduct; or (3) the officials action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken. *Cox v. Cronin*, 2016 U.S. Dist. LEXIS 36549, at *20 (W.D.N.Y. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2013)).

Plaintiffs' intimate association claim fails under this analysis. The applicable legal standard is whether a reasonable person in the Moving Defendants' position would have believed his or her conduct violated the Plaintiffs' right to familial association – i.e. has the complaint plausibly alleged that the defendants intentionally interfered with Darlene and/or Temple McDay's relationship with Dante Taylor, as distinguished from intentionally violating Dante Taylor's rights. Yet numerous cases pre-dating the Second Circuit's decision in *Gorman* found it was not settled law that unintentional conduct that indirectly affected a familial relationship could support a loss of intimate association claim. *See, e.g.*, *Lara-Grimaldi v. Cnty. of Putnam*, 2018 U.S. Dist. LEXIS 54686, at *47-49 (S.D.N.Y. 2018) ("There is no plausible allegation that [ ] Defendants intentionally interfered with Plaintiff's relationship with Grimaldi (as

distinguished from intentionally violating Grimaldi's rights), and anything less than conduct intentionally directed at the familial relationship was not clearly established as unlawful within the Second Circuit," and dismissing that claim on qualified immunity grounds); *Ranta v. City of New York*, 2015 U.S. Dist. LEXIS 137178, at *17-*19 (E.D.N.Y. 2015) (same); *McGarr v. City of Peekskill*, 975 F. Supp. 2d. 377, 390-92 (S.D.N.Y. 2013) (same). Thus, if the issue of whether intent had to be alleged to plausibly state an intimate association claim was unsettled at the time of the allegations in the complaint, the Moving Defendants should be entitled to the benefit of the doubt that unintentionally interfering with a familial relationship was prohibited by the Plaintiffs' right to intimate association with Dante Taylor. Thus, qualified immunity should preclude any such claims.

<u>**CONCLUSION**</u>

Therefore, the Moving Defendants respectfully request the Court dismiss Plaintiff's second and fourth causes of action, as stated in the complaint (Dkt. 1), with prejudice.

DATED:      Buffalo, New York
            July 27, 2020

                                        LETITIA JAMES
                                        Attorney General of the
                                        State of New York
                                        Attorney for Defendants

                                        BY: /s/ *Joel J. Terragnoli*
                                        David J. Sleight
                                        Joel J. Terragnoli
                                        Assistant Attorney General of Counsel
                                        Main Place Tower, Suite 300A
                                        350 Main Street
                                        Buffalo, NY 14202
                                        (716) 853-8419
                                        Joel.Terragnoli@ag.ny.gov