UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE McDAY, individually and as Executrix
of the Estate of DANTE TAYLOR, and TEMPLE
McDAY,

                              Plaintiffs,

           – against –

STEWART ECKERT, Superintendent, Wende
Correctional Facility, et al.,

                              Defendants.

**No. 1:20-cv-00233-JLS-JJM**

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ...............................................................................................ii-iii

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND...................................................................................................1

STANDARD OF REVIEW .....................................................................................................4

ARGUMENT............................................................................................................................5

       I.      THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' MEDICAL MALPRACTICE CLAIMS AGAINST DEFENDANT DIREINZO TO THE EXTENT SHE IS EMPLOYED BY OMH ..................................................................................................................................5

       II.     PLAINTIFFS PROPERLY STATE A "LOSS OF INTIMATE ASSOCIATION" CLAIM AGAINST ALL DEFENDANTS. ............................................................6

             1.     Plaintiffs suffered a cognizable injury under 42 U.S.C. § 1983 when they lost their constitutional right to a familial relationship. ...................... 6

             2.     Plaintiffs need not prove that Defendants intended to interfere with their protected relationship with Dante. ............................................................. 7

       III.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' "LOSS OF INTIMATE ASSOCIATION" CLAIM......................11

CONCLUSION.......................................................................................................................12

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Anderson v. Creighton*,
     483 U.S. 635 (1987).................................................................................................... 12

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)..................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)..................................................................................................... 4

*Duchesne v. Sugarman*,
     566 F.2d 817 (2d Cir. 1977)........................................................................................ 9

*Gorman v. Rensselaer County*,
     910 F.3d 40 (2d Cir. 2018)........................................................................................ 10

*Greene v. City of New York*,
     675 F. Supp. 110 (S.D.N.Y. 1987)............................................................................. 10

*Hunter v. Bryant*,
     502 U.S. 224 (1991).................................................................................................... 12

*J.S. v. Attica Cent. Sch.*,
     386 F.3d 107 (2d Cir. 2004)......................................................................................... 4

*Malley v. Briggs*,
     475 U.S. 335 (1986).................................................................................................... 12

*Moore v. East Cleveland*,
     431 U.S. 494 (1977)...................................................................................................... 9

*Overton v. Bazzetta*,
     539 U.S. 126 (2003).................................................................................................... 11

*Patel v. Searle*,
     305 F.3d 130 (2d Cir. 2002)................................................................................... 6, 11

*Pettaway v. National Recover Solutions, LLC.*,
     955 F.3d 299 (2d Cir. 2020)......................................................................................... 4

*Ramsay-Nobles v. Keyser*,
     No. 16 CIV. 5778, 2019 WL 4383187 (S.D.N.Y. Aug. 21, 2019) ................................. 5

*Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn*,
     373 U.S. 746 (1963)...................................................................................................... 4

*Roberts v. U.S. Jaycees*,
      468 U.S. 609 (1984)..................................................................................................... 6, 9

*Wyatt v. Cole*,
      504 U.S. 158 (1992)......................................................................................................... 7

**Statutes & Rules**

42 U.S.C. § 1983............................................................................................................ 6

Mental Hygiene Act § 7.07............................................................................................ 5

Mental Hygiene Act §7.01............................................................................................. 5

New York Correction Law § 5....................................................................................... 5

## PRELIMINARY STATEMENT

The Court has been well apprised of the devastating events giving rise to this action.  On October 7, 2017, Plaintiffs Darlene and Temple McDay forever lost their son and grandson, Dante Taylor, to an entirely preventable death.  That morning, less than a day after correction officers beat Dante almost beyond recognition, he was found unresponsive in the infirmary of the Wende Correctional Facility.  He was pronounced deceased from an apparent suicide shortly thereafter.  He was 22 years old.

Plaintiffs bring this suit against the individuals who each had a duty to care for Dante while he was incarcerated at Wende, and who failed in carrying out their duties despite the many opportunities to act to protect Dante's life.

Five Defendants[1]—four correction officers and one nurse – have moved to dismiss certain of Plaintiffs' claims, arguing that Plaintiffs are not entitled to bring a claim for a loss of intimate association against them, and, with respect to the nurse, of malpractice.  As set forth more fully below, Defendants' arguments do not survive scrutiny, and their motion to dismiss should be denied, or, in the alternative, dismissed as moot.

## FACTUAL BACKGROUND

Dante Taylor was born to Plaintiff Darlene McDay on April 29, 1995 in Medford, New York.  Compl. ¶ 39.  He left Medford, and his family, in September 2013 to join the United States Marine Corps.  *Id*. ¶ 45.  Just under a year later, Dante was arrested and booked at Suffolk County Jail, *id*. ¶ 49, and was later transferred to Wende Correctional Facility.  *Id*. ¶ 63.

At Wende, Dante struggled with and was treated for ongoing mental health illness.  Upon

---

[1] For the purpose of this memorandum, "Defendants" refers to the individual Defendants who moved to dismiss certain claims against them at Dkt. 41 (Defs.' Mot. to Dismiss), namely Defendants Dirienzo (spelled DiReinzo in Defendants' motion papers), Freeman, Lambert, Maldonado, and White.

1

information and belief, treating Defendant Dirienzo was a registered nurse assigned to Wende at all relevant times. *Id.* ¶ 27.

In addition to his struggle with mental illness, Dante was the target of harassment and violence by Wende correction officers. On October 17, 2016, shortly after arriving at Wende, Dante underwent a mental health evaluation with Defendant Mancini. *Id.* ¶ 67. Defendant Mancini noted in Dante's Comprehensive Suicide Risk Assessment Form that a possible trigger for Dante to engage in future suicidal behavior included "further harassment by other inmates or staff." *Id.* ¶ 75 (internal quotation marks omitted). Dante was admitted to overnight suicide watch immediately after this evaluation. *Id.* ¶ 80. Nearly a year later, Dante's fear of staff harassment persisted. On September 14, 2017, Defendant Mancini completed another Comprehensive Suicide Risk Assessment Form. *Id.* ¶ 130. There, Defendant Mancini noted that "Possible triggers to future suicidal behavior could be harassment by inmates or staff, further Keeplock or SHU sanctions or being overwhelmed by sentence of life without parole." *Id.* ¶ 132.

Dante's fear of staff harassment was well founded. In the year that Dante was incarcerated at Wende, he reported to Plaintiff Darlene McDay that correction officers frequently subjected him to demeaning taunts, frequently used physical violence on him, and sometimes deprived him of shower use. *Id.* ¶ 200-03. Per Defendants' records, these correction officers' acts exacerbated Dante's mental illness.

The night of October 6, 2017, Defendants Freeman, Lambert, Maldonado, and White, among others DOCCS employees, arrived at Dante's cell in response to a medical emergency. *Id.* ¶¶ 174, 177. Defendants Lambert, Maldonado, and White then viciously beat Dante's head, face and body with their batons, fists, and feet, and batons. *Id.* ¶ 178. Men confined in the adjoining cells heard Mr. Taylor screaming in pain, the sounds of sticks hitting his body, and

2

other sounds of an attack. *Id.* ¶ 179.  Defendants then bound the unconscious Dante's hands and feet behind his back with zip ties, carried him to the top of a stairway, and threw him down the stairs head first. *Id.* ¶ 180-83.  Defendant Freeman stood by and did nothing to intervene or otherwise prevent this horrific assault. *Id.* ¶ 184.  That night, by beating and assaulting Dante, Defendants acted exactly in accordance with one of the known suicide triggers that Dante's treatment providers repeatedly identified in the year that Dante was incarcerated at Wende.

That next morning, October 7, 2017, after he returned from an outside hospital where he was treated for injuries caused by the beating, Dante was found unresponsive after tying a sheet around his neck and hanging himself.  Just minutes before he was found, Dante had asked to speak to his mother on the phone.[2]  *Id*. ¶¶ 221, 240, 243.  Defendants denied Dante's request, stating that he was not allowed to contact family because he was on solitary housing status. *Id*. ¶ 222.  In this moment, just before he took his life, Dante was informed that he was facing a prospective sanction wherein which he would be confined under the supervision of Wende correction officers who had engaged in brutal behavior against him and would be denied visits and phone calls with his mother and grandmother for the foreseeable future, *id*. ¶ 225.  Minutes later, he was dead.

Dante was found unresponsive in the infirmary room where he was being detained at 10:20 a.m., with a sheet tied around his neck. *Id.* ¶ 243.  He was transported to Sisters of Charity Hospital and pronounced dead at 11:51 a.m. *Id.*  ¶¶ 245-47.

Plaintiffs initiated this action, both on their own behalf and on Dante's behalf, on

---

[2] As documented by Defendants, one of the few proven methods of combating the symptoms of Dante's serious mental illness was communication with his family via visits, phone calls and letters. *See id*. Figure 1 (depicting a happy moment between Plaintiff Darlene McDay and Dante during a 2017 visit at Wende), ¶ 123 (Defendant Mancini recorded that "serving Keep Lock time is a trigger to [Mr. Taylor's] suicidal thoughts" and that the restriction of family communication to letters was "difficult" for him); *id*. ¶¶ 164-65 (Defendant Konesky noted that Dante was looking forward to a visit from his family but also had sanctions pending against him).

February 24, 2020. Dkt. 1.  Defendants filed a motion to dismiss some but not all of Plaintiffs'

claims on July 24, 2020.  Dkt. 42.  On August 7, 2020, Plaintiffs filed a stipulation in which all

required parties consented to Plaintiffs' proposed filing of a First Amended Complaint. Dkt. 49.

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), "the court must accept as true

all material factual allegations in the complaint, but [it will] not draw inferences from the

complaint favorable to plaintiffs." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Moreover, on a Rule 12(b)(1) motion, the court "may consider affidavits and other materials

beyond the pleadings to resolve the jurisdictional issue, but . . .  may not rely on conclusory or

hearsay statements contained in the affidavits." *Id.* at 110.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the allegations contained in a

complaint must all be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and all

inferences must be made in favor of the plaintiff.  *See, e.g.*, *Retail Clerks Intern. Ass'n, Local

1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746 (1963).  A Rule 12(b)(6) motion may not be

granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is

plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.

When faced with an amended complaint during the pendency of a motion to dismiss, "the

district court has the option of either denying the pending motion as moot or evaluating the

motion in light of the facts alleged in the amended complaint." *Pettaway v. National Recover

Solutions, LLC.*, 955 F.3d 299, 303-04 (2d Cir. 2020).

4

**ARGUMENT**

I.   **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' MEDICAL MALPRACTICE CLAIMS AGAINSTDEFENDANT DIREINZO TO THE EXTENT SHE IS EMPLOYED BY OMH.**

Plaintiffs have amended their Complaint and no longer assert malpractice claims against Department of Corrections and Community Supervision ("DOCCS") employees.  Dkt. 49.

However, this Court maintains subject matter jurisdiction over Defendant DeRienzo to the extent she is an employee of the New York State Office of Mental Health ("OMH"). Correction Law § 24 applies only to "any officer or employee of the [New York State Department of Corrections and Community Supervision]."  Dkt. 22-1. at 4; *see generally* New York Correction Law §§ 5 *et seq*.  It does not extend to OMH, which is governed under separate state statute.  *See* Mental Hygiene Act §§7.01, 7.07 (creating OMH and delineating OMH responsibilities).  Thus, if Defendant Dirienzo is an employee of OMH, even if she was assigned to work at a DOCCS facility, she is not entitled to immunity under Correction Law § 24.  *See, e.g.*, *Ramsay-Nobles v. Keyser*, No. 16 CIV. 5778, 2019 WL 4383187, at *35 (S.D.N.Y. Aug. 21, 2019) (denying Section 24 immunity to OMH employee based on "the plain language of the statute and the fact that neither state courts nor the Second Circuit have clearly extended its protection to non-DOCCS employees") (collecting cases). Because discovery has not yet commenced in this case, Plaintiffs are unable to assert with certainty whether Defendant Dirienzo is formally an employee of OMH or of DOCCS.  Plaintiffs respectfully seek leave of the Court to conduct limited discovery regarding Defendant Dirienzo's employer for the purpose of determining the Court's subject matter jurisdiction over Plaintiffs' medical malpractice claim against her.

## II.   PLAINTIFFS PROPERLY STATE A "LOSS OF INTIMATE ASSOCIATION" CLAIM AGAINST ALL DEFENDANTS.

Plaintiffs have been permanently deprived of their right to associate with Dante.  Plaintiff

Darlene McDay will no longer receive letters from her son.  Plaintiff Temple McDay will no

longer hear her grandson's voice on the phone.  Both Plaintiffs will not have the opportunity to

develop any kind of relationship with Dante in the coming years.  Defendants argue that these

deprivations do not give rise to a claim for violating Plaintiffs' constitutional rights because they

did not act for the purpose of interfering with Plaintiffs' relationship with Dante.  They

misunderstand their burden here.

### 1.   Plaintiffs suffered a cognizable injury under 42 U.S.C. § 1983 when they lost their constitutional right to a familial relationship.

Defendants concede that "[t]he right to intimate association in the context of familial

relationships is protected by the substantive due process component of the Fourteenth

Amendment" and includes "the relationship between parents and their adult children."  Dkt. 22-1

at 5; *see also Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) (recognizing constitutional right to

intimate association); *Patel v. Searle*, 305 F.3d 130, 136 (2d Cir. 2002), *cert denied sub nom*

*Searles v. Patel*, 538 U.S. 907 (2003) (parent-child relationships, even when the parent and child

reside separately, are "of such an intimate nature as to warrant the highest level of constitutional

protection").  Because intimate familial association is a protected constitutional right, the

deprivation of that right is an actionable injury under 42 U.S.C. § 1983 (state actor who

"subjects, or causes to be subjected, any citizen of the United States . . .  to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law").  Section 1983 provides any party with a cause of action so long as

that party suffered a constitutional injury.  Thus, the party injured by a constitutional deprivation

need not be limited to the person whose rights were violated.  If an individual has been *injured* as

6

the result of a violation of another person's rights, that individual may state a claim for that

injury under Section 1983.  Indeed, Section 1983 was passed for the very purpose of (1)

deterring violations of rights by state actors; and (2) compensating "persons injured" by such

violations.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  And where the constitutional violation has

caused death, those persons injured necessarily includes the decedent's close family members.

Here, Dante suffered an unnecessary death when Defendant Dirienzo, an individual

charged with caring for his health, was indifferent to her duties to him; when Defendants

Lambert, Maldonado, and White brutally assaulted him; and when Defendant Freeman failed to

intervene to stop such an assault.  Because of Defendants' actions, Dante not only lost his life,

but Plaintiffs, his family, lost their right to maintain a close familial relationship with him.  That

loss is a cognizable injury under Section 1983 and gives rise to a cause of action for Defendants'

deprivation of Plaintiffs' relationships with Dante.

> **2.      Plaintiffs have sufficiently alleged that Defendants interfered with
> their protected relationship with Dante.**

Defendants argue that Plaintiffs must allege that individual Defendants acted with an

intent to interfere in the relationship between Plaintiffs and Dante in order to state a colorable

claim, and that Plaintiffs have failed to do so.  This argument fails because Plaintiff's allegations

are sufficient at this stage of the proceedings.

Plaintiffs have an established right to intimate association, which has been substantially

burdened, see *Adler v. Pataki*, 185 F.3d 35, 43-44 (2d Cir. 1999), as well as intentionally

interfered with by Defendants' unlawful conduct.  Plaintiffs have sufficiently pled that

Defendants' conduct resulted in a "permanent deprivation" of a protected familial relationship,

an allegation which is sufficient to state a cause of action for infringement of the right to intimate

association.  *Patel*, 305 F.3d at 137; see also *Adler*, 185 F.3d at 44 (noting that State's action

7

"fully accepts" the continued existence of intimate relationship, but still interferes with it).

Plaintiffs specifically allege that Defendants "*denied Mr. Taylor access to . . . his family.*" Compl. ¶ 7 (emphasis supplied). Plaintiffs allege that they were in frequent communication with Dante by phone and mail, *see* Compl. ¶¶ 123, 164-65, and Plaintiff Darlene McDay had been in direct communication with DOCCS and OMH employees regarding Dante's welfare at Wende. Compl. ¶¶ 125-29 (recounting conversation between Plaintiff Darlene McDay and Defendant Mancini), ¶¶ 204-05 (Plaintiff Darlene McDay reported to Wende administrators that Wende officers repeatedly engaged in abusive behavior against Dante), ¶ 221 (Dante asked to speak to Plaintiff Darlene McDay on the phone shortly before his death but was denied contact with family). Plaintiffs also allege that Defendants were on notice that this denial of contact would exacerbate Dante's mental illness and suicidality, because Dante and Plaintiffs maintained an active, visible and strong relationship. Plaintiffs finally allege that shortly after Dante requested to speak with his family but was denied a call to them, he committed suicide. In short, Plaintiffs each maintained a known and important close familial relationship with Dante during his incarceration at Wende, and they each suffered a permanent loss of relationship due to Defendants' alleged failures, acts, and omissions.

Defendants' misconduct towards Dante, in the face of multiple documented warning signs that he was at high risk of suicide, and multiple concerned calls to DOCCS and OMH officials by Plaintiff Darlene McDay complaining of correction officer violence against Dante, were likely to have the effect of ending Plaintiffs' intimate relations with their son and grandson, and did have that effect. Defendants were indifferent to Dante's risk of suicide in the face of a brutal assault by staff, and, by extension, were indifferent to the losses to his family that would stem from his death. These facts are sufficient to allege that Defendants were on notice that

Dante's loss of life would deprive his family of their right to associate with him; that they

intended to do so; and that they succeeded in doing so.

The devastation of this loss cannot be overstated.  As the Supreme Court recognized in

*Roberts*, intimate familial relations are "a fundamental element of personal liberty," "central to

any concept of liberty" and necessarily dependent upon others.  468 U.S. at 618-19.  Indeed,

intimate familial associations are protected not out of deference to an established social structure

but because they form a central and irreplaceable role in an individual's human existence.

*Moore v. East Cleveland*, 431 U.S. 494 (1977) (plurality opinion).  These associations do not and

cannot exist in a vacuum; each individual's existential right to intimate familial relations is

inherently expressed through the actual exercise of that relationship.  Causing a person's death

will necessarily and very directly affect the liberty rights of family members who have intimate

associations with the victim. Thus, interference with an individual's familial relations is a given

when the misconduct is so severe that it results in the death of an individual's family member.

Defendants need not have acted affirmatively in causing Dante to lose his life to be liable

for the deprivation of Plaintiffs' relationship with Dante.  Their deliberate indifference to his

serious medical needs, and their vicious assault, encompasses an indifference to the value of his

life and to those persons who shared emotional ties to that life—in this case, his mother and

grandmother.  The act of taking someone's life and in effect, removing that person from the

world, is no less direct an interference with associational rights than the removal of children from

a home found protected in *Duchesne v. Sugarman*, 566 F.2d 817, 833 (2d Cir. 1977) (mother and

children have claim upon state's unlawful removal of children from home).  When death occurs

through a state actor's unlawful conduct, those people intimately involved with that person suffer

a loss for which § 1983 should provide a remedy. *Greene v. City of New York*, 675 F. Supp. 110

(S.D.N.Y. 1987) (finding that illegitimate children of father who was shot by police officer had §

1983 claim for wrongful deprivation of parenthood, citing to legislative history and case law

supportive of the claim).

Defendants' anticipated reliance on *Gorman v. Rensselaer County*, 910 F.3d 40 (2d Cir.

2018), is misplaced.  In *Gorman*, a former corrections officer brought a Section 1983 action

against the county and multiple employees of the Sheriff's Department.  The plaintiff's sister and

the plaintiff's former co-worker, a sergeant, had ended their lengthy romantic relationship,

causing alleged retaliation directed at plaintiff on the job.  Plaintiff brought a claim that the co-

worker had intentionally interfered with his relationship with his sister in violation of his right to

intimate association under the Fourteenth Amendment.  The prime example of such interference

was that the co-worker would go "back and forth" between plaintiff and his sister, telling her to

"you gotta control your brother and things like that." *Id.* at 48.  The Second Circuit concluded

"that any impairment of the sibling relationship was at best the indirect and incidental result of

[the sergeant's] conduct." *See id*.  *Gorman* stands for the proposition that a workplace dispute

arising from the end of a romantic relationship—in which the relationship between two siblings

incidentally suffered some tension—could not sustain a claim that defendants had intentionally

infringed on plaintiff's right to intimate association with his sister under the Due Process Clause.

But the nature of the "intentional" conduct at issue in *Gorman* is far removed from the

allegations of Defendants' intentional violence and neglect in this case.  Here, Defendants'

misconduct in assaulting Dante—an individual with well-documented suicide risks including

violence from staff and, in the case of Defendant Freeman, failing to intervene or otherwise

prevent the assault—resulted in the loss of Dante's life and the permanent deprivation of

Plaintiffs' relationship with him.  By causing his death, Defendants necessarily ended Plaintiffs'

relationship with Dante.  The loss of Plaintiffs' relationship with Dante was not "the indirect and incidental result" of Defendants' conduct: it was the natural, foreseeable, and therefore intended result.  By causing the death of a person in prison through deliberately indifferent acts and acts of violence, that person's family will be denied a future relationship with him, in a direct, one-to-one correlation of cause and effect.  Defendants' wanton and vicious assault, lack of mental health care, and total disregard for Dante's life caused his death; and by their conduct, ended Plaintiffs' relationships with him, which were inextricably linked to that life.  At the pleading stage, these allegations are sufficient to state a claim.

## III.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' "LOSS OF INTIMATE ASSOCIATION" CLAIM.

Defendants secondarily argue that they are entitled to qualified immunity from Plaintiffs' "loss of intimate association" claims. They assert that the contours of the constitutional right at issue were not sufficiently defined in after the Supreme Court's decision in *Overton v. Bazzetta*, 539 U.S. 126 (2003), but they completely ignore that the right was established clearly by the Supreme Court in its 1984 decision in *Roberts* and the Second Circuit in *Patel*.  Indeed, in 1996 the *Patel* Court squarely found that the right to intimate association was sufficiently clear in 1996 to deny the defendants in that case qualified immunity on their motion for judgment on the pleadings, even after the child had reached majority and left the familial home. 305 F.3d at 139. Looking to the particular factual allegations in *Patel*, the Court noted that there were preceding cases which held certain police tactics to be unconstitutional, and that even a murder investigation did not erode "the critical buffers between the individual and the power of the State." *Patel*, 305 F.3d at 137.

To be clearly established, a right must have been recognized in a particularized rather than a general sense, but not necessarily within the identical fact pattern. In other words, the

11

"contours" of the right asserted here must have been delineated with sufficient clarity "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is because "[t]he qualified immunity standard 'gives ample room for mistaken judgments,'" protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, Defendants cannot rest on such a defense because in the period of 2016-2017, it was clearly established that Plaintiffs had a right to intimate familial association that was protected from state interference. *Adler*, *supra*; *Patel*, *supra*. Defendants' reliance on *Overton* for the contention that an individual does not have a clearly established right to intimate association, simply because he or his family member is incarcerated, is misplaced. The right to intimate association is protected by the First, Fifth, and Fourteenth Amendments, as recognized at common law, and the Supreme Court has chosen not to disturb that right. Accordingly, Defendants' argument that they are entitled to qualified immunity should be rejected.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) should be denied or, in the alternative, dismissed as moot.

Dated: August 7, 2020                    Respectfully submitted,
      New York, New York

                                     EMERY CELLI BRINCKERHOFF
                                     ABADY WARD & MAAZEL LLP

                                        /s/ Katherine Rosenfeld
                                     Katherine Rosenfeld
                                     Marissa R. Benavides

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiffs Darlene and Temple
McDay*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2020, a true and correct copy of the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss was filed with the Court and served on all counsel of record via operation of the Court's CM/ECF system.

       /s/ Katherine Rosenfeld
       Katherine Rosenfeld

*Attorney for Plaintiffs Darlene and Temple McDay*

14