UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARLENE McDAY, individually and as Executrix of
the Estate of DANTE TAYLOR,
and TEMPLE McDAY,

      Plaintiffs,

           **AFFIRMATION IN SUPPORT OF**
           **DEFENDANT'S FED.R.CIV.P. 12(b)(6)**
           **MOTION TO DISMISS PLAINTIFF'S**
           **AMENDED COMPLAINT**

– against –           No. 1:20-cv-00233

STEWART ECKERT, Superintendent, Wende Correctional Facility;
MARGARET STIRK, Unit Chief, Wende Correctional Facility;
KRISTEN MURATORE, Forensic Program Administrator, Wende Correctional Facility;
SERGEANT TIMOTHY LEWALSKI;
SERGEANT SCOTT LAMBERT;
CORRECTION OFFICER McDONALD;
CORRECTION OFFICER FREEMAN;
CORRECTION OFFICER THOMAS WHITE;
CORRECTION OFFICER J. HORBETT;
CORRECTION OFFICER D. JANIS;
CORRECTION OFFICER MELVIN MALDONADO;
CORRECTION OFFICER MARK COLLETT;
CORRECTION OFFICER GREIGHTON;
CORRECTION OFFICER THEAL; CORRECTION OFFICER BARON;
JILL OLIVIERI, R.N.;
DIANE DIRIENZO, R.N.;
LISA PRISHEL, R.N.;
DEBRA STUBEUSZ, M.D.;
ANJUM HAQUE, M.D.;
BERTRAM BARALL, M.D.;
KELLY KONESKY, LCSW-R;
DANA MANCINI, SW2;
JOHN and JANE DOES 1-10;
and JOHN and JANE SMITH 1-14,

      Defendants.

---

5

CHERYL MEYERS BUTH, hereby affirms pursuant to 18 U.S.C. §1746 and states under penalty of perjury:

1. I am an attorney duly admitted to practice before the United States District Court for the Western District of New York and I maintain an office at MEYERS BUTH LAW GROUP pllc, 21 Princeton Place, Suite 105, Orchard Park, New York 14127.

2. I represent Sergeant Timothy Lewalski who is named as a defendant in the above-captioned lawsuit.

## NATURE OF MOTION & SUMMARY OF RELIEF REQUESTED

3. This is a civil rights lawsuit brought by the mother and grandmother of former New York State Department of Corrections and Community Supervision ("NYSDOCCS") inmate Dante Taylor. Mr. Taylor, while serving a life sentence, hung himself with a bedsheet on October 7, 2017, in the infirmary at Wende Correctional Facility.

4. We bring this partial motion to dismiss pursuant to Fed.R.Civ.Pro.12(b)(6) as to two of Plaintiff's claims for relief, both alleged as violations of 42 U.S.C. §1983: the first cause of action which alleges "Deliberate Indifference to Plaintiff's Serious Medical Needs/Substantive Due Process" and the second cause of action which alleges "Loss of Intimate Association". As to the Third cause of action, "Excessive Force", at least insofar as alleged against Sergeant Lewalski, we concede it is framed so as to minimally state at least a colorable claim.

5. With regard to the deliberate indifference claim, Sergeant Lewalski is entitled to qualified immunity; Plaintiffs' Amended Complaint fails to plead any factual conduct on the part of Sergeant Lewalski that would enable the court to conclude that he is liable in any way for Mr. Taylor's death.

6. With regard to the loss of intimate association claim, Plaintiffs fail to allege a legally cognizable claim.

6

## PROCEDURAL HISTORY

7. Plaintiffs, by their counsel, initiated this action on February 24, 2020 through the filing of a Complaint (Dkt #. 1).

8. In response to the Complaint, the Attorney General's Office brought motions to dismiss on behalf of certain defendants pursuant to Fed.R.Civ.P. 12 (Dkt # 22, 42). Following a stipulation executed by all parties (Dkt # 49), Plaintiffs filed an Amended Complaint on August 14, 2020 (Dkt# 57). Plaintiffs granted counsel for Sergeant Lewalski an extension to answer or move against the Amended Complaint such that the instant motion is timely filed.

## THE AMENDED COMPLAINT

9. The Amended Complaint seeks damages for civil rights violations based on (1)deliberate indifference to Mr. Taylor's medical needs (all defendants), (2)loss of intimate association(all defendants), (3)excessive force (correctional officer defendants) and (4) medical malpractice (medical defendants).

10. As the Amended Complaint relates to Sergeant Lewalski, on October 6th-7th, 2017 he is generally alleged to have been aware of Mr. Taylor's use of synthetic drugs, restrained him using excessive force and failed to take steps to ensure his safety while Mr. Taylor was subject to his control.

11. Plaintiffs made the following 18 averments all having to do with a single use of force incident which constitutes the only basis for their claims against Sergeant Lewalski:

> "172. On October 6, 2017, at around 10:20 pm, Mr. Taylor began having seizures in his cell related to K2 drug use.
>
> 173. Multiple people who were in cells near Mr. Taylor alerted Wende staff that Mr. Taylor was suffering a medical emergency.

7

174. On information and belief, a group of COs and at least two sergeants, led by Defendant Lewalski and including Defendants Freeman, Lambert, Maldonado, and McDonald, arrived at Mr. Taylor's cell.

175. On information and belief, Defendant Freeman opened Mr. Taylor's cell door for the responding officers.

176. On information and belief, several officers entered Mr. Taylor's cell, including Defendants Lambert, Lewalski, Maldonado, and McDonald.

177. Use of force documents prepared by DOCCS staff state that it was Defendants Lewalski, Horbett, White and Janis who entered Mr. Taylor's cell.

178. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald began to beat Mr. Taylor's head, face and body with their batons, fists, and feet.

179. Men in the adjoining cells heard Mr. Taylor screaming in pain, the sound of sticks hitting his body, and other sounds of an attack.

180. Defendants beat Mr. Taylor until he was unconscious.

181. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald then "hog tied" an unconscious Mr. Taylor by binding his hands and feet with zip ties, causing small lacerations to his wrists and ankle areas.

182. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald carried a motionless and silent Mr. Taylor by his biceps and ankles, face down to the floor, out of his cell and to the top of a stairway leading down from the second floor of the cellblock to the first floor.

183. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald threw Mr. Taylor down the stairs head first.

184. While Defendants Lambert, Lewalski, Maldonado, and McDonald beat Mr. Taylor, Defendant Freeman stood by and failed to intervene to protect Mr. Taylor.

185. Defendants Lambert, Lewalski, Maldonado, and McDonald's beating of Mr. Taylor was vicious in scope and went far beyond the level of force needed to restrain a physically incapacitated person.

> 186. Mr. Taylor was taken to the Wende infirmary, where his injuries were photographed.
>
> 187. Mr. Taylor had suffered multiple blunt force injuries to his head, neck, torso and extremities.
>
> 188. To cover up their own vicious assault, Defendants later claimed that Mr. Taylor's injuries were self-inflicted and that he had banged his head against his cell wall.
>
> 189. At the Wende infirmary, medical staff recorded that Mr. Taylor had a large hematoma under right eye; the right side of his face was swollen and had ecchymosis; as well as other injuries to his face and body."[1]

12.  Sergeant Lewalski concedes that, assuming the truth of the allegations as this Court must on a R.12(b)(6) motion to dismiss, the Plaintiffs set forth sufficient facts to make out at least a plausible claim for the use of excessive force under 42 U.S.C.§1983 (Plaintiffs' third claim for relief).

13.  However, with respect to the First cause of action for "Deliberate Indifference to Serious Medical Needs/Substantive Due Process" and the Second cause of action for "Loss of Intimate Association", Plaintiffs fail to plead sufficient factual allegations to allow a trier of fact to find the elements of those claims[2].

**DISMISSAL OF FIRST CAUSE OF ACTION ALLEGING DELIBERATE INDIFFERENCE TO INMATE'S MEDICAL NEEDS**

14.  Plaintiffs allege that the medical defendants as well as the defendant correctional officers were all deliberately indifferent to Mr. Taylor's medical needs.

15.  Mr. Taylor was taken to the infirmary on October 5th after illegally ingesting K2.

---

[1] Elsewhere in the Amended Complaint Plaintiffs mention Sergeant Lewalski in general averments. For example, Paragraph 35, Plaintiffs allege that numerous corrections officers, including Sergeant Lewalski, "were DOCCS officers working at Wende, who participated in and/or had knowledge of and/or filed to intervene in the assault of Mr. Taylor on October 6, 2017." and Paragraph 37 asserts that the officers "were acting under color of state law."

[2] Plaintiffs do not name Sergeant Lewalski in the fourth cause of action for medical malpractice under state law.

9

He was discharged from the medical department back to his cell on October 6th. Later that evening, after again using K2, inmates called for help when Mr. Taylor suffered an adverse reaction. Plaintiffs do not allege there was any delay in the officers' response. Mr. Taylor was forcibly removed from his cell by officers on his cellblock.

16. When officers, including Sergeant Lewalski, encountered Mr. Taylor he was either violently striking his head against the wall because he was high on K2 or, according to plaintiffs, he was unresponsive and/or having "seizures". For purposes of this motion only, we assume the truth of the latter.

17. Under either scenario, Mr. Taylor would have been taken off the cellblock and moved to the infirmary. Once there, he is under the supervision of the hospital officers and medical personnel. Sergeant Lewalski would no longer have any responsibility for him until Mr. Taylor came back to the block and Plaintiffs do not allege anything to the contrary.

18. Plaintiffs allege Mr. Taylor was intentionally assaulted by the officers in the course of being physically extracted from his cell and then brought to the infirmary. The Amended Complaint does not allege Sergeant Lewalski escorted Mr. Taylor to the infirmary or that he was ever present there on October 6th or 7th. While not alleged, this Court is aware that the medical building is across the compound and physically separated from the building containing the cellblocks.

19. Mr. Taylor was seen and treated by medical personnel at the prison for the superficial injuries alleged in paragraph 89 of the Amended Complaint. He was transferred to the Erie County Medical Center late on October 6th carrying over into October 7th. Upon his discharge from ECMC, Mr. Taylor returned to the prison later on the morning of the 7th and was placed in a

cell within the infirmary. He remained there until he hung himself that evening. It is not alleged that Mr. Taylor had any further contact with Sergeant Lewalski throughout this entire period.

20. It is clear that the damages sought under the First (and Second) causes of action are based on Mr. Taylor's suicide. This is in contrast to the Third cause of action for excessive force which seeks damages for injuries resulting from Mr. Taylor's alleged assault by officers who had to remove him from his cell after he used K2.

21. Plaintiffs allege: "269. Each of the Defendants was deliberately indifferent to Mr. Taylor's serious medical *condition*".  (emphasis added). The singular "condition" referred to by Plaintiffs is Mr. Taylor's suicidal mental state. The Amended Complaint continues:

> "270. The Medical Defendants were aware that Mr. Taylor had numerous chronic and acute **suicide** risk factors that created a significant risk that he would commit **suicide**; that he had recently made several **suicide** attempts, which significantly increased the risk that he would commit **suicide**; and that he was in fact **suicidal**.
>
> 271. The Medical Defendants nevertheless failed to take adequate steps to address and/or mitigate the risk that Mr. Taylor would commit suicide. . .
>
> 276. The Officer Defendants were aware that Mr. Taylor had numerous chronic and acute suicide risk factors that created a significant risk that he would commit suicide, including being the victim of a violent assault the night before he died, and that he had requested mental health care.
>
> 277. The Officer Defendants nonetheless failed to take adequate steps to address and/or mitigate the risk that Mr. Taylor would commit suicide."

22. As is clear from the above language, the First cause of action alleges that the "condition" that defendants, including Sergeant Lewalski, were deliberately indifferent to was Mr. Taylor's mental health and the risk associated risk of suicide.

23. Mere conclusory allegations, however, that each of the defendant correctional officers was aware of a potential risk Mr. Taylor would commit suicide and did not prevent it, are not enough to state a claim for damages against them individually. Plaintiffs are required to plead

11

sufficient facts to establish a plausible claim. Here Plaintiffs didn't even allege Sergeant Lewalski himself knew of Mr. Taylor's background, previous suicide attempts or that he had any other specialized knowledge. Under the facts in the Amended Complaint, Plaintiffs seek to hold everyone at the facility who had contact with Mr. Taylor in the 24 hours leading to his death liable.

24. Plaintiffs do not allege any specific facts from which this Court could find Sergeant Lewalski had any individual responsibility for Mr. Taylor on October 7th or that he was in any way deliberately indifferent to Mr. Taylor's medical needs; nor do they allege that the use of excessive force by Sergeant Lewalski on October 6th contributed in any way, let alone was a proximate cause, of Mr. Taylor's death.

25. Further, Plaintiffs do not allege that Sergeant Lewalski had any authority, for example, to place Mr. Taylor on a "one-on-one watch" while he was in the infirmary receiving medical treatment or under observation by mental health staff. Since Mr. Taylor never returned to the cellblock, Sergeant Lewalski never had custody or control over him on October 7th. Plaintiffs make no specific factual claim whatsoever that Sergeant Lewalski failed to do anything that was otherwise required of him as a correctional sergeant. They do not allege he was ever present in the infirmary or, for that matter, working anywhere else at Wende on October 7th when Mr. Taylor killed himself.

26. Insofar as Plaintiffs' First claim for relief fails to assert any facts alleging that Sergeant Lewalski had care, custody or control of Mr. Taylor and exhibited a deliberate indifference to his medical needs, he cannot be held liable under a theory of deliberate indifference. Therefore, this Court is respectfully urged to dismiss that claim as against Sergeant Lewalski.

**DISMISSAL OF SECOND CLAIM FOR RELIEF --
LOSS OF INTIMATE ASSOCIATION**

27. The Second cause of action is inseparable from, and intertwined with, the First cause of action.

> "287. The hereinbefore alleged deliberate indifference shown by the Defendants to Mr. Taylor permanently deprived Plaintiff Darlene McDay of her constitutional right to intimate association, companionship, and relationship with her son, Mr. Taylor, in violation of 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments of the United States Constitution.
>
> 288. The hereinbefore alleged deliberate indifference shown by the Defendants to Mr. Taylor permanently deprived Plaintiff Temple McDay of her constitutional right to intimate association, companionship, and relationship with her grandson, Mr. Taylor, in violation of 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments of the United States Constitution."

28. The "deliberate indifference" of the defendants to the medical needs of Mr. Taylor is what deprived Plaintiffs of their right to intimate association with him when he died. Since Sergeant Lewalski cannot be held liable for failing to prevent Mr. Taylor's suicide, he likewise cannot be held liable for his family's resulting loss.

29. When Plaintiffs initially responded to the Assistant Attorney General's motion to dismiss the Complaint (dkt #'s 29 and 53) they failed to cite any cases in which plaintiffs, in a §1983 case, asserted a loss of "intimate association claim" as a basis for recovery when a family member committed suicide while incarcerated.

30. Plaintiffs assert "New York State faces an ongoing epidemic of suicides by people confined in its prisons" (see ¶10 Amended Complaint) yet they cite no cases in which courts have found claims similar to the instant case are cognizable under 42 U.S.C.§1983 in a correctional setting.

31.     To establish a violation of their right to intimate relations claim, Plaintiffs relied primarily on *Adler v. Pataki*, 185 F.3d 35, 43-44 (2d Cir. 1999). *Adler* was a case involving a husband's claim that his firing as Deputy Counsel in the New York State Office of Mental Retardation and Developmental Disabilities was political retaliation.  His wife, a former assistant attorney general, claimed she was terminated solely based on her political affiliation and he was fired after her lawsuit was filed. *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999).

32.     Judge Newman writing for the panel analyzed Adler's claim as a First Amendment freedom of association claim: "[C]laims that some adverse state action burdens an individual's marital relationship have been assessed under a First Amendment doctrine of intimate marital association (citations omitted) . . . The willingness to consider individual claims under a First Amendment analysis might be due to courts' recognition of such claims as asserting the sort of retaliatory action that is often tested against the First Amendment whenever adverse action is alleged to have been taken for exercise of any of the freedoms protected by the First Amendment. *See*, *e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 598, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972) (teacher claiming contract not renewed "in retaliation for his exercise of the constitutional right of free speech")".

33.     Judge Newman recognized that the extent to which individuals have a of the right of intimate association was unclear (although often arising in the marriage context) as was the standard to be applied to determine a violation:

> "Sometimes court opinions suggest that an intimate association right is not violated unless the challenged action has the likely effect of ending the protected relationship, *see*, *e.g.*, *Lyng*, 485 U.S. at 364-66 (challenge to provision rendering family of striker ineligible for food stamps rejected because of unlikelihood that it would prevent families from dining together), or unless affecting the relationship was the purpose of the challenged regulation, *see*, *e.g.*, *Jobst*, 434 U.S. at 54 (challenge to provision terminating disability benefits to secondary beneficiary upon marriage

14

rejected because it was not "an attempt to interfere with the individual's freedom to make a decision as important [**21] as marriage") (footnote omitted). In other cases, the opinions [*44] consider whether the challenged action alleged to burden an intimate association is arbitrary or an "'undue intrusion' by the state into the marriage relationship." *Adkins*, 982 F.2d at 956 (quoting *Roberts*, 468 U.S. 609 at 618).

Though the matter is not free from doubt, we think **HN5** a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." Id.

34. Plaintiffs, without showing the same analysis would apply here where there was no interference by Sergeant Lewalski in the relationship between Plaintiffs and Mr. Taylor, try to further extrapolate from *Adler*.

35. Judge Newman was concerned with State action interfering with first amendment freedom of association. In this case the defendants are not state actors (the State itself is not amenable to suit in federal court); they are individual employees to whom the State owes a duty of defense and indemnification. There is no indication in *Adler* that the Court intended the right of intimate association to extend to the countless non-political decisions made by every state employee on a daily basis.

36. The individual defendants stand in contrast to the State itself which had already taken action to separate Mr. Taylor from his family as a consequence of his convictions and life sentence. That disruption in the relationship, brought about by Mr. Taylor in the first instance, can hardly be viewed as a violation of his mother's and grandmother's first amendment rights. To sustain the cause of action here would be an improper and unsupportable expansion of a right whose constitutional source is still debatable.

37. Additionally, Court in our Circuit have found limited familial privacy rights under the 14th Amendment including the right to be free from government attempts and interfere with family relationships. However, a parent's right to companionship of an adult child are only

15

violated by acts that directly interfere in the parent-child relationship. Substantive due process cases do not hold familial relationships are protected from all state encroachments, only that the states may not interfere in how a person conducts their family's affairs. See Pizzuto v. County of Nassau, 240 F.Supp. 2d 203 (E.D.N.Y. 2002) (Defendant Corrections Officers entitled to dismissal of familial companionship claims).

38. For the sake of brevity and to avoid duplication of arguments, Sergeant Lewalski adopts and joins in the arguments of co-defendants on this issue (see dkt #'s 61, 62, 63, and 64).

39. As stated in the memorandum of law filed by Patrick Mackey on behalf of defendant Maldonado:

> "The right to intimate association in the context of familial relationships is protected by the substantive due process component of the Fourteenth Amendment. *Rindfleisch*, 2010 U.S. Dist. LEXIS 144387, at *12-13. Courts in the Second Circuit have acknowledged that this right can extend to the relationship between parents and their adult children. *See id.*; *Laureano v. Goord*, 2007 U.S. Dist. 74754, at *36 (S.D.N.Y. 2006).
>
> To state a claim for loss of intimate association based on the loss of an adult child, one must plausibly allege that "a particular defendant's actions were undertaken for the purpose of interfering with such relationship; without the intent component, courts have ruled that there is no constitutionally protected liberty interest in maintaining that adult relationship." *Rindfleisch*, 2010 U.S. Dist. LEXIS 144387, at *17-18 (compiling cases); *see also Gray-Davis v. Rigby*, 2016 U.S. Dist. LEXIS 42909 (N.D.N.Y. 2016) ("District courts in the Second Circuit have agreed with these other circuit courts that a plaintiff must rest an intimate association claim on a direct harm to the plaintiff caused by an intent to interfere with the familial relationship."). As one Court noted, if the intent element was not required, "affording plaintiffs a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individual[s] who happen to have families." *Laureano*, 2007 U.S. Dist. LEXIS 74754, at *37 (*Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005)). Allegations of an incidental disruption of the parent-child relationship by reason of the Defendants' alleged acts or omissions are not enough. *See Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist.*, 2008 U.S. Dist. LEXIS 43363, at *10-11 (W.D.N.Y. 2008).

16

> The complaint does not plausibly allege the Defendants purposefully acted with the intent to interfere with the relationship between the Plaintiff Temple McDay and Mr. Taylor, her adult son. Instead, Plaintiffs alleges the practical effect of the Defendants' "deliberate indifference" deprived her of this right. Dkt. 1, ¶¶ 286-289. These allegations fall short of alleging the necessary intentional interference required to support a loss of intimate association claim." (See Memorandum of Law dkt# 62 at p. 6)

40. In this case Plaintiffs make no allegation that Sergeant Lewalski undertook any act to directly interfere with Plaintiffs' relationship with Mr. Taylor. Even assuming *arguendo,* the Complaint establishes the type of relationship necessary to properly assert a claim (Mr. Taylor was recently divorced and presumably living apart from Plaintiffs. (See paragraph 3 of Amended Complaint), it fails to allege how Sergeant Lewalski interfered in that relationship (*Cf. Pizzuto supra*; correction officers denied family members access to inmate at hospital, harassed and intimidated them; court dismissed familial companionship claim).

41. Since the Plaintiffs have failed to plead a cognizable claim for damages against Sergeant Lewalski in their Second cause of action for loss of intimate association, the defendant respectfully urges this Court to dismiss Plaintiffs' claim.

## CONCLUSION

In addition to the grounds for dismissal described above, Sergeant Lewalski is entitled to dismissal of Plaintiffs' causes of action against him on the separate and additional grounds that he is entitled to Qualified Immunity. The arguments and authority for dismissal on that basis are set forth in the Motion to Dismiss and supporting Memorandum of Law filed by the co-defendants (Dkt # 61). In order to conserve judicial resources, to the extent the expected motions to dismiss by other co-defendants contain arguments that are applicable to Sergeant Lewalski, those arguments are adopted and incorporated in this motion by reference.

No plausible claim has been plead which would entitle Plaintiffs to recover against Sergeant Lewalski for either deliberate indifference to Mr. Taylor's medical needs or for depriving Plaintiffs of their right to associate with Mr. Taylor. Therefore, Sergeant Lewalski respectfully requests that this Court dismiss the First and Second claims for relief set forth in the Amended Complaint.

Dated: Buffalo, New York
      September 15, 2020

/s/Cheryl Meyers Buth
Cheryl Meyers Buth, Esq.
Laurie A. Baker, Esq.
MEYERS BUTH LAW GROUP pllc
*Attorneys for Defendant Sergeant Timothy Lewalski*
21 Princeton Place, Suite 105
Orchard Park, New York 14127
(716) 662-4186
cmbuth@mblg.us
labaker@mblg.us