UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE McDAY, individually and as
Executrix of the Estate of DANTE TAYLOR, **AMENDED REPORT**
and TEMPLE McDAY, **AND RECOMMENDATION**[1]

                                                         20-cv-00233 (JLS)(JJM)

                            Plaintiffs,

v.

STEWART ECKERT, Superintendent Wende
Correctional Facility, *et al.*,

                            Defendants.
_____

The claims in this action arise from the October 7, 2017 suicide of Dante Taylor, an inmate in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") at the Wende Correctional Facility, and an alleged assault by correction officers that occurred the day before his death. Amended Complaint [57].[2] Before the court are the motions to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2) and/or 12(b)(6) filed by the State Defendants [61][3], Melvin Maldonado [62], Dylan Janis [63], Thomas White [64], James Horbett [67], Kelly McDonald [68], and Timothy Lewalski [69], which have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration

---

[1]     The purpose of the amendment is to note that defendant Kelly McDonald's motion to dismiss for lack of service [68] was withdrawn. *See* October 5, 2020 letter [75]. In my initial Report and Recommendation I had recommended that the motion be denied as moot.

[2]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[3]     Collectively identifying defendants Superintendent Stewart Eckert, Bertram Barall, Diane DiRienzo, R.N., Dana Manchini. Kelly Konesky, LCSW-R, Margaret Stirk, Kristen Muratore, Sergeant Scott Lambert, Lisa Prishel, R.N., Jill Olivieri, R.N., Debra Stubeusz, M.D., Anjum Haque, M.D., and Correction Officers Baron, Creighton, Freeman, Theal and Mark Collett.

[23]. Having considered the parties' submissions [61-64, 67-69, 74, 77-78, 80-83], I recommend that the motions be granted in part and denied in part.

## BACKGROUND

The claims for relief in this action commenced by Taylor's mother, Darlene McDay, and his grandmother, Temple McDay, arise from the approximately one-year period from Taylor's arrival at Wende on October 13, 2016, through his October 7, 2017 death. Taylor allegedly had a number of "risk factors for suicide" and had multiple prior suicide attempts, which were documented by DOCCS upon his incarceration. Amended Complaint [57], ¶¶2, 56-58.[4] Within days of arriving at Wende, Taylor allegedly reported that he wanted to kill himself and was being harassed by corrections officers. Id., ¶¶63-64, 72. Taylor allegedly continued to be harassed and abused by staff throughout his confinement at Wende and reported this to his mother. Id., ¶¶198-203.

From June to September 2017, plaintiff was allegedly placed in "keeplock", a modified form of solitary confinement, for using K2, a synthetic marijuana, and while in keeplock attempted suicide. Id., ¶¶99-100, 117, 143. Notwithstanding that suicide attempt and the existence of other recent exacerbating circumstances (*e.g.*, Taylor facing a life sentence, the end of his marriage, fear of staff bulling and harassment, and the loss of his grandfather), allegedly no supervision of Taylor was ordered. Id., ¶¶140-42, 171.

Shortly after his release from keeplock, Taylor was allegedly taken to the infirmary as a result of a negative reaction to taking K2, where he "appeared to have vague suicidal ideation" and "expressed concern" about returning to keeplock due to his K2 use. Id.,

---

[4] Since the parties' familiarity with the allegations of the entire 306-paragraph Amended Complaint [57] is presumed, I have only briefly summarized the allegations.

¶¶144, 152.  A day later, on October 6, 2017, plaintiff was allegedly discharged to his cell without observation, support or monitoring. Id, ¶¶168-70. That same day, he allegedly began having seizures in his cell because of K2 use. Id., ¶172.  However, rather than returning him to the infirmary, defendants Lambert, Lewalski, Maldonado and McDonald allegedly entered Taylor's cell and beat him until he was unconscious, then "hog tied" him and threw him down the stairs.  Defendant Freeman allegedly stood by and failed to intervene. Id., ¶¶176-78, 184.  To cover up their assault, defendants claimed that Taylor's injuries were self-inflicted. Id., ¶188.

After being treated for his injuries, plaintiff returned to Wende on October 7, 2017, and was allegedly placed in an infirmary cell with no observation or suicide watch. Id., ¶¶212-13, 217.  Later that day, Taylor committed suicide after allegedly his requests to speak to the New York State Office of Mental Health ("OMH") and his family were denied. Id., ¶¶221-222, 231-33, 240.  He was 22 years old. Id., ¶248.  Plaintiffs allege that Taylor's suicide was not an isolated occurrence, and point to other suicide deaths of inmates at Wende. Id., ¶¶249-64.

Based on the alleged conduct, plaintiffs assert the following claims for relief:

-- Deliberate indifference/substantive due process against all defendants pursuant to 42 U.S.C. §1983 (First Claim for Relief);

-- Loss of intimate association against all defendants pursuant to 42 U.S.C. §1983 (Second Claim for Relief);

-- Excessive force against the Officer Defendants[5] and Superintendent Eckert pursuant to 42 U.S.C. §1983 (Third Claim for Relief); and

---

[5] The "Officer Defendants" include Sergeant Lewalski, Sergeant Scott Lambert, and Correction Officers Maldonado, Collett, White, Horbett, Janis, Creighton, Theal, Baron, McDonald, Freeman and John Doe 1-10.  Amended Complaint [57], ¶37.

-- Medical malpractice against the OMH defendants (defendants Margaret Stirk and Kristen Muratore) (Fourth Claim for Relief).

## DISCUSSION

**A.     Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

**B.     First Claim for Relief:  Substantive Due Process**

"Substantive due process protects individuals against government action that is arbitrary . . . conscience-shocking . . . or oppressive in a constitutional sense . . . but not against constitutional action that is incorrect or ill-advised." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994).  As plaintiffs recognize, "[e]stablishing . . . a substantive dues process violation is admittedly difficult".  Plaintiffs' Consolidated Memorandum [74], 30. "Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In Sandin v. Conner, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." Samms v. Fischer, 2011 WL 3876528, *12 (N.D.N.Y.), adopted, 2011 WL 3876522 (N.D.N.Y. 2011).

Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994). *See also* United States v. Lanier, 520 U.S. 259, 272 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). Consequently, "where Eighth Amendment and Fourteenth Amendment due process protections overlap, the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protections to prisoners." Porter v. Uhler, 2019 WL 2479000, *18 (N.D.N.Y.), adopted, 2019 WL 1292226 (N.D.N.Y. 2019), aff'd, 790 Fed. App'x 329 (2d Cir. 2020) (Summary Order); Velez v. Levy, 401 F.3d 75, 93, 94 (2d Cir. 2005).

The State Defendants seek to dismiss the substantive due process claim of the First Claim for Relief on the ground that it is "duplicative of [p]laintiffs' Eighth Amendment claim seeking the same relief". State Defendants' Memorandum of Law [61-1], 11. In response, plaintiffs argue that "deliberate indifference to serious medical needs is . . . 'egregious enough to state a substantive due process claim'" (plaintiffs' Consolidated Memorandum [74], 29), and contend that defendants' actions, which included "constant bullying and abuse by correctional staff; excessive and punitive solitary confinement . . . ; inadequate medical care . . .; a vicious beating; and . . . [thereafter] being placed in punitive isolation and intentionally deprived of contact with his family", shock the conscience and constitute a claim separate from the protections of the Eighth Amendment. Id., 30.

There is no dispute that defendants' alleged conduct can be considered conscience shocking. Nonetheless, the more explicit textual source of constitutional protection for that conduct is the Eighth Amendment. See Jean v. Barber, 2011 WL 2973957, *5 (N.D.N.Y.), adopted, 2011 WL 2975218 (N.D.N.Y. 2011) (finding that plaintiff's Eighth Amendment deliberate indifference claim arising from an attempted suicide subsumed plaintiff's substantive due process claim); Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) ("[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment"); Sadelmyer v. Peltzer, 2013 WL 4766517, *6 (W.D. Pa. 2013) (dismissing duplicative substantive due process claim where "it appears that Plaintiff has attempted to raise a claim under the Eighth and Fourteenth Amendments . . . based on the same conduct - i.e., Defendant was deliberately indifferent to Plaintiff's serious medical needs when he denied her prescribed medications and when he failed to see her after her attempted suicide").

As pled, the culmination of the alleged conduct that is basis of plaintiffs' Eighth Amendment deliberate indifference claim (i.e., defendants' actions and omissions culminating in the substantial risk of Taylor's suicide) also underlies plaintiffs' substantive due process claim. Plaintiffs have not alleged that plaintiffs were "deprived of a separate liberty or property interest". Ingram v. Sochacki, 2018 WL 4903238, *8 (D. Conn. 2018). See also Fitzgerald v. Oakes, 2020 WL 2839327, *4 (W.D.N.Y. 2020) ("[p]laintiff's claims are within the purview of the Eighth Amendment's prohibition on cruel and unusual punishment, and so his substantive due process claims are subject to dismissal").

Notably, plaintiffs do not dispute the State Defendants' contention that the facts underpinning the substantive due process claim must not substantially overlap with the deliberate

indifference claim. Instead, they contend that they "should be given the opportunity to pursue discovery on this claim, especially as [it] *may* arise out of a different and broader set of facts beyond those directly related to the deliberate indifference to medical care and excessive force claims". Plaintiffs' Consolidated Memorandum [74], 31 (emphasis added). Nor have they pled their substantive due process claim as a separate claim for relief, but rather assert it alongside their deliberate indifference claim, thereby reinforcing that both claims are premised on the same underlying conduct. *See* Amended Complaint, First Claim for Relief.

Therefore, I conclude that plaintiffs' substantive due process claim is subsumed their Eighth Amendment deliberate indifference claim, and recommend that this portion of the State Defendants' motion be granted.

**C.    Second Claim for Relief: Intimate Association Cause of Action**

"The Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association". Gorman v. Rensselaer County, 910 F.3d 40, 47 (2d Cir. 2018). To properly plead an intimate association claim, a plaintiff must allege: (1) facts "so shocking, arbitrary, and egregious' that the Due Process Clause would not countenance it even were it accompanied by full procedural protection"; and (2) that the "state action was specifically intended to interfere with the family relationship". Id., 47-48.

Defendants argue that the Amended Complaint fails to allege facts that plausibly suggest that they acted with specific intent to interfere with plaintiffs' family relationship with Taylor. *See* State Defendants' Memorandum of Law [61-1], 13-14; Maldonado's Memorandum of Law [62-2], 5-6; White's Memorandum of Law [64-1], 15-16; Meyers Buth Affirmation [69-1], ¶¶27-41.

I agree with defendants that the Amended Complaint "does not allege that any of the individual defendants '*specifically intended*' to target [the familial] relationship". Fleming v. City of New York, 2019 WL 4392522, *16 (S.D.N.Y. 2019), recon. denied, 2020 WL 2133162 (S.D.N.Y. 2020) (emphasis added). As currently pled, the Amended Complaint alleges that the incidental effect of defendants' deliberate indifference was to deprive plaintiffs of their right to intimate association, not that it was defendants' specific intent to do so. Amended Complaint [57], ¶¶287-88. See Rodenhouse v. Palmyra-Macedon Central School District, 2008 WL 2331314, *4 (W.D.N.Y. 2008)("it appears clear that the unfortunate disruption of the parent-child relationship in this case was only incidental to Defendants' alleged actions and omissions in failing to properly supervise and protect E.R.").

The Amended Complaint alleges that defendants directly inhibited plaintiffs' ability to communicate with Taylor. *See*, *e.g.*, Amended Complaint [57], ¶7 ("[d]efendants denied Mr. Taylor access to . . . his family"). However, it is Taylor's loss of life, not the loss of communication with Taylor before his death, that is the basis of plaintiffs' intimate association claim. *See* Plaintiffs' Consolidated Memorandum [74], 19 (the "facts are sufficient to allege that Defendants were on notice that [Taylor's] loss of life would deprive his family of their right to associate with him").

"Without pleading the necessary element of intentional interference, Plaintiffs have failed to allege that they had a protected liberty interest in maintaining a relationship with their adult child/[grandchild]. Affording Plaintiffs 'a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individuals who happen to have families.'" Campos v. Weissman, 2009 WL 7771872, *8

(N.D.N.Y. 2009), adopted, 2011 WL 1204839 (N.D.N.Y. 2011) (quoting Russ v. Watts, 414 F.3d 783, 790 (7th Cir. 2005)).  Therefore, I recommend that this cause of action be dismissed.[6]

D.  **Fourth Claim for Relief:  State Law Malpractice Claims Against defendants Stirk and Muratore**

The State Defendants argue that the malpractice claim alleged against defendants Stirk and Muratore are entitled to dismissal pursuant to New York Correction Law § 24. State Defendants' Memorandum of Law [61-1], 4-5.  Section 24 states that:

> "No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the [DOCCS]. . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."

"Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against [DOCCS] employees in their personal capacities for actions arising within the scope of their employment." Davis v. McCready, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017).

The Amended Complaint [57] alleges "upon information and belief" that Stirk and Muratore held positions with the OMH and were assigned to Wende, where they "exercised supervisory authority on behalf of the DOCCS and OMH". Id., ¶¶18-19 ("Stirk was a[n] OMH Forensic Unit Chief"; and "Muratore was a[n] OMH Forensic Program Administrator").  In

---

[6] Based on this recommendation, it is unnecessary for me to address defendant White's argument that the Amended Complaint fails to allege adequate facts to demonstrate that his alleged actions were sufficiently egregious to support the intimate association claim.  White's Memorandum of Law [64-1], 16-17.  It is also unnecessary for me to address defendants' qualified immunity argument and contention that plaintiff Temple McDay lacks standing to bring an intimate association claim based on the loss of her adult grandchild. See State Defendants' Memorandum of Law [61-1], 16-17; Maldonado's Memorandum of Law [62-2], 4-5; White's Memorandum of Law [64-1], 14-15.

response to the motion, plaintiffs acknowledge that without discovery, they are "unable to assert with certainty whether Defendants Stirk and Muratore are formally employee[s] of OMH or DOCCS". Plaintiffs' Consolidated Response [74], 26-27.

"Given the plain language of the statute and the fact that neither state courts nor the Second Circuit have clearly extended its protection to non-DOCCS employees", Ramsay-Nobles v. Keyser, 2019 WL 4383187, *35 (S.D.N.Y. 2019), I conclude that Stirk and Muratore are not entitled to dismissal. See also Reeder v. Hogan, 2011 WL 1484118, *13 n. 13 (N.D.N.Y.), adopted, 2011 WL 1302915 (N.D.N.Y. 2011) ("Section 24 does not shield non-DOCS personnel, including employees of the OMH, from liability").[7] At this point, the Amended Complaint alleges - and I accept as true for purposes of this motion[8]- that Stirk and Muratore were employed by the OMH. Although the State Defendants point to the allegation that Stirk and Muratore "exercised supervisory authority on behalf of DOCCS", they cite to no case establishing that in contravention to the plain wording of the statute that Section 24

---

[7] The contrary authority cited by the State Defendants is unpersuasive. See State Defendants' Memorandum of Law [61-1], 12. As Ramsay-Nobles noted, neither Brown v. Department of Correctional Services, 2011 WL 2182775 (W.D.N.Y. 2011), nor Povoski v. Artus, 2014 WL 1292219 (N.D.N.Y. 2014), directly addressed this issue. 2019 WL 4383187, *35. Likewise, in Hall v. NYS Department of Corrections and Community Supervision, 2015 WL 901010, *15 n. 30 (N.D.N.Y. 2015), the court described the issue of whether Correction Law §24 immunity extends to OMH employees as being a "close question", but did not resolve the issue.

[8] I accept all allegations of the Amended Complaint as true for purposes of ruling on the motions to dismiss, including facts alleged upon information and belief, except where those facts that are primarily within plaintiffs' knowledge or control. See FTA Mkt. Inc. v. Vevi, Inc., 2012 WL 383945, *4 (S.D.N.Y. 2012) ("[w]hile the Court accepts all allegations of the complaint as true for purposes of ruling on a motion to dismiss, the Court will not accept facts alleged upon information and belief when such information is within the control of plaintiff"); Dorn v. Berson, 2012 WL 1004907, *5 (E.D.N.Y. 2012), adopted, 2012 WL 1004905 (E.D.N.Y. 2012) ("[e]ven though the allegations are pled on information and belief, the Court may accept them as true since they pertain to facts primarily within the defendant's knowledge"). Stirk's and Muratore's employer is not a fact that appears to be within plaintiffs' control.

immunity extends to non-DOCCS employees who are bestowed with supervisory authority by DOCCS.

As suggested by plaintiffs, the parties can, at an early stage, conduct discovery to confirm whether Stirk and Muratore are employed by the OMH as alleged. If discovery establishes that Stirk and Muratore were instead DOCCS' employees, the State Defendants may file an appropriate motion for their dismissal.

Alternatively, the State Defendants argue that Stirk and Muratore are entitled to qualified immunity, since it was "not clearly established" whether the "OMH employees assigned to and working with inmates within DOCCS facilities" were entitled to Section 24 protection. State Defendants' Memorandum of Law [61-1], 11-13. "Qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct . . . . At the motion to dismiss stage, the qualified immunity defense faces a formidable hurdle and is usually not successful because it is the *defendant* that must plead and prove the defense." Dixon v. von Blanckensee, 994 F.3d 95, 101 (2d Cir. 2021) (emphasis in original).

This case is no exception. Fundamentally, "'qualified immunity protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law." Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007). "Although 'a similar doctrine exists under New York common-law,' . . . Defendants have failed to explicitly raise this argument in their motion papers." Boyler v. City of Lackawanna, 287 F. Supp. 3d 308, 325 (W.D.N.Y. 2018), aff'd, 765 Fed. App'x 493 (2d Cir. 2019) (Summary Order).

In any event, it is not clear that qualified immunity could apply in the manner sought by the State Defendants. Qualified immunity protects a defendant from a violation of a *plaintiff's* rights where those rights were not clearly established. By contrast, the State Defendants seek qualified immunity protection because *their own* statutory immunity rights were not clearly established. Therefore, I recommend that this portion of the State Defendants' motion be denied.

### E.     Personal Involvement of defendants Janis, White, Horbett, and Lewalski

"Personal involvement in the deprivation of federal constitutional rights is the sine qua non of liability under § 1983." Ventura v. Sinha, 2008 WL 365866, *7 (W.D.N.Y. 2008), aff'd, 379 Fed. App'x 1 (2d Cir. 2010) (Summary Order). "As a corollary of the personal involvement requirement, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" Gonzalez v. Yepes, 2019 WL 2603533, *7 (D. Conn. 2019). *See also* 5465 Route 212, LLC v. New York State Dep't of Transportation, No. 119CV01510BKSDJS, 2020 WL 6888052, *9 (N.D.N.Y. 2020) ("[b]ecause the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations").

Whereas defendants Janis, White and Horbett seek to dismiss the excessive force Claim for Relief, Janis White, Horbett and Lewalski seek to dismiss the deliberate indifference Claim for Relief. *See* Hapeman Declaration [63], ¶¶17-29; White's Memorandum of Law [64-1], 9-14; Horbett's Memorandum of Law [67-1], 4-6; Meyers Buth Affirmation [69-1], ¶¶14-26.

1. **Second Claim for Relief: Excessive Force**

An officer "is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." Paul v. City of New York, 2017 WL 4271648, *4 (S.D.N.Y. 2017).

The Amended Complaint [47] alleges that defendants Janis, White and Horbett "were DOCCS officers working at Wende, who participated in and/or had knowledge of and/or failed to intervene in the assault of Mr. Taylor on October 6, 2017". Id., ¶35. See also ¶292 ("the Officer Defendants used malicious . . . force on Mr. Taylor, and/or failed to prevent other officers from doing so despite having a reasonable opportunity to intervene"). Connecting each of these defendants to the alleged excessive force incident, it is alleged that "[u]se of force documents prepared by DOCCS staff state that it was Defendants Lewalski, Horbett, White, and Janis who entered Mr. Taylor's cell". Id., ¶177. According to the Amended Complaint, others, not identified in the use of force documents, also entered Taylor's cell. Id., ¶¶174-76.

As set forth above, plaintiffs have been able to specifically identify some defendants as the assailants (Amended Complaint [57], ¶178) and another as being responsible for failing to protect (id., ¶184), but do not specifically identify defendants Janis, White or Horbett in either category. Based on the allegations of the Amended Complaint and Taylor's death shortly after the assault, it is not surprising that plaintiffs, who were not present, lack sufficient knowledge of each and every responsible officer or their specific role. However, it is plausible, if not inescapable, at this stage that all of the officers allegedly identified in the "*use of force*" documents prepared by DOCCS as being present, including Janis, White, and Horbett,

either engaged in the alleged excessive force incident or failed to protect Taylor from it.[9] *See* Ledger v. City of New York, 2011 WL 3206878, *4-5 (E.D.N.Y. 2011) (where there was "no evidence that anyone other than [two officers] w[ere] on the scene," they were "both rational candidates for beating plaintiff"); Valade v. City of New York, 949 F. Supp. 2d 519, 529 (S.D.N.Y. 2013) ("[a]lthough it is true that there is no direct evidence in the record that Officer Seide personally assaulted Ms. Valade, the record evidence does indicate that Ms. Valade was under Officer Seide's direct custodial supervision from the time of her arrest until she was awakened in her holding cell").

At this stage, "a plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene". Paul, 2017 WL 4271648, *4. *See also* Serrata v. Givens, 2019 WL 1597297, *6 (E.D.N.Y. 2019) ("the plaintiff, at this stage in litigation, need not pick out which of the officers actually used excessive force against him; it is adequate that he alleges that all of these officers were present at the time of his arrest and, at the very least, failed to intervene on his behalf"). If liability for an excessive force incident only extended to those individuals that the victim personally observed and could describe their precise roles, "all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence". Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007).

Defendant White cites a number of cases for the proposition that group pleading is inappropriate, but it does not appear that the plaintiffs in those cases made any allegations

---

[9] In plaintiffs' Consolidated Memorandum in opposition to defendants' motions to dismiss [74], they appear to narrow the claim against defendants Janis, White and Horbett to failing to protect Taylor from the assault. *See* id., 20 ("[d]efendants Janis, White, and Horbett were present at Dante's cell for this violent assault . . . and did nothing to prevent it").

about the roles played by each defendant.  Reply Memorandum of Law [83], 8 (*citing* Ojo v. United States, 2019 WL 3852391, *13 (E.D.N.Y.), adopted, 2019 WL 4602823 (E.D.N.Y. 2019); Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018); Ying Li v. City of New York, 246 F. Supp. 3d 578, 598–99 (E.D.N.Y. 2017); Wright v. Orleans County, 2015 WL 5316410, *13-14 (W.D.N.Y.), adopted, 2015 WL 13660397 (W.D.N.Y. 2015)).  By contrast here, the group allegations, combined with the individual allegations against defendants and the reasonable inferences drawn therefrom are sufficient to put these defendants on notice of their personal involvement in the cause of action. *See* Buari v. City of New York, 2021 WL 1198371, *16 (S.D.N.Y. 2021) ("[d]efendants . . . argue that Buari fails to specify which NYPD Defendants participated directly . . . . But such specificity as to each NYPD Defendant's individual actions is not required where, as here, the complaint gives each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests'"); Serrata, 2019 WL 1597297, *5 (declining to dismiss as a "group pleading" where "the complaint refers to all the defendants collectively because all the defendants were, it alleges, on the scene and actively involved in the complained-of conduct"); Paul, 2017 WL 4271648, *4 (allegations that implied "that all of the Individual Defendants . . .  were at least present at the scene and witnessed the events" were "sufficient to allege that [each of the individual defendants] were present during the assault, and failed to intercede on behalf of the victim"); Coppola v. Town of Plattekill, 2018 WL 1441306, *5 (N.D.N.Y. 2018) (finding that personal involvement of each of the defendant officers was pled where the plaintiff's "reference to 'the officers' suggests that she alleges that each officer present on her property" participated in the false arrest).

As the case progresses, defendants can discern their alleged specific roles in the excessive force incident (as either assailants or spectators) through interrogatories or other

discovery mechanisms, but at this stage the Amended Complaint sufficiently alleges their personal involvement in the excessive force incident.

### a. First Claim for Relief: Deliberate Indifference

Defendant White argues that "nowhere in the Amended Complaint is it alleged that" he: (1) "knew of or had any reason to believe Mr. Taylor was being denied medical care for thoughts of self-harm and risk of suicide"; (2) "actually denied Mr. Taylor medical care"; or (3) "appreciated or understood the risk to which Mr. Taylor may have been subjected to by failing to provide medical care". White's Memorandum of Law [64-1], 9. Similar arguments are raised by defendants Lewalski. *See* Meyers Buth Affirmation [69-1], ¶¶14-26.

"Claims involving the risk of suicide have been articulated and addressed as violations of the duty to protect, particularly when asserted against non-medical personnel". Phillips v. Mitchell, 2021 WL 1175051, *4 (N.D.N.Y. 2021). "A failure to protect claim requires a showing that prison officials acted with 'deliberate indifference' to the inmate's safety." Id. In cases such as this "deliberate indifference requires 'a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide; and (2) intentionally disregarded that risk.'" Id. (*quoting* Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006)).

A fair reading of the Amended Complaint [57] alleges that the "Officer Defendants", which include defendants Janis, White, Horbett and Lewalski (Amended Complaint [57], ¶35), "were aware that Mr. Taylor had numerous chronic and acute suicide risk factors that created significant risk that he would commit suicide" (id., ¶276), but rather than responding to his medical emergency on October 6, 2017 (id., ¶173) by summoning medical or mental health intervention or taking him to the infirmary, they delayed that care and exacerbated

his risk of suicide when they assaulted him or failed to intervene to protect him. Id., ¶¶173, 178, 185, 276, 278-79.

According to defendants, "[w]hat plaintiffs seem to want to argue is that . . . the same fact pattern involving Mr. Taylor being physically assaulted either caused a mental injury or further exacerbation of his pre-existing mental problems leading him to commit suicide", "[b]ut that is not how the [Amended] Complaint is pled." Lewalski's Reply Memorandum of Law [82], 2. Defendant Lewalski and White point to the fact that the only specific allegation against them is their involvement in the alleged October 6, 2017 assault. However, they argue that "[t]he First cause of action does not allege [that their] 'action' in assaulting Mr. Taylor was the reason he later committed suicide. Rather, it says [their] 'inaction' is what constituted 'deliberate indifference' to serious medical needs", but the Amended Complaint lacks any allegations that they had any authority over Taylor's mental health care. Lewalski's Reply Memorandum of Law [82], 2 (emphasis in original); Meyers Buth Affirmation [69-1], ¶25.

The Amended Complaint, and in particular the First Claim for Relief, could have been more clearly pled. However, while the deliberate indifference claim primarily relies on defendants' inaction, the Amended Complaint [57] also alleges that "[a]ll Defendants were aware that their *actions* and omissions created a substantial risk of harm" (id., ¶279 (emphasis added)) and disregarded that risk by assaulting Taylor. See also id., ¶276 ("[t]he Officer Defendants were aware that Mr. Taylor had numerous chronic and acute suicide risk factors that created a significant risk that he would commit suicide, including being the victim of a violent assault the night before he died"). Therefore, I conclude that the assault is among the conduct that underpins the deliberate indifference claim.

Defendants Lewalski and White further argue that plaintiffs fail to allege that they were "personally aware of [Taylor's] 'serious medical needs' *i.e.* suicidal tendency", and that "[t]he only 'serious medical needs' [they were] aware of occurred before or during the cell extraction in relation to Mr. Taylor's drug use". Lewalski Reply Memorandum of Law [82], 4. That argument ignores the allegation that the "Officer Defendants", including Lewalski and White, "were aware that Mr. Taylor had numerous chronic and acute suicide risk factors that created a significant risk that he would commit suicide". Amended Complaint [57], ¶276. Whether plaintiffs can substantiate those allegations must await discovery, but the allegations of the Amended Complaint are sufficient, at this stage, to survive dismissal.

## CONCLUSION

For these reasons, I recommend that:

--   the State Defendants' motion to dismiss [61] be granted to the extent that it seeks dismissal of the substantive due process portion of the First Claim for Relief and the Second Claim for Relief, but otherwise be denied;

--   defendant Maldonado's motion to dismiss the Second Claim for Relief [62] be granted;

--   defendant Janis's motion to dismiss [63] the Second Claim for Relief be granted, but otherwise be denied;

--   defendant White's motion to dismiss [64] the Second Claim for Relief be granted, but otherwise be denied;

--   defendant Horbett's motion to dismiss [67] the Second Claim for Relief be granted, but otherwise be denied;

   --  defendant McDonald's motion for joinder in the co-defendants' applicable Rule 12(b)(6) motions [68] be granted;

   --  defendant Lewalski's motion to dismiss [69] the Second Claim for Relief be granted, but otherwise be denied; and

   --  to the extent that defendants request to join in the motions of their co-defendants (*see* Hapeman Declaration [63], ¶¶30-33; Horbett Memorandum of Law [67-1], 6-7; Lewalski Memorandum of Law [69-1], 13), that those requests be granted.

  Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by July 9, 2021.  Any requests for extension of this deadline must be made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

  Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

  The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 25, 2021

/s/Jeremiah J. McCarthy  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge