UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE McDAY, individually and as Executrix of
the Estate of DANTE TAYLOR,
and TEMPLE McDAY,

                                Plaintiffs,

– against –                                                          **No. 1:20-cv-00233**

STEWART ECKERT, Superintendent, Wende Correctional Facility;
MARGARET STIRK, Unit Chief, Wende Correctional Facility;
KRISTEN MURATORE, Forensic Program Administrator, Wende Correctional Facility;
SERGEANT TIMOTHY LEWALSKI;
SERGEANT SCOTT LAMBERT;
CORRECTION OFFICER McDONALD;
CORRECTION OFFICER FREEMAN;
CORRECTION OFFICER THOMAS WHITE;
CORRECTION OFFICER J. HORBETT;
CORRECTION OFFICER D. JANIS;
CORRECTION OFFICER MELVIN MALDONADO;
CORRECTION OFFICER MARK COLLETT;
CORRECTION OFFICER GREIGHTON;
CORRECTION OFFICER THEAL; CORRECTION OFFICER BARON;
JILL OLIVIERI, R.N.; DIANE DIRIENZO, R.N.;
LISA PRISHEL, R.N.; DEBRA STUBEUSZ, M.D.;
ANJUM HAQUE, M.D.; BERTRAM BARALL, M.D.;
KELLY KONESKY, LCSW-R; DANA MANCINI, SW2;
JOHN and JANE DOES 1-10; and JOHN and JANE SMITH 1-14,

                                Defendants.

---

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**


**MEYERS BUTH LAW GROUP PLLC**


   */s/ Cheryl Meyers Buth*
   Cheryl Meyers Buth
   *Attorney for Defendant*
   *SGT. TIMOTHY LEWALSKI*
   21 Princeton Place, Suite 105
   Orchard Park, New York 14127
   (716) 508-8598
   cmbuth@mblg.us

## *PRELIMINARY STATEMENT*

Pursuant to Federal Rule of Civil Procedure 72(b) and Western District of New York Local Rules, Defendant objects to the Magistrate Judge's Report & Recommendation (R & R) dated June 25, 2021[dkt #85]. The Magistrate Judge recommended denying Defendant's Motion to dismiss the First cause of action for "Deliberate Indifference to Serious Medical Needs"(42 U.S.C.§1983). The Defendant certifies that these objections do not raise new legal/factual arguments that were not previously raised.

## *STANDARD OF REVIEW*

In reviewing a Report and Recommendation, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636 (b)(1)(c). When a timely objection has been made to the Report and Recommendation, the District Court Judge must make a *de novo* determination of any portion of the Magistrate's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b), W.D.N.Y. Local Civil Rules 72(b) ; *see also Rhinehart v. CSX Transportation, Inc.*, 2017 WL 3500018, at *2 (W.D.N.Y. 2017), *reconsideration denied*, 2018 WL 507155 (W.D.N.Y. 2018)

## *PROCEDURAL HISTORY*

Defendant Sgt. Timothy Lewalski ("Lewalski") filed a motion to dismiss the First and Third Causes of Action in Plaintiff's Amended Complaint pursuant to Fed.R.Civ.Pro.12(b)(6).  Both of those claims were pled as violations of 42 U.S.C. §1983:

- the First Cause of Action which alleges "Deliberate Indifference to Plaintiff's Serious Medical Needs/Substantive Due Process" and

- the Second Cause of Action which alleges "Loss of Intimate Association".[1]

The Magistrate Judge granted Defendant's motion to dismiss the Second Cause of Action. With regard to the First Cause of Action, the Magistrate Judge recommended Lewalski's motion be denied.

### *ARGUMENT*

### *Plaintiff's Amended Complaint Fails to Sufficiently Plead a Deliberate Indifference Case as Against Defendant Sgt. Timothy Lewalski*

This is a civil rights lawsuit brought by the mother and grandmother of former New York State Department of Corrections and Community Supervision ("NYSDOCCS") inmate Dante Taylor. Mr. Taylor, while serving a life sentence, hung himself with a bedsheet on October 7, 2017, in the infirmary at Wende Correctional Facility.

The Amended Complaint seeks damages for civil rights violations based on (1) deliberate indifference to Mr. Taylor's medical needs (all defendants), (2)loss of intimate association(all defendants), (3)excessive force (correctional officer defendants) and (4) medical malpractice (medical defendants).

---

[1] Lewalski did not challenge the Third cause of action, "Excessive Force", at least insofar as alleged and conceded it is framed so as to minimally state at least a colorable claim.

Plaintiffs made the following 18 averments all having to do with a single use of

force incident which constitute the only factual allegations in the complaint naming

Sergeant Lewalski individually:

"172. On October 6, 2017, at around 10:20 pm, Mr. Taylor began having seizures in his cell related to K2 drug use.

173. Multiple people who were in cells near Mr. Taylor alerted Wende staff that Mr. Taylor was suffering a medical emergency.

174. On information and belief, a group of COs and at least two sergeants, led by Defendant Lewalski and including Defendants Freeman, Lambert, Maldonado, and McDonald, arrived at Mr. Taylor's cell.

175. On information and belief, Defendant Freeman opened Mr. Taylor's cell door for the responding officers.

176. On information and belief, several officers entered Mr. Taylor's cell, including Defendants Lambert, Lewalski, Maldonado, and McDonald.

177. Use of force documents prepared by DOCCS staff state that it was Defendants Lewalski, Horbett, White and Janis who entered Mr. Taylor's cell.

178. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald began to beat Mr. Taylor's head, face and body with their batons, fists, and feet.

179. Men in the adjoining cells heard Mr. Taylor screaming in pain, the sound of sticks hitting his body, and other sounds of an attack.

180. Defendants beat Mr. Taylor until he was unconscious.

181. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald then "hog tied" an unconscious Mr. Taylor by binding his hands and feet with zip ties, causing small lacerations to his wrists and ankle areas.

182. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald carried a motionless and silent Mr. Taylor by his biceps and ankles, face down to the floor, out of his cell and to the top of a stairway leading down from the second floor of the cellblock to the first floor.

4

183. On information and belief, Defendants Lambert, Lewalski, Maldonado, and McDonald threw Mr. Taylor down the stairs head first.

184. While Defendants Lambert, Lewalski, Maldonado, and McDonald beat Mr. Taylor, Defendant Freeman stood by and failed to intervene to protect Mr. Taylor.

185. Defendants Lambert, Lewalski, Maldonado, and McDonald's beating of Mr. Taylor was vicious in scope and went far beyond the level of force needed to restrain a physically incapacitated person.

186. Mr. Taylor was taken to the Wende infirmary, where his injuries were photographed.

187. Mr. Taylor had suffered multiple blunt force injuries to his head, neck, torso and extremities.

188. To cover up their own vicious assault, Defendants later claimed that Mr. Taylor's injuries were self-inflicted and that he had banged his head against his cell wall.

189. At the Wende infirmary, medical staff recorded that Mr. Taylor had a large hematoma under right eye; the right side of his face was swollen and had ecchymosis; as well as other injuries to his face and body."[2]

### *Plaintiff Relies on Purely Conclusory Allegations*

In the First Cause of Action, Plaintiffs allege that the medical defendants as well as the defendant correctional officers were all deliberately indifferent to Mr. Taylor's medical needs.

Mr. Taylor was taken to the infirmary on October 5th after illegally ingesting K2. He was discharged from the medical department back to his cell on October 6th. Later that evening, after again using K2, inmates called for help when Mr. Taylor suffered an adverse

---

[2] Elsewhere in the Amended Complaint Plaintiffs mention Sergeant Lewalski in general averments. For example, Paragraph 35, Plaintiffs allege that numerous corrections officers, including Sergeant Lewalski, "were DOCCS officers working at Wende, who participated in and/or had knowledge of and/or filed to intervene in the assault of Mr. Taylor on October 6, 2017." and Paragraph 37 asserts that the officers "were acting under color of state law."

reaction. Plaintiffs do not allege there was any delay in the officers' response. Mr. Taylor

was forcibly removed from his cell by officers on his cellblock.

When officers, including Sergeant Lewalski, encountered Mr. Taylor he was either

violently striking his head against the wall because he was high on K2 or, according to

plaintiffs, he was unresponsive and/or having "seizures". For purposes of this motion only,

we assume the truth of the latter.

Under either scenario, Mr. Taylor would have been taken off the cellblock and

moved to the infirmary.  Once there, he is under the supervision of the hospital officers and

medical personnel.  Sergeant Lewalski would no longer have any responsibility for him

until Mr. Taylor came back to the block and Plaintiffs do not allege anything to the

contrary.

Plaintiffs allege Mr. Taylor was intentionally assaulted by the officers in the course

of being physically extracted from his cell and then brought to the infirmary. The Amended

Complaint does not allege Sergeant Lewalski escorted Mr. Taylor to the infirmary or that

he was ever present there on October 6th or 7th. While not alleged, this Court is aware that

the medical building is across the compound and physically separated from the building

containing the cellblocks.

Mr. Taylor was seen and treated by medical personnel at the prison for the

superficial injuries alleged in paragraph 89 of the Amended Complaint[      ].  He was

transferred to the Erie County Medical Center late on October 6th and remained there into

the early morning of October 7th. Upon his discharge from ECMC[3], Mr. Taylor returned

to the prison (late morning of the 7th) and was placed in a cell within the infirmary. He

---

[3] Plaintiffs do not allege medical malpractice as against the medical personnel at ECMC who released him on October 7th.

never was moved back to the cell block. He remained in the infirmary until he hung himself

that evening.

The damages sought under the First Cause of Action are for Mr. Taylor's suicide (wrongful

death/survivorship action). This is in contrast to the Third cause of action for excessive

force which seeks damages for injuries resulting from Mr. Taylor's alleged assault by

officers who had to remove him from his cell after he used K2. The Third Cause of Action

survives this motion as it was unchallenged by Sgt. Lewalski. Therefore, Plaintiffs will be

able to proceed against Sgt. Lewalski for his involvement in the cell extraction and alleged

assault of Mr. Taylor in the cellblock and any injuries he sustained before he was taken to

the infirmary.

### *Legal Standard for Pleading Failure to Protect*

The Magistrate Judge applied the correct legal standard when he reviewed the

Defendant's motion:

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to state a claim to relief that is plausible on its face . . . .
> A claim has facial plausibility when the plaintiff pleads factual content [*6]  that
> allows the court to draw the reasonable inference that the defendant is liable for
> the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,
> 173 L. Ed. 2d 868 (2009).
> *McDay v. Eckert*, 2021 U.S. Dist. LEXIS 130717, *5-6

As this Court knows, there are both objective and subjective requirements

that plaintiff has to plead in an Eighth Amendment claim involving deliberate

indifference to an inmate's serious mental health needs.

First, the danger posed by the deliberate indifference must be "sufficiently

serious" from an *objective* perspective; the inmate here was never on the cellblock on

7

October 7th. There is no allegation that he made any overture or threat about committing

suicide while he was on the cellblock so as to impute knowledge to Sgt. Lewalski.

Second, the defendant must have acted with deliberate indifference to that need

(*i.e., subjectively* failed to address the danger).   *See  Smith v. Fischer*, 500 F.App'x 59, 61

(2d Cir. 2012) (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)); *Hathaway*

*v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom., Foote v. Hathaway*,

513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995); *Young v. Choinski*, 15 F.

Supp. 3d 194, 198, 2014 U.S. Dist. LEXIS 129188, *7 .

In a recent case, Judge Wolford recognized that these requirements can be applied

if non-medical prison personnel have notice of an inmate's serious mental health needs:

"[T]here are circumstances where an inmate's pending threat or attempt at suicide **in the**

**moment** provides sufficient notice to non-medical prison personnel of serious mental

health needs." *McTerrell v. Koenigsmann,* 2019 U.S. Dist. LEXIS 104209, *23 ("[A]

prison official has sufficient culpable intent if he has knowledge that an inmate faces a

substantial risk of serious harm and he disregards that risk by failing to take reasonable

measures to abate the harm."); *citing Young v. Choinski*, 15 F. Supp. 3d 194, 202 (D.

Conn. 2014).

### Plaintiffs' Amended Complaint

In support of the Deliberate Indifference claim, Plaintiffs include 4 paragraphs of

purely conclusory allegations against the group of medical defendants and the group of

correctional officer defendants:

> "270. **The Medical Defendants** were aware that Mr. Taylor had numerous
> chronic and acute suicide risk factors that created a significant risk that he
> would commit suicide; that he had recently made several suicide attempts,

8

which significantly increased the risk that he would commit suicide; and that he was in fact suicidal.

271. **The Medical Defendants** nevertheless failed to take adequate steps to address and/or mitigate the risk that Mr. Taylor would commit suicide. . .

276. **The Officer Defendants** were aware that Mr. Taylor had numerous chronic and acute suicide risk factors that created a significant risk that he would commit suicide, including being the victim of a violent assault the night before he died, and that he had requested mental health care.

277. **The Officer Defendants** nonetheless failed to take adequate steps to address and/or mitigate the risk that Mr. Taylor would commit suicide."

Mere conclusory allegations, however, that each of the defendant correctional officers was aware of a potential risk Mr. Taylor would commit suicide and did not prevent it, are not enough to state a claim for damages against them individually. Plaintiffs are required to plead sufficient facts to establish a plausible claim. To succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1970). It is the second requirement, subjective knowledge that is the issue here.

### *Plaintiffs Fail to Allege Defendant was Subjectively Aware At the Time of the Assault the Inmate was Suicidal*

Plaintiffs make no allegation that Sgt. Lewalski had any responsibility for the inmate on October 7th or failed to take any action that would have prevented his suicide. They say the alleged assault created a risk of suicide but the statement is overly general and alleged without relation to time or date. *Cf Phillips v. Mitchell*, 2021 U.S. Dist. LEXIS 58834, 2021 WL 1175051 (in summary judgment context, steps taken by officers

"to protect Plaintiff, including placing him on suicide watch and monitoring his actions at

least every 15 minutes, the mere fact that these measures failed to prevent

his suicide attempt does not provide a basis from which a reasonable jury could conclude

that Kozak was deliberately indifferent") *See also Kelsey v. City of New York*, 2006 U.S.

Dist. LEXIS 91977, 2006 WL 3725543, at *7 ("It is deceivingly inviting to take

the suicide, *ipso facto*, as conclusive proof of deliberate indifference. However, where

suicidal tendencies are discovered and preventive measures taken, the question is only

whether the measures  taken were so inadequate as to be deliberately indifferent to the

risk.") (quoting *Rellergert*, 924 F.2d at 797).

### *The Magistrate Judge Interpreted the Pleadings too Expansively*

The Magistrate Judge held that the officers' assault of the inmate itself constituted

their deliberate indifference. In other words, the assault was a contributing factor in the

inmate committing suicide the next day; Lewalski and the officers knew the assault would

make it more likely the inmate would kill himself.

The Magistrate Judge repeatedly cites paragraph 276 (of the 306 paragraphs) of

Plaintiff's Amended Complaint, to salvage what the Court recognizes "could have been

more clearly pled" [McDay, 2021 U.S.Dist.Lexis 130717 at *23]:

> "276. **The Officer Defendants** were aware that Mr. Taylor had numerous chronic
> and acute suicide risk factors that created a significant risk that he would commit
> suicide, including being the victim of a violent assault the night before he died, and
> that he had requested mental health care."

The plaintiffs do not specify whether any of the  "officer defendants" were "aware"

prior to the assault that the inmate had suicidal risk factors. It does not matter what they

were "aware" of after the assault since they never came back into contact with him. The

Magistrate Judge seems to read this timing element into the pleadings when, in fact, it is

not explicitly stated:

"A fair reading of the Amended Complaint [57] alleges that the "Officer
Defendants"…"were aware that Mr. Taylor had numerous chronic and acute suicide risk
factors that created significant risk that he would commit suicide" (id., ¶276), but rather
than responding to his medical emergency on October 6, 2017 (id., ¶173) by summoning
medical or mental health intervention or taking him to the infirmary, they delayed that
care and exacerbated his risk of suicide when they assaulted him or failed to intervene to
protect him. Id., ¶¶173, 178, 185, 276, 278-79. (emphasis added)"

Even if the assault "exacerbated his risk of suicide" the plaintiffs do not say it was

perpetrated with the knowledge of his suicidal tendencies at the time of the assault. This

is a crucial omission by plaintiffs in pleading deliberate indifference. In other words, at

some time prior to his suicide, but not necessarily prior to the assault, the officer

defendants are alleged to have become "aware" that the inmate had risk factors for

suicide including the fact he was the victim of the assault.   Paragraph 276, relied on by

the Magistrate Judge, does not say such awareness preceded the assault. It is one thing to

allege a victim was assaulted; its another to say he was assaulted despite knowing he was

suicidal. Alone, the former does not support a theory of deliberate indifference. The

pleading, at best, is ambiguous, and does not, as the Magistrate Judge interpreted it,

necessarily make out the elements of deliberate indifference.

The Judge accurately summarized the Defendant's argument:

"According to defendants, "[w]hat plaintiffs seem to want to argue is that . . . the same fact pattern involving Mr. Taylor being physically assaulted either caused a mental injury or further exacerbation of his pre-existing mental problems leading him to commit suicide", "[b]ut that is not how the [Amended] Complaint **[\*23]** is pled." Lewalski's Reply Memorandum of Law [82], 2. Defendant Lewalski and White point to the fact that the only specific allegation against them is their involvement in the alleged October 6, 2017 assault. However, they argue that "[t]he First cause of action does not allege [that their] 'action' in assaulting Mr. Taylor was the reason he later committed suicide. Rather, it says [their] 'inaction' is what constituted 'deliberate indifference' to serious medical needs", but the Amended Complaint lacks any allegations that they had any authority over Taylor's mental health care. Lewalski's Reply Memorandum of Law [82], 2 (emphasis in original); Meyers Buth Affirmation [69-1], ¶25."

The Judge responded by attempting to thread the proverbial pleading needle, relying on language from paragraphs 276 and 279. He found that par. 276 alleged that the assault the night before created a significant risk the inmate would commit suicide. Combined with par. 279 which alleged "all Defendants were aware that their actions and omissions created a substantial risk of harm". The Magistrate Judge found those two statements adequately pled the correctional officers' deliberate indifference.

However, mere knowledge that an inmate is behaving violently or "acting in a 'freaky' manner" is not sufficient to impute awareness of a substantial risk of suicide. *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1146 (7th Cir. 1983); *see also Mathis v. Fairman,* 120 F.3d 88, 91 (7th Cir. 1997).

In order to be liable under the Eighth Amendment, the risk of suicide has to be closely related in time to the officer's failure to act. In other words, it can fairly be said the inmate imminently intended to take his own life and the officer failed to prevent it. *See Collignon,* 163 F.3d at 990(holding that even placing an inmate on suicide watch

12

may not demonstrate a subjective awareness of a substantial risk of imminent suicide).

*Estate of Novack v. County of Wood,* 226 F.3d 525, 529-530, 2000 U.S. App. LEXIS

18999, *7-8; see also *Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 896-

97 (E.D. Wis. 2006) (finding lack of deliberate indifference as a matter of law where it

was not foreseeable that the actions of the state official — allowing cell to be dark for a

few minutes — would allow for decedent's suicide; "That the risk must be assessed in

context is obvious from the nature of the deliberate indifference analysis itself.  Liability

for deliberate indifference punishes not mere *knowledge* about a risk, of course, but the

failure to act upon that knowledge.")

Like the defendant in *Camic,* the inmate here was intoxicated, uncooperative, and

allegedly assaulted Lewalski and other correctional officers[4]. Knowing that he was

behaving violently, or was acting in a "freaky" manner from his ingestion of K-2 is not

synonymous with having reason to know that the violence might become self-directed.

*State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1146, 1983 U.S. App. LEXIS 25837,

*15-16. Judge Wolford carefully makes the same point in *McTerrell v. Koenigsmann,*

2019 U.S. Dist. LEXIS 104209 at *23, cited above when she says that "[T]here are

circumstances where an inmate's pending threat or attempt at suicide **in the moment**

provides sufficient notice to non-medical prison personnel of serious mental health

needs."

Absent factual allegations that establish the officer defendants' subjective

knowledge at the time of the assault that the inmate was particularly vulnerable to

---

[4] It was the officers who reported that the inmate was self-harming by hitting his head against the wall that was rejected by plaintiffs. If he was self-harming, and they had pled the complaint that way, it would make a stronger case that they had properly alleged officers had reason to know of his suicidal tendencies.

suicide, the Amended Complaint does not properly plead a cause of action for deliberate

indifference to the inmate's medical needs.

## CONCLUSION

Insofar as Plaintiffs' fail to plead that Lewalski and the correctional officer

defendants knew at the time they engaged in the assault that the inmate was suicidal, the

Amended Complaint fails to state a cause of action for deliberate indifference to his

medical needs. Therefore, this Court is respectfully urged to dismiss that claim as against

Sergeant Lewalski.

In order to conserve judicial resources, to the extent the expected objections by

other co-defendants contain arguments that are applicable to Sergeant Lewalski, those

arguments are adopted and incorporated in this motion by reference.

Dated: Orchard Park, New York
      August 9, 2020

                                      Yours etc.

                                      /s/Cheryl Meyers Buth
                                      Cheryl Meyers Buth, Esq.
                                      MEYERS BUTH LAW GROUP pllc
                                      *Attorneys for Defendant Sergeant Timothy*
                                      *Lewalski*
                                      21 Princeton Place, Suite 105
                                      Orchard Park, New York 14127
                                      (716) 662-4186
                                      cmbuth@mblg.us

TO:    Katherine R. Rosenfeld, Esq.
        Marissa Benavides, Esq.
        Emery Celli Brinckerhoff & Abady, LLP
        *Attorneys for Plaintiffs Darlene McDay,*
        *individually and as Executrix of the Estate*
        *of Dante Taylor, and Temple McDay*

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
krosenfeld@ecbalaw.com
mbenavides@ecbalaw.com

CC:    David J. Sleight, Esq.
Office of the Attorney General
*Attorneys for Margaret Stirk, Kristen Muratore,*
*Sergeant Scott Lambert, C.O. Freeman,*
*C.O. Mark Collett, C.O. Greighton, C.O. Theal,*
*C.O. Baron, Jill Olivieri, R.N., Diane Dirienzo, R.N.,*
*Lisa Prishel, R.N., Debra Stubeusz, M.D., Anjum*
*Haque, M.D., Bertram Barall, M.D., Kelly Konesky,*
*LCSW-R, and Dana Mancini, SW2,*
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
(716) 852-6274
david.sleight@ag.ny.gov


Joseph M. LaTona, Esq.
*Attorney for C.O. McDonald*
403 Main Street, Suite 716
Buffalo, New York 14203
(716) 842-0416
sandyw@tomburton.com


Eric M. Soehnlein, Esq.
Sean M. O'Brien, Esq.
Lippes Mathias Wexler Friedman LLP
*Attorneys for C.O. Thomas White*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
esoehnlein@lippes.com
sobrien@lippes.com


Daniel J. Henry, Jr., Esq.
Villarini & Henry, L.L.P.
*Attorney for C.O. J. Horbett*
16 Main Street
Hamburg, New York 14075

(716) 648-0510
dhenry@villariniandhenry.com


Brian Melber, Esq.
Rodney O. Personius, Esq.
Scott R. Hapeman, Esq.
Personius Melber LLP
*Attorneys for C.O. D. Janis*
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 855-1050
bmm@personiusmelber.com
rop@personiusmelber.com
srh@personiusmelber.com


Barry N. Covert, Esq.
Diane M. Perri Roberts, Esq.
Patrick J. Mackey, Esq.
Lipsitz Green Scime Cambria LLP
*Attorneys for C.O. Melvin Maldonado*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333
bcovert@lglaw.com
droberts@lglaw.com
pmackey@lglaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARLENE McDAY, *et al.*,

**20-cv-233**

Plaintiff,

**vs.**

STEWARD ECKERT, *et al.,*

Defendants.

_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, I electronically filed the foregoing Objections to

Magistrate Judge's Report & Recommendation on behalf of Defendant Sgt. Timothy Lewalski

with the Clerk of the District using its CM/ECF system and electronically served the following.


Katherine R. Rosenfeld, Esq.
Marissa Benavides, Esq.
Emery Celli Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
krosenfeld@ecbalaw.com
mbenavides@ecbalaw.com

David J. Sleight, Esq.
Office of the Attorney General
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
david.sleight@ag.ny.gov

Joseph M. LaTona, Esq.
403 Main Street, Suite 716
Buffalo, New York 14203
sandyw@tomburton.com

Eric M. Soehnlein, Esq.
Sean M. O'Brien, Esq.
Lippes Mathias Wexler Friedman LLP50
Fountain Plaza, Suite 1700
Buffalo, New York 14202
esoehnlein@lippes.com
sobrien@lippes.com

Daniel J. Henry, Jr., Esq.
Villarini & Henry, L.L. P.
16 Main Street
Hamburg, New York 14075
dhenry@villariniandhenry.com

17

Brian Melber, Esq.
Rodney O. Personius, Esq.
Scott R. Hapeman, Esq.
Personius Melber LLP
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
bmm@personiusmelber.com
rop@personiusmelber.com
srh@personiusmelber.com

Barry N. Covert, Esq.
Diane M. Perri Roberts, Esq.
Patrick J. Mackey, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
bcovert@lglaw.com
droberts@lglaw.com
pmackey@lglaw.com


            /s/ Cheryl Meyers Buth

            CHERYL MEYERS BUTH