

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF REGIONAL OFFICES
BUFFALO REGIONAL OFFICE

Telephone: (716) 852-6274

February 7, 2023

**(via ECF)**
Hon. Jeremiah J. McCarthy
Western District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY  14202


**RE:   <u>McDay v. Eckert, et al.; 20-CV-233</u>**

Dear Judge McCarthy:

The Office of the Attorney General represents 17 of the 23 Defendants in this action (the "State Defendants"). This letter will serve to address the discovery disputes that have arisen between the parties as outlined in Plaintiff's counsel's letter to the Court dated January 26, 2023. This letter will also address the State Defendants objections to the 8 non-party subpoenas recently served by Plaintiff's counsel on the New York State Department of Corrections and Community Supervision ("DOCCS"). Finally, it should be noted that the parties met and conferred on January 31, 2023, in a good faith attempt at resolving some of the discovery disputes (hereafter "meet and confer"). Where there was some resolution, it will be so noted below.

      I.      <u>Request for Extension of Fact Discovery Until April 28, 2022</u>

It is my understanding that the parties are in substantial agreement that the deadline for the completion of fact discovery needs to be extended for three months; however, the State Defendants have some remaining objections related to the extension that it would like the Court to address. Those objections are discussed below.

      II.      <u>Request to Extend the 10 Deposition Limit of Fed. R. Civ. P. 30(a)(2)(A)(i)</u>

I believe the parties also resolved the State Defendants' objection regarding which party bears the expense of supplying a copy of the deposition transcript to the opponent's counsel (the party noticing another parties' deposition will bear the expense of providing a copy to the party witness and his or her counsel.

The State Defendants remaining objection to the Plaintiff's request to exceed the 10-deposition limit with another 20 depositions is the open-ended nature of the request. Plaintiff's counsel has taken 10 depositions so far: 4 non-party and 6 party depositions. In her January 26, 2023, letter to the Court, Plaintiff's counsel represents that the additional 20 depositions "should be "the remaining necessary depositions" Plaintiff needs but cannot rule out the need for additional ones. As it stands now, with the additional 20 depositions, and assuming the fact discovery period is extended by 90 days, counsel for parties will be doing, on average, one deposition every third business day. That is a lot of time to devote to one case. The State Defendants are seeking some kind of finality to the schedule for fact depositions in this case.

As the Court may recall, this is not the first time Plaintiff's counsel has brought the issue of exceeding the 10-deposition limit to the Court's attention. In February 2022 counsel wrote the Court seeking to preemptively get the Court's permission to take 30 depositions. *See* ECF No. 126. At that time, counsel identified numerous other non-party depositions they deemed as necessary and represented that the universe of potential witnesses would likely exceed 100 people. *Id*. at pgs. 3-5. If counsel knows at this time that they are going to want to depose additional non-party witnesses identified in her February 25, 2022, letter, then she should so state now so the Court and the parties can address what that might mean at the discovery conference on February 9, 2023.

III.     Discovery Disputes Regarding the State Defendants' Document Production

To date, the State Defendants have produced approximately 4500 pages of documents on nine occasions in response to Plaintiff's four discovery requests. These are documents that were almost exclusively in the custody and control of DOCCS, not the individual State Defendants. Plaintiff and the State Defendants have resolved some of the State Defendants' objections, but others remain and are addressed below.

Request No. 8: This request sought documents related to the "suicide conference call" referenced in the OSI file the State Defendants' produced regarding Dante Taylor's death. OSI has advised the OAG that no other documents regarding the "suicide conference call" exist other than what is contained in the OSI file (i.e., Bates Nos. OSI 000262-264). Plaintiff's counsel was advised of this during the meet and confer. The State Defendants consider this dispute resolved.

Requests Nos. 20, 21 and 22: These requests essentially seek all documents pertaining to investigations into inmate suicides at Wende CF for the last 16 years in DOCCS or the NYS Commission of Corrections' ("COC") possession. The State Defendants objected to this request on the grounds that it was overly broad and burdensome, that it was vague and ambiguous and that it was not reasonably calculated to lead to the discovery of admissible evidence, did not produce any documents in response and we stand on those objections.

First, the COC is a wholly separate state agency from DOCCS. This Court has taken the position that, as employees of DOCCS, the individual defendants in inmate §1983 civil rights claims have the functional equivalent to custody and control of their employer's documents and, thus, is responsible for producing documents in DOCCS custody and control. However, as far as I know, this Court has never found that documents in the custody and control of other State agencies

that are not the defendants' employer (like COC here) are required to be produced by the OAG in inmate cases. Notwithstanding, Plaintiff's counsel has subpoenaed these documents from COC, and it appears that COC intends to comply with that subpoena conditioned on the entry of an order that addresses their concerns arising out of N.Y. Mental Hygiene Law § 33.13(c)(1).

Second, Plaintiff counsel claims that these documents are probative of Plaintiff's claims that various Defendants that held supervisory positions were deliberately indifferent. Whether it is characterized as deliberate indifference to a serious mental health need or failure to protect, evidence of other inmates committing suicide that may have occurred during a supervisor's period of supervision are not relevant to the issue of the supervisor's personal involvement in this Plaintiff's alleged Eighth Amendment violation. As the Supreme Court made clear in *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009), and the Second Circuit recently affirmed in *Tangreti v. Bachman,* 983 F.3d 615 (2d Cir. 2020), there never was such a thing as supervisory liability under §1983. Instead, in order for a plaintiff to establish the personal involvement of supervisory officials they must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti,* 983 F.3d at 615 (quoting *Iqbal,* 556 U.S. at 676). "*Tangreti* has abrogated, and completely replaced, the factors set forth in *Colon.*" *Hendrix v. Annucci,* 2021 WL 4405977, at *7 (N.D.N.Y. 2021) (collecting cases).  Thus, the *Colon* factors may not be relied on to show personal involvement.  General awareness does not plausibly suggest that a defendant had sufficient knowledge of "the specific circumstances and details of" the plaintiff's alleged constitutional violation. Thus, in this case, the fact that a defendant in a supervisory position was aware that other inmates had committed suicide is not probative of whether that defendant was aware that the Plaintiff in this case was at an excessive risk of committing suicide and deliberately ignored that risk.

Finally, the over breadth, burdensomeness, and the vague and ambiguous nature of these requests is apparent from their face. For example, there is no temporal limit to these requests. The State Defendant cannot see any possible probative value to information about suicides that occurred after the one at issue in this case. Similarly, the scope of the requests to include, as an example in Request No. 20, "[a]ll documents relating to all investigations conducted by any federal, state, or local government department or agency into the death of an incarcerated person by suicide at Wende" might include multiple types of documents maintained by DOCCS, including medical and mental health records, and other confidential information pertaining to other inmates.

Requests Nos. 1, 18 and 33: Plaintiff's counsel and the OAG reached an agreement during the meet and confer that the OAG would ask its clients to search their personal and work computers using certain agreed upon search terms for emails that might be responsive to this request.

IV.     Non-Party Subpoenas Recently Served on DOCCS

Plaintiff's counsel recently served seven non-party subpoenas on DOCCS seeking, broadly, documents related to other allegations of misconduct involving Defendants and the personnel files of those Defendants that the OAG does not represent. Counsel for the non-OAG Defendants have raised their own objections to DOCCS producing their client's personnel files, as has DOCCS, so I will leave it to those parties to address the issue.

With respect to the subpoena that seeks documents related to other allegations of Defendants' misconduct[1], Plaintiff seeks, without temporal limitation or regard to whether the allegations were substantiated or not, all documents concerning the use of force incidents and unusual incidents, including, without limitation, use of force and/or unusual incident packages, where one or more of the Defendants either (a) prepared, either as participants or witnesses, the document(s) or (b) were identified as having been present or involved. A copy of the subpoena is attached as **Exhibit "A."** Plaintiff also seeks all OSI Investigative Reports relating to any allegations of misconduct by Defendants and all grievances, complaints, or letters of complaint by inmates at Wende CF alleging misconduct by any Defendants. Finally, Plaintiff's subpoena also seeks 99 specific OSI files.

DOCCS has objected to the burdensome nature of this request. The Court has addressed requests for documents like this in other cases, so it is aware that DOCCS does not maintain Uses of Force, Unusual Incident Reports, Grievances, and other inmate complaint documents sorted by individual employee and, therefore, the burden that it would place on DOCCS to find this material. It is my understanding that DOCCS has offered to meet and confer with Plaintiff's counsel to determine which records can be produced without objection, so I will let DOCCS flesh out its burdensomeness objection. However, I would like to address the probative value of these types of documents so it can be weighed against the burdensomeness it imposes on DOCCS.

This Court has addressed the issue of the probative nature of documents related to other, unsubstantiated allegations of any misconduct by inmates in numerous other cases and found it's probative value to be very limited when weighed against the burdensomeness to DOCCS, and that the requests are overly broad. *See, e.g., Brown v. Pritchard*, 2011 WL 4439092, *6 (W.D.N.Y. September 23, 2011) (unsubstantiated grievances not probative of supervisory officials personal involvement or liability); *Treadway v. Vouture*, 2011 WL 3159102, *3 (W.D.N.Y. July 26, 2011) ( "The burdensome nature of this request is underscored by the fact that none of the requested grievances would assist a finder of fact in determining whether Plaintiff himself suffered an injury… ."); *Woodward v. Mullah*, 2010 WL 3023117, *3 (W.D.N.Y. July 29, 2010) (probative value of unsubstantiated grievances against corrections officer quite limited and request overly broad and burdensome).

Finally, I would like to address issues regarding the probative value of the specific 99 OSI files sought by Plaintiff's subpoena. Plaintiff got this list of 99 OSI files from the Dante Taylor OSI file produced in this case ("Taylor File"). *See* portion of the Taylor file attached as **Exhibit "B."** During the deposition of Defendant Lambert, Plaintiff's counsel requested copies of the OSI files listed as "substantiated" from the Taylor File list (i.e., SCU/10/0005 and IAD/08/0060). I learned a couple things from my office's efforts to obtain and produce those and

---

[1] The subpoena also seeks this material as it pertains to non-party Corrections Officer Dwight Wyatt.

other OSI files Plaintiff requested. First, just because that list says "substantiated" does not necessarily mean that there is a substantiated finding of wrongdoing against the person on the list, only that they had some involvement in the investigation. For the two files I obtained for Lambert, he was not accused of wrongdoing in either. In the first, SCU/10/0005, he was just someone OSI interviewed in connection with allegations of sexual harassment made against another officer. *See* Interview Report attached as **Exhibit "C."** In the other case, he was the person that reported smelling alcohol on the breath of a dentist that worked at Wende CF. *See* Summary attached as **Exhibit "D."** Similarly, and more generally, just because a person is on the Taylor File list, either substantiated or unsubstantiated, does not mean that the person was the accused in the OSI investigation, again, only that they were involved in some way, like they were a witness or the sergeant in charge at the time. The point being, that whatever the probative value of this propensity evidence may be, if the Court is inclined to allow Plaintiff discovery of this material, it should be winnowed down to only substantiated OSI files where the Defendant is the accused, and the wrongdoing alleged is the same as that alleged in this action.

Respectfully submitted,

*/s/ David J. Sleight*
David J. Sleight
David.Sleight@ag.ny.gov
Assistant Attorney General
716-852-6274

cc:      All Counsel of Record (via ECF)

Main Place Tower, 350 Main Street, Suite 300A, Buffalo, NY 142-02 • (716) 853-8400 • Fax: (716) 853-8428
http://www.oag.state.ny.us