UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE McDAY, individually and as Executrix of the Estate of DANTE TAYLOR, and TEMPLE McDAY

         Plaintiffs,

vs.

ECKERT, et al.

         Defendants.
_____

**DEFENDANTS' JOINT REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENAS**

**20-CV-00233**

## Defendants' Reply Memorandum

On February 22, 2023 the Defense filed a joint motion to quash two subpoenas served by plaintiff on the New York State Department of Corrections and Community Supervision ("DOCCS") for the following:

> 1) Defendant correctional officer personnel files, including "pre-employment screening tests and evaluations"; and
>
> 2) Office of Special Investigation ("OSI") reports and complaints alleging any type of misconduct without time restriction [dkt #164].

This is a Reply to Plaintiff's Response in Opposition to Defendant Correctional Officers' Motion to Quash the subpoenas.

### Defendants' seek a ruling that their "pre-employment screening tests and [psychological] evaluations" are not discoverable

As Plaintiff points out in her Response, the parties have now agreed the defense will provide the

1

subpoenaed personnel files with redacted identifying information and a privilege log for any withheld documents[1].

Plaintiff argues that the issue of "pre-employment screening tests and evaluations" is moot since she learned from DOCCS that information is not contained in personnel files.

However, the Defense is still seeking a ruling from this Court on the relevancy of that information assuming plaintiff acquires DOCCS pre-employment testing, including psychological evaluations, in another manner.

If plaintiff does not intend to seek those records from another source nor make direct or indirect use of that information during the course of discovery or at trial, then we would agree the issue is in fact moot. Otherwise, we stand by our original argument that the release of those records, especially without a proper showing of necessity by plaintiff, violates Defendants' right to privacy and are irrelevant to these proceedings.

### Even as modified, plaintiff's request for defendants' disciplinary reports, complaints or inmate grievances is purely a fishing expedition

OSI generated a list of disciplinary records for all correctional staff believed to have been present at Taylor's cell on October 6, 2017. The OSI records subpoenaed by plaintiff would include disciplinary reports, notices of discipline, complaints by supervisors and/or inmates. Although plaintiff modified her original request after the defendants objected, it is still over broad. The fact she has now agreed to self-limit that request demonstrates her recognition the original request was

---

[1] In her Response, the plaintiff complains that defendants, having received their client's personnel files in mid-February, have not turned over the personnel records quickly enough. In the case of Sgt. Lewalski, he is now retired but worked for DOCCS since 1990, a period of 26 years prior to the events covered by the instant lawsuit. Since receiving the personnel records, plaintiff has scheduled additional depositions (the number of depositions conducted in the case now totals 16); additional non-party depositions were held two weeks ago; and an out-of-state defendant was deposed last week which required travel by at least two of the attorneys. Defendants are making a diligent effort in light of all other discovery activities being undertaken to provide plaintiff with the personnel records.

improper. Defendant maintains that it is well-accepted in our Circuit that requests unlimited by time range or subject matter are over broad.

Where discipline is taken against officers in the form of suspensions, misconduct reports or similar adverse action, those records in Section 1983 actions are normally discoverable if they concern 1) the truth or veracity of a defendant or 2) similar conduct to the type of allegations made in the case. *Woodward v. Afify* 2017 U.S. Dist. LEXIS 9065, at *11-14 [gathering cases] (Feldman, M.J.).

Like the limitations placed on the scope or topic of the disciplinary record, courts have not approved record requests with unlimited time ranges. *Id* (limiting documents subject to disclosure to two years); *Russell v. Scott* Russell v. Scott, 2022 U.S. Dist. LEXIS 137485, *23-26 (finding a request is overbroad if it includes no time limit or date range and no limitation regarding subject matter); *Cameron v. Menard,* 2021 U.S. Dist. LEXIS 125565, *19-21 (limiting a plaintiff's request to two years preceding the alleged incident). Plaintiff also cites *Montanez v. City of Syracuse*, 2019 WL 4328872 at *4 (NDNY Sept. 12, 2019) where the court allowed discovery of prior sexual assaults of women by a police officer while on duty. The court considered not just the similar nature of the incidents but also "the closeness in time" between those interactions and the alleged conduct with plaintiff.

Plaintiff's experienced counsel inherently recognizes this standard as she cites *Johnson v. Miller*, 2021 U.S. Dist. LEXIS 166712, *6-11. That case involved a *pro se* litigant unlike here where plaintiff is represented by experienced civil rights counsel. Even allowing for more liberal treatment of a *pro se* plaintiff's request, the Court disallowed his request for 10 years of complaints and disciplinary actions for each defendant. The Court held the time range was not in proportion to the needs of the case and overbroad. Judge Baxter, citing his 10 years of experience in

addressing discovery disputes in prisoner civil rights cases in New York, noted that inmates file a large number of grievances, many of which DOCCS determines to be unfounded "which substantially reduces their probative value". *Id.* Grievances which are "founded" and result in discipline of a correctional officer will have much more probative force.

After balancing the interests of the parties in *Johnson*, Judge Baxter ordered Defendants to produce <u>founded</u> reports from 2017-2020 of the types of misconduct alleged in that case that resulted in the imposition of discipline; or founded claims that a defendant made a false statement or provided false testimony. Additional records were ordered to be turned over only to the extent defendants intended to rely on past or subsequent job history as part of their trial defense.

Where the parties cannot agree on what documents are required to be disclosed, some courts have ordered challenged records to be provided for *in camera* review. *Woodward v. Afify* at *17-18. Former Magistrate Judge Hugh B. Scott dealt with most of the same arguments plaintiff makes here in *Brown v. Lian*, 2011 U.S. Dist. LEXIS 127843, *3-7. The Judge began his balancing analysis by finding it was incumbent on plaintiff to make a showing of materiality and relevance before an *in camera* review was warranted: "The relevance of these documents also needs to be determined prior to any production 'even if the defendant has not made a substantial showing of harm'". *Id.* (*citing Peirce v. Ottaway*, 2009 US Dist LEXIS 21866 at *9-11 (WDNY Mar. 18, 2009, Curtin, J.)). Plaintiff asserts that with respect to certain OSI investigatory records she has obtained them through other means but can't tell because of redactions if they are relevant; so she insists on discovery of them from the defense. The burden is on plaintiff in this regard to show the relevancy of the records she is seeking. Plaintiff speculates that the OSI reports "may" reveal admissible evidence to support her theory, "may" support her claims the officers are lying,

"may" show some of them used excessive force in the past" (see plaintiff's memorandum of law at p.10)

In that *Brown* the plaintiff argued that defendants' personnel records were necessary to show motive and intent to harm inmates, possibly to refute defense contentions that they would not use excessive force. Plaintiff further claimed to have spoken to other inmates who said they were unlawfully beaten by the defendants. Only after plaintiff met his initial burden of demonstrating relevance in that case did Judge Scott permit discovery of disciplinary records. Even then, he limited disclosures to records that dealt with similar allegations within 2-years of the incident.

Dante Taylor was in DOCCS custody for approximately one year. He was convicted of the highly publicized, grisly, and brutal rape/murder of 21-year old Sarah Goode on June 7, 2014. Taylor was an inmate at Wende Correctional Facility from October 13, 2016 until his death on October 7, 2017. Any disciplinary record which pre-dates October 2016 has nothing to do with Taylor himself. Absent some showing or reason to believe these officers have engaged in a pattern of conduct as plaintiff speculates, the records are largely irrelevant. The reality is force is used on inmates. But not every complained of use of force, absent allegations of excessive force under similar circumstances to events here, is relevant.

Defendants object to the wholesale disclosure of all OSI files and even summary reports not limited by similar conduct or time period. We suggested reports reflecting substantiated instances of excessive force for the two-year period October 6, 2015-October 6, 2017 be disclosed. Plaintiff rejected defendants' proposal and modified her request to include:

5

1) <u>57</u> OSI investigative files (reduced from the 99 investigative files sought in plaintiff's subpoena), some of which date back to 2009[2] and some which post-date October 6, 2017;

2) <u>all</u> OSI investigative reports relating to <u>any</u> allegations of misconduct by the CO Defendants; and

3) 4 notices of discipline by DOCCS against Sgt. Lewalski for unrelated matters and the notices of discipline against Lewalski, Horbett and White for this incident (after a labor arbitration process all officers were returned to work)[3].

Aside from the disciplinary records which she obtained through a FOIL request but in redacted form (See Plaintiff's Memorandum of Law p.2, ftnt 2), plaintiff continues to seek access to records beyond what she is not entitled to and subjects the defendants to their potential misuse. To the extent plaintiff intends to use the records to infer the officers are subpar or of bad character and acted in conformity therewith this violates Fed.R.Evid. 402, 403 & 404(a)(1) and (b)(1). Recognizing this plaintiff argues the records may be admissible under Fed.R.Evid. 404(b)(2) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident". In other words, a "pattern" where officers were motivated or planned to use force on other inmates who smoked K2 or engaged in misconduct.

In this case depositions and other discovery establish that Taylor had been disciplined in June 2017 for previously using contraband drugs but there was no associated use of force on that

---

[2] Approximately half of these relate to Defendant Lewalski who was a Sergeant at Wende C.F. Similar to Sgt. Lambert who was listed as a witness or participant on the 26-pages of summaries the OAG provided to plaintiff from OSI "investigative reports", supervisory officers are, by the nature of their position, more often listed on DOCCS use-of-force paperwork. The appearance of their name on a higher number of reports than correctional officers does not corelate with an inference of misconduct.

[3] As pointed out by plaintiff (See Plaintiff's Memorandum of Law p.4), the arbitrator imposed a $1500 fine on Sgt. Lewalski for failing to include sufficient detail on a 2104 form by not listing every staff member present even if he lacked direct knowledge (Sgt. Lambert handed Sgt. Lewalski flexy cuffs but his name was left off the form). The arbitrator rejected any accusation of collusion in filling out the report.

occasion. Taylor again accessed a contraband substance believed to be K2 and smoked it on October 5, 2017. He was removed from his cell after inmates called for assistance. Taylor was disoriented and throwing water or liquid on the floor. He was taken off A-block to the medical unit. After he was medically cleared, he was returned to his cell. While Plaintiff does not claim excessive force was used to extract Taylor from his cell, several officers suffered minor injuries during the encounter.

The next day, October 6, 2017, Dante Taylor again smoked K2. This time, however, his reaction to K2 again caused him to act irrationally but this time he was more aggressive. He had to be forcibly restrained in his cell in order to be removed from the block and taken to the medical unit. Therefore, plaintiff cannot show that a "pattern" of excessive force was used against Taylor while he resided at Wende Correctional Facility. Therefore, plaintiff bears the burden of explaining why any use of force incident, especially going back as far as 2009, would be relevant to proving motive or plan here.

At page 9 of her memorandum, plaintiff explicitly argues that such records are "discoverable and potentially admissible to show that certain CO Defendants have assaulted inmates over and over for years, pursuant to a plan or "pattern of relevant conduct". In context, the cases cited are inapposite. The cited cases stand for the proposition that where prior disciplinary records show a similarity from which it can be implied the subject incident is a "signature crime" the records are discoverable. For instance, if the officer described placing a boot to the back of an inmate's neck during previous incidents and did so again here; or the events shared some other characteristic with the acts charged here or were part of a unique scheme, they would be discoverable. This is not the case here. There is no claim, for example, that removing Taylor from his cell was just a ruse to assault him and that officers had previously engaged in a pattern of such

7

schemes. Plaintiff will try to convince a jury of some sinister conspiracy; Occam's razor suggests a simpler answer: Taylor had just been removed the day before after smoking K2 and acting erratically. This time, according to witnesses who have been deposed, Taylor was thrashing about wildly and failing to obey commands, some injuries were self-inflicted and others resulted from officers having to restrain him.

Plaintiff has not established that the October 6, 2017 use of force was part of a larger pattern of officer-on-inmate violence leading to suicide or how records of other unrelated incidents are relevant. Plaintiff merely theorizes, without any proof whatsoever, that Taylor did not want to return to the cellblock for fear of another assault and this was the impetus for his suicide. Rather, it is just as likely Taylor was upset because he knew from experience he would be subject to a loss of privileges if it was demonstrated that he had smoked K2. Plaintiff speculates that the October 6, 2017 "catalyz[ed]" the death of Taylor; yet she does not cite one iota of proof from the thousands of pages of discovery to date or any expert opinion to support her theory.

**Defendant's motion to quash should be granted; in the alternative, the Court should review the materials *in camera***

The Defense does not object if plaintiff requests that the Court review the disciplinary records to determine which ones, if any, should be turned over. On pages 1 and 3 of plaintiff's response, she makes two arguments as to why the officers' disciplinary files might be relevant -- "Because of profound discrepancies between the CO Defendants' version of events, the medical evidence and testimony from inmate eyewitnesses, Plaintiff's claims…will turn on issues of credibility, intent and pattern…" Plaintiff does not elaborate on what alleged "discrepancies" there are in the testimony of the CO Defendants deposed to date. Questioning at the depositions has implied the officers conspired to conceal excessive force was used (*cf* plaintiff's memorandum of

8

law p.12 citing discrepancies between <u>inmate claims</u> and officer testimony) The medical examiner has not yet been deposed nor have any inmates who claimed to have witnessed events.

The OSI Report relies on inmate witness statements and on select autopsy findings of the Erie County Medical Examiner. The parties have not yet deposed any of the inmate witnesses or the Medical Examiner. In her Response, Plaintiff cleverly quotes from only a portion of the Medical Examiner's Report: Taylor had "numerous recent blunt injuries of the head, torso and extremities, particularly on the right side of the body" [omits words "some of"] which are "concerning for inflicted injuries (i.e. not self-inflicted)" (<u>citing OSI report</u> at p.3, Ex. 1 to Rosenfeld March 20, 2023 Declaration). The full quotation continues on: "with a portion of those being consistent with the restraint techniques reportedly used".

The OSI report extrapolates from the M.E.'s findings to draw a conclusion <u>not</u> made by the Medical Examiner; i.e. that Taylor's blunt force injuries are "consistent with the reported staff assault as reported by inmate witness" (See OSI report attached to Declaration of Katherine Rosenfeld dated March 20, 2023 at p.1).

Three of those inmates who claimed to witness events on October 6, 2017 were scheduled to be deposed at their respective correctional facilities last month but those depositions were abruptly cancelled by plaintiffs. The Correctional Officers who have been deposed have uniformly denied using excessive force on Taylor. So whether prior reports, complaints or grievances involving claims against these officers are relevant will depend in part on what these other witnesses testify to here.

Last month, the defendants deposed plaintiff Darlene McDay. During her deposition, Ms. McDay testified that she did not believe her son committed suicide. She implied he may have died as a result of being assaulted by officers. After being removed from A-block at approximately

9

10:00 p.m. on October 6, 2017, Mr. Taylor was taken to ECMC primarily for swelling and ecchymosis on the right side of his face and other superficial injuries. After examination at the hospital, Taylor was returned to Wende a few hours later, in the early morning of October 7, 2017. He remained in the medical unit and died later that day. Dr. Tara Mahar of the Erie County Medical Examiner's Office conducted an autopsy. Taylor's body was then returned to his next of kin. It was only during Ms. McDay's questioning that for the first time the defendants learned she had a second autopsy conducted.

After the deposition, Defendants served plaintiff with a request for that autopsy report to which Plaintiff objected. Pursuant to plaintiff's request for legal authority, and in an effort to resolve the dispute, Defendant sent a letter-memorandum to plaintiff on March 22, 2023 and last week sought to schedule a "meet and confer" which we have scheduled for Wednesday April 12th. Rather than handling these discovery disputes piecemeal, perhaps it makes more sense to abide the "meet and confer", any necessary motion practice, and allow depositions of the inmate witnesses and/or Medical Examiner to take place.

Dated: April 10, 2023
      Orchard Park, New York

      MEYERS BUTH LAW GROUP, PLLC
      *Attorneys for Defendant Timothy Lewalski*

      By: /s/ Cheryl Meyers Buth
          Cheryl Meyers Buth, Esq.
          21 Princeton Place, Suite 105
          Orchard Park, New York  14127
          (716) 508-8598
          cmbuth@mblg.us

          Laurie A. Baker, Esq.
          21 Princeton Place
          Suite 105
          Orchard Park, New York  14127

(716) 508-8598
labaker@mblg.us

TO: Katherine R. Rosenfeld, Esq.
Emery Celli Brinckerhoff & Abady, LLP
*Attorneys for Plaintiffs*
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
krosenfeld@ecbalaw.com

CC: David J. Sleight, Esq.
Office of the Attorney General
*Attorney for Stewart Eckert, Margaret Stirk, Kristen Muratore,
Sgt. Scott Lambert, C.O. Freeman, C.O. Mark Collett,
C.O. Greighton, C.O. Theal, C.O. Baron, Jill Olivieri,
Diane Dirienzo, Lisa Prishel, Debra Stubeusz,
Anjum Haque, Bertram Barall, Kelly Konesky,
and Dana Mancini,*
Main Place Tower – Suite 300A
350 Main Street
Buffalo, New York 14202
(716) 852-6274
david.sleight@ag.ny.gov


Joseph M. LaTona, Esq.
*Attorney for C.O. McDonald*
403 Main Street – Suite 716
Buffalo, New York 14203
(716) 842-0416
sandyw@tomburton.com

Alexander W. Eaton, Esq.
Lippes Mathias Wexler Friedman LLP
*Attorneys for C.O. Thomas White*
50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
(716) 807-2757
aeaton@lippes.com

Eric M. Soehnlein, Esq.
Lippes Mathias Wexler Friedman LLP
*Attorneys for C.O. Thomas White*

50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
(716) 853-5100
esoehnlein@lippes.com

Sean M. O'Brien, Esq.
Lippes Mathias Wexler Friedman LLP
*Attorneys for C.O. Thomas White*
50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
(716) 853-5100
sobrien@lippes.com

Daniel J. Henry, Jr., Esq.
Villarini & Henry, L.L.P.
*Attorneys for C.O. J. Horbett*
16 Main Street
Hamburg, New York 14075
(716) 648-0510
dhenry@villariniandhenry.com

Brian M. Melber, Esq.
Personius Melber LLP
*Attorneys for C.O. D. Janis*
2100 Main Place Tower – 350 Main St.
Buffalo, New York 14202
(716) 855-1050
bmm@personiusmelber.com

Rodney O. Personius, Esq.
Personius Melber LLP
*Attorneys for C.O. D. Janis*
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 855-1050
rop@personiusmelber.com

Scott R. Hapeman, Esq.
Personius Melber LLP
*Attorneys for C.O. D. Janis*
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 855-1050
srh@personiusmelber.com

Barry N. Covert, Esq.
Lipsitz Green Scime Cambria LLP
*Attorneys for C.O. Melvin Maldonado*
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
(716) 849-1333
bcovert@lglaw.com

Diane M. Perri Roberts, Esq.
Lipsitz Green Scime Cambria LLP
*Attorneys for C.O. Melvin Maldonado*
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
(716) 849-1333
droberts@lglaw.com

Patrick J. Mackey, Esq.
Lipsitz Green Scime Cambria LLP
*Attorneys for C.O. Melvin Maldonado*
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
(716) 849-1333
pmackey@lglaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE McDAY, individually and as Executrix
of the Estate of DANTE TAYLOR, and TEMPLE
McDAY

                        Plaintiffs,

                                                **20-CV-00233**

vs.

SERGEANT TIMOTHY LEWALSKI, et al.

                        Defendants.
_____

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on April ____, 2023, I filed the foregoing joint reply to plaintiffs' response via the CM/ECF electronic filing system on:

Katherine R. Rosenfeld, Esq.
Emery Celli Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
krosenfeld@ecbalaw.com

David J. Sleight, Esq.
Office of the Attorney General
Main Place Tower – Suite 300A
350 Main Street
Buffalo, New York 14202
david.sleight@ag.ny.gov

Joseph M. LaTona, Esq.
403 Main Street – Suite 716
Buffalo, New York 14203
sandyw@tomburton.com

Alexander W. Eaton, Esq.
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
aeaton@lippes.com

Eric M. Soehnlein, Esq.
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
esoehnlein@lippes.com

Sean M. O'Brien, Esq.
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza – Suite 1700
Buffalo, New York 14202
sobrien@lippes.com

Daniel J. Henry, Jr., Esq.
Villarini & Henry, L.L.P.
16 Main Street
Hamburg, New York 14075
dhenry@villariniandhenry.com

Brian M. Melber, Esq.
Personius Melber LLP
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
bmm@personiusmelber.com

14

Rodney O. Personius, Esq.
Personius Melber LLP
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
rop@personiusmelber.com

Scott R. Hapeman, Esq.
Personius Melber LLP
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
srh@personiusmelber.com

Barry N. Covert, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
bcovert@lglaw.com

Diane M. Perri Roberts, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
droberts@lglaw.com

Patrick J. Mackey, Esq.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
pmackey@lglaw.com

<u>Jennifer D. Ciccarella</u>