UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE McDAY, individually and as Executrix
of the Estate of DANTE TAYLOR, and TEMPLE
McDAY

                        Plaintiffs,

                                                      **20-CV-00233**

vs.

SERGEANT TIMOTHY LEWALSKI, et al.

                        Defendants.
_____

### DEFENDANT LEWALSKI'S REPLY IN SUPPORT OF HIS MOTION TO QUASH PLAINTIFF'S SUBPOENA SEEKING PROTECTED MEDICAL INFORMATION

Former DOCCS Sergeant Timothy Lewalski ("Mr. Lewalski") previously moved to quash plaintiff's subpoena for Mr. Lewalski's workers' compensation files and disability retirement documents.[1]

On August 9, 2023 (Dkt. # 227) this Court ordered the production of OSI investigate reports, Use of Force and Unusual Incident reports. The Court should view the instant subpoena as nothing more than a transparent attempt to circumvent this Court's prior Order.

The workers' compensation and retirement disability files plaintiff seeks contain protected medical information. In addition, the records are not relevant to the cause of action for excessive force in which Mr. Lewalski is named in the Complaint.

---

[1] On February 5, 2024, defense counsel spoke to DOCCS counsel Danielle May. Ms. May indicated an intent to file a motion to quash plaintiff's subpoena since DOCCS was the entity served with the subpoena and maintains certain employment-related records. It is DOCCS position that without an authorization from Mr. Lewalski, any protected medical information

It is not enough for plaintiff to make a generic claim that the records bear on Mr. Lewalski's credibility; by that standard anything pertaining to Mr. Lewalski throughout the course of his life may relate to his credibility in a metaphysical sense. However, relevance for discovery purposes requires that evidence be admissible or likely to lead to admissibly evidence in this particular lawsuit. As it stands, Mr. Lewalski is one of several correctional officers charged with using excessive force to extract inmate Taylor from his cell when Taylor became erratic due to using illegal drugs. Plaintiff has no evidence that Mr. Lewalski filed a workers' compensation claim following this incident despite conducting a lengthy deposition of Mr. Lewalski and obtaining thousands of pages of discovery material, including his personnel file.

Plaintiff is on a fishing expedition; she theorizes that Mr. Lewalski may have monetized past incidents of excessive force by filing fraudulent reports and workers compensation claims. Mr. Lewalski was the sergeant at the scene and is, therefore, a key witness in plaintiff's view. After plaintiff's efforts to paint Mr. Lewalski as a racist prison guard at his deposition failed, she is now resorting to a new theory -- that he had a motive to assault inmates in order to obtain medical treatment and compensation for permanent injuries. Not only has Mr. Lewalski not put his medical condition at issue by being named as a defendant in this lawsuit, there is no cause of action in the complaint alleging he filed a false or fraudulent worker's compensation report[2].   If not made in the context of this lawsuit such baseless claims would be considered slanderous.

The defense respectfully requests that the Court quash the subpoena.

---

[2] On January 31, 2024, plaintiff provided defense counsel with a proposed amended complaint and sought defendants' consent to file. The amended complaint seeks to add a cause of action for "conspiracy" and alleges, in sum and substance, that the officers conspired to falsify their accounts of the incident involving Mr. Taylor. This subpoena, served long before the proposed amended complaint, is directed at Mr. Lewalski's confidential medical records. It is obviously meant to allow plaintiff to poke around in his files to manufacture support for her new theory. Mr. Lewalski anticipates that at this stage of the proceedings plaintiff will have to file a motion if she wants to amend the complaint. In the meantime, this Court should grant Mr. Lewalski's motion to quash with prejudice.

**ARGUMENT**

**Plaintiff's subpoena is an attempt to obtain discovery beyond what this court has already ordered**

On August 9, 2023, this Court rendered a Decision pursuant to multiple discovery motions.  (Dkt. #186).  In pertinent part Plaintiff sought to compel DOCCS to produce documentation for all corrections officer defendants including use of force incidents and unusual incidents; OSI Investigative Reports; documents relating to any allegations of misconduct involving [the subject employees].  This Court ordered the production of the use of force and unusual incident reports, documentation however limited in time from 2014 through 2018, with the exception of OSI investigative reports, limited from 2009 – 2019.  (Dkt. # 227, p. 20-21).  DOCCS provided those records to plaintiff's counsel in accordance with this Court's ruling.  Plaintiff's Response in opposition to the motion to quash fails to demonstrate what would be contained in the worker's compensation and retirement disability files that may be relevant to this case and not otherwise available as part of the use of force documents.

DOCCS has already provided plaintiff with 1007 pages of discovery which included Use of Force Reports concerning Mr. Lewalski.  Mr. Lewalski has also provided a copy of his personnel file which included 348 pages of documentation.  (**Exhibit A** - correspondence).  And plaintiff herself is urging this Court to cut-off fact discovery.

Plaintiff's recent subpoena issued to DOCCS is nothing more than an improper attempt to obtain protected medical information unrelated to her Complaint.  Despite this Court already having granted her access to past Use of Force reports, plaintiff's subpoena is now a further step beyond what the Court already allowed over defense objection.

After receiving Mr. Lewaski's personnel file and the records and documentation from DOCCS, plaintiff's counsel took Mr. Lewalski's deposition on December 12, 2023, which began at 9:38 a.m. and ended at 6:01 p.m.  Plaintiff's counsel marked numerous documents received from DOCCS, which included Use of Force reports involving Mr. Lewalski, and questioned him extensively regarding those documents.   At no time prior to taking his deposition, did plaintiff's counsel ever request an authorization for workers' compensation records or disability retirement records, nor move this Court for an order compelling such records.  In an attempt to circumvent or expand upon this Court's prior ruling, plaintiff now manufactures a theory which accuses Mr. Lewalski of fraud and dishonesty, then claims his medical records are relevant to proving that theory.

Plaintiff's circular argument fails to demonstrate a legitimate need for the documents; that the documents are relevant to the causes of action pled in the complaint; or that she does not possess or cannot obtain equivalent information from another source. The Advisory Committee Notes to the 2015 Amendment to Fed.R.Civ.Pro. 26 clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(2)(C)(i). "Even where no substantial harm is shown…an objection as to the relevance of the documents may [still] prevent their disclosure" Cody v. N.Y. Div. of State Police, 2008 U.S. Dist.LEXIS 59095 (E.D.N.Y. July 31, 2008); Bishop v. Cnty. of Suffolk, 248 F.Supp.3d 381, 389 (E.D.N.Y. 2017) ("[I]rrelevant records will not be subject to discovery where defendants failed to meet the requirement s for shielding the documents from disclosure…")

"The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations

of the pleading." *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989).  There are no allegations set forth in the Complaint that Mr. Lewalski had motive or intent, or a pattern and practice of using excessive force on inmates so that he would gain financial benefit by filing fraudulent workers' compensation claims.

The only case law support plaintiff offers in her Response is an informal opinion from district court judge in the Southern District of New York.  In that case the lawyers representing Mr. Taylor here moved to compel the production of medical and worker's compensation records of defendant corrections officers.  *Samuels v. Fischer*, No. 13-cv-08287 (S.D.N.Y).

The *Samuels* case was a pro-se prisoner excessive force case where plaintiff alleged he was assaulted by corrections officers. [3]  During discovery plaintiff sought workers' compensation records from two defendant corrections officers.  One of the correctional officer defendants in that case was fired by DOCCS, charged and criminally convicted of attempted workers' compensation fraud.  (See *Samuels v. Fischer*, No. 13-cv-08287 (S.D.N.Y. February 25, 209 Dkt. # 219, p. 1-2).  Further, a medical doctor involved in examining those officers subsequently had his medical license suspended for treating patients, including the defendant officers, and submitting fraudulent reports.

In this case, Mr. Lewalski never put his medical condition at issue by, for example, filing a counterclaim against plaintiff's decedent. At his deposition Mr. Lewalski testified that following the incident with inmate Taylor, all officers were seen by medical.  (**Exhibit B** – Lewalski EBT @ Pg. 148 L 3-4).  He did not testify that he pursued a workers compensation claim, that he saw a doctor or that he missed any time from work as a result of the October 6, 2017 incident.  (**Exhibit B** – Lewalski EBT @ Pg. 149 L 11-13).   Plaintiff has his time and

---

[3] Emery Celli Brinkerhoff & Abady entered appearance on April 26, 2018.  Dkt. #'s 188, 189.

attendance records and knows he didn't miss any time from work.   None of Mr. Lewalski's prior

compensation claims resulting from his on-duty contact with inmates was ever denied or

questioned.  (**Exhibit B** - Lewalski EBT at Pg. 244, L4-17).  Mr. Lewalski was also asked by

plaintiff about injuries he recorded on his disability retirement application.  None of those

injuries were related to the October 6, 2017 incident involving inmate Taylor.  (**Exhibit B** -

Lewalski EBT at Pg. 245-247).

Unlike the defendant officers in the *Samuels* case, Mr. Lewaski has never been criminally

accused of workers' compensation fraud, let alone charged or convicted like the defendants in

the *Samuels* case relied on by plaintiff. Other §1983 cases where courts have permitted discovery

of a defendant law enforcement officer's medical records connect the relevance of the records to

specific allegations made in the Complaint. See eg *Rossy v. City of Buffalo*, 2020 U.S. Dist.

LEXIS 96014 (W.D.N.Y., June 1, 2020, J. Schroeder) (ordering officer's medical records from

the incident described in the complaint to be disclosed *in camera;* officer's statement to

investigators that he shot driver after driver shot him was relevant to whether degree of force

used by defendant was reasonable); *Moroughan v. Cty. of Suffolk*, 2013 U.S. Dist. LEXIS

208147 (E.D.N.Y. August 13, 2013)

 Plaintiff also argues that somehow the disclosure of Mr. Lewalski's workers'

compensation files and disability retirement application are needed to shed light on the injuries

inmate Taylor sustained.  This argument is unsupported and without merit.  As plaintiff

concedes, Erie County Medical Examiner Tara Mahar has already documented and rendered her

opinions in her autopsy report of inmate Taylor. Dr. Mahar also testified about the injuries she

observed at her deposition on September 13, 2023.  The production of Mr. Lewalski's worker's

compensation records and disability retirement files are not relevant to the nature and extent of inmate Taylor's injuries.

**Mr. Lewalski has proper standing to move to quash the subpoena**

In her Response, Plaintiff also argues Mr. Lewalski lacks standing to seek a protective order quashing the third-party subpoena served on DOCCS.  Courts have held that a party has standing to quash a third-party subpoena containing the party's own medical or mental health records.  See *Weinstein v. Univ. of Conn.,* 2012 U.S. Dist. LEXIS 115059 (gathering cases); *Fenstermacher v. Moreno*, No. 1:08-cv-01447-SKO PC, 2010 U.S. Dist. LEXIS 133741, 2010 WL 5071042, * 3 (E.D. Cal. Dec. 7, 2010) (finding party has standing to quash documents containing medical and mental health information); *EEOC v. 704 HTL Operating, LLC*, Civil No. 11-845 BB/LFG, 2012 U.S. Dist. LEXIS 61248, 2012 WL 1216142, *2 (D.N.M. Apr. Dec. 3, 2012) (finding standing to assert privilege or privacy interests relating to subpoenas seeking to salary information, personnel records and medical information."); *Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW (MEJ), 2011 U.S. Dist. LEXIS 103072, 2011 WL 4345191, *1 (N.D. Cal. Sept. 13, 2011)(recognizing privacy interest in personnel records including applications for employment and resumes); see also *G & G Closed Circuit Events, LLC v. Perez*, 2022 U.S. Dist. Lexis 73381 *4 (S.D.N.Y. April 12, 2022).   ("A non-recipient has standing to challenge a subpoena "if it has a privilege, privacy or proprietary interest in the documents sought*"*).

As Magistrate Judge Schroeder recently pointed out in the context of another §1983 police officer excessive force civil claim,

> "Even where a "party lacks standing to challenge a subpoena on a non-party, the Court may nevertheless exercise its inherent authority to limit irrelevant or nonproportional discovery." *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp.3d 384, 405 (D. Ct. 2020); *See Allstate Ins. Co. v. All Cty., LLC*, 2020 U.S. Dist. LEXIS 176297, 2020 WL 5668956, at *2 (E.D.N.Y. Sept. 22, 2020) ("question of standing is beside the point where

the objection to the subpoena is on relevance or proportionality"). The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. *Libaire*, 760 F. Supp.2d at 291." *Kochan v. Kowalski*, 2022 U.S. Dist. LEXIS 152253, *3-4

### Mr.  Lewaski has a privacy right in his personal medical information

Pursuant to Fed. R. Civ. P. 45(c)(3)(B)(I), "a court may quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information." *Kochan v. Kowalski*, 2022 U.S. Dist. LEXIS 152253, *3 (citing *Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998).

While there is no federal rule prohibiting discovery of police personnel documents, that does not mean a federal civil rights plaintiff may have "free and unfettered discovery" of an officer's records. "Rather, to determine whether a defendant police officer's records should be disclosed in a federal civil rights case, a court "must balance the interest favoring and opposing confidentiality" *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988).

The Second Circuit has specifically recognized the right to confidentiality of personal medical information.   Relying on the United States Supreme Court's decision in *Whalen v. Roe* 429 U.S. 589 (1977), the Second Circuit recognized the constitutional right to privacy in the context of §1983 claims. It further held that a corollary of the right to privacy is a right to confidentiality to protect information about an individual's health:

> "In *Whalen v. Roe,* the Supreme Court recognized that there exists in the United States Constitution a right to privacy protecting "the individual interest in avoiding disclosure of personal matters." 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) ( *"Whalen"*); *see also Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977) (reaffirming existence of right to privacy in personal information); *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (stating that "the right to be let alone" is "the right most valued by civilized men") (Brandeis, *J.,* dissenting). In *Barry v. City of New York,* we applied *Whalen* and affirmed that the "privacy of personal matters is a protected

interest." 712 F.2d 1554, 1559 (2d Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); *see also Eisenbud v. Suffolk County,* 841 F.2d 42, 46 (2d Cir. 1988). There is, therefore, a recognized constitutional right to privacy in personal information. More precisely, this right to privacy can be characterized as a right to "confidentiality," to distinguish it from the right to autonomy and independence in decision-making for personal matters also recognized in *Whalen. See* 429 U.S. at 599-600, 97 S.Ct. at 876-77; *Barry,* 712 F.2d at 1559 (discussing the "confidentiality branch of the right to privacy"). This right to confidentiality was recognized in both *Barry* and *Eisenbud* in the context of financial disclosures, but the analysis employed in both is appropriate for the evaluation of a violation of a right to confidentiality regarding other types of personal information, including information relating to the status of one's health. *See Schachter v. Whalen,* 581 F.2d 35, 36-37 (2d Cir. 1978) (per curiam) (applying *Whalen* to similar context of disclosure of medical information, holding that constitutional right not infringed because statute had legitimate public-interest justification and substantial security procedures).

Medical information was the subject of the Third Circuit's opinion in *United States v. Westinghouse Electric Corp.,* which recognized that "[i]nformation about one's body and state of health is matter which the individual is ordinarily entitled to retain within the `private enclave where he may lead a private life.'" 638 F.2d 570, 577 (3d Cir. 1980) (quoting *United States v. Grunewald,* 233 F.2d 556, 581-82 (2d Cir. 1956) (Frank, *J.,* dissenting) (footnote omitted), *rev'd* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957)). We agree that the right to confidentiality includes the right to protection regarding information about the state of one's health".

*Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994); see also *Morales v. Town of Glastonbury*, 2011 U.S. Dist. Lexis 88408 (August 10, 2011) (protecting from disclosure law enforcement officers medical/mental health evaluations); *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989) ("A police officer's mental health is not placed in issue solely by virtue of allegations of excessive force [...] The Complaint in this case includes no allegation warranting discovery of medical records.").

Mr. Lewalski has an interest in preserving the confidentiality of his medical records that contain highly personal information and are unrelated to the acts at issue. Plaintiff cites no authority supporting a claim that Mr. Lewalski, or any correctional officer, waives the confidentiality of his medical records by virtue of his employment. Nor does he waive confidentiality simply based on plaintiff's decision to name him in a civil complaint.

Based on plaintiff's failure to allege a legal basis upon which she is entitled to Mr. Lewalski's confidential medical records, this Court should quash the subpoena. Nor should it entertain plaintiff's argument that a protective order suffices to address defendant's concerns. If

plaintiff is not entitled to the records in the first instance, they cannot get around that by simply agreeing not to further disseminate them. Plaintiff would initially need to demonstrate the discoverability of the records as relevant and non-confidential before the Court reaches the issue of whether they should be released pursuant to a protective order. Since plaintiff fails in that regard, the Court should grant the motion to quash.

**CONCLUSION**

Notwithstanding the breadth of the discovery rules, the district courts are afforded discretion under Rule 26(c) to issue protective orders limiting the scope of discovery. *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court...."); see generally Fed.R.Civ.P. 26(c)(1).

Plaintiff has failed to demonstrate the relevance of the records sought and good cause for overcoming the otherwise confidential nature of the records. The Court should quash Plaintiff's subpoena or modify Plaintiff's subpoena to exclude items 10 and 11 seeking Mr. Lewalski's worker's compensation records and disability retirement records.

Dated:  February 7, 2024
        Orchard Park, New York

MEYERS BUTH LAW GROUP, PLLC

/s/Laurie A. Baker, Esq.
Laurie A. Baker, Esq.
Cheryl Meyers Buth, Esq.
Attorneys for Defendant Sgt. T. Lewalski
21 Princeton Place, Suite 105
Orchard Park, New York  14127
(716) 508-8598
labaker@mblg.us
cmbuth@mblg.us

# EXHIBIT A



**MEYERS BUTH**
LAW GROUP PLLC

Cheryl Meyers Buth
Attorney/Member
cmbuth@mblg.us

Laurie A. Baker
Attorney/Member
labaker@mblg.us

August 17, 2023

Katie Rosenfeld, Esq.
Emery, Celli, Brinckerhoff,
Abady, Ward & Maazel, LLP
600 Fifth Avenue at Rockefeller Center
10th Floor
New York, New York 10020

**RE: McDay v. Eckert, et al.**

Dear Ms. Rosenfeld:

Enclosed please find a copy of Sergeant Lewalski's personnel file together with our privilege log.

Very truly yours,

Laurie A. Baker

LAB/mmk
Enc.

# EXHIBIT B

1

VIDEO DEPOSITION
TIMOTHY ANDREW LEWALSKI

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------
DARLENE McDAY, individually and
as Executrix of the Estate of
DANTE TAYLOR, and TEMPLE McDAY,
                              Plaintiffs,


                 - vs -      Case No.
                             1:20-cv-0233
STEWART ECKERT, Superintendent, Wende
Correctional Facility; MARGARET STIRK,
Unit Chief, WENDE CORRECTIONAL FACILITY;
KRISTEN MURATORE, Forensic Program
Administrator, Wende Correctional
Facility; SERGEANT TIMOTHY LEWALSKI;
SERGEANT SCOTT LAMBERT; CORRECTION
OFFICER KELLY McDONALD; CORRECTION
OFFICER FREEMAN; CORRECTION OFFICER
THOMAS WHITE; CORRECTION OFFICER J.
HORBETT; CORRECTION OFFICER D. JANIS;
CORRECTION OFFICER MELVIN MALDONADO;
CORRECTION OFFICER MARK COLLETT;
CORRECTION OFFICER THEAL; CORRECTION
OFFICER BARON; JILL OLIVIERI, R.N;
DIANE DIRIENZO, R.N.; LISA PRISHEL,
R.N.; DEBRA STUBEUSZ, M.D.; ANJUM HAQUE,
M.D.; BERTRAM BARALL, M.D; KELLY KONESKY,
LCSW-R; DANA MANCINI, SW2; JOHN and JANE
DOES 1-10; and JOHN and JANE SMITH 1-14,
                              Defendants.
------------------------------------------
HUDSON COURT REPORTING & VIDEO   (212) 273-9911

2

1                Video recorded deposition of TIMOTHY
2   ANDREW LEWALSKI, Defendant, taken pursuant to the
3   Federal Rules of Civil Procedure, at 70 Niagara
4   Street, 4th Floor, Buffalo, New York, on
5   December 12, 2023, commencing at 9:38 a.m., before
6   LYNNE E. DIMARCO, Notary Public.
7

     APPEARANCES:        EMERY CELLI BRINCKERHOFF
8                   ABADY WARD & MAAZEL LLP,
                    By KATHERINE ROSENFELD, ESQ.,
9                   krosenfeld@ecbawm.com,
                    DAN M. EISENBERG, ESQ.,
10                 deisenberg@ecbawm.com,
                    600 Fifth Avenue, 10th Floor,
11                 New York, New York  10020,
                    (212) 763-5000,
12                 Appearing for the Plaintiffs.
13                 LETITIA A. JAMES, ESQ.,
                    Attorney General of
14                 the State of New York,
                    By JOEL J. TERRAGNOLI, ESQ.,
15                 Assistant Attorney General,
                    Main Place tour,
16                 350 Main Street, Suite 300A,
                    Buffalo, New York  14202-3750,
17                 (716) 853-8400,
                    joel.terragnoli@ag.ny.gov,
18                 Appearing for the Defendants,
                    Stewart Eckert, Margaret Stirk,
19                 and Kristen Muratore.
20

                    MEYERS BUTH LAW GROUP PLLC,
21                 By LAURIE A. BAKER, ESQ.,
                    21 Princeton Place, Suite 105,
22                 Orchard Park, New York  14127,
                    (716) 508-8598,
23                 labaker@mblg.us,
                    Appearing for the Defendant,
24                 Sgt. Timothy Lewalski,
                    via Webex.
25

3

1                     JOSEPH M. LaTONA, ESQ.,
                    403 Main Street, Suite 716,

2                     Buffalo, New York  14203,
                    (716) 842-0416,

3                     sandyw@tomburton.com,
                    Appearing for the Defendant,

4                     C.O. Kelly McDonald.

5                     VILLARINI & HENRY,
                    By DANIEL J. HENRY, JR., ESQ.,

6                     16 Main Street,
                    Hamburg, New York  14075,

7                     (716) 648-0510,
                    dhenry@villariniandhenry.com,

8                     Appearing for the Defendant,
                    C.O. James Horbett,

9                     via Webex.

10                   PERSONIUS MELBER LLP,
                    By JOSEPH M. GUERRA, ESQ.,

11                   2100 Main Place Tower,
                    Buffalo, New York  14202,

12                   (716) 855-1050,
                    jmg@personiusmelber.com,

13                   Appearing for the Defendant,
                    C.O. Dylan Janis.

14

15                   LIPSITZ GREEN SCIME CAMBRIA LLP,
                    By DIANE M. PERRI ROBERTS, ESQ.,

16                   42 Delaware Avenue, Suite 120,
                    Buffalo, New York  14202,

17                   (716) 849-1333,
                    droberts@lglaw.com,

18                   Appearing for the Defendant,
                    C.O. Melvin Maldonado.

19   PRESENT:         JEFFREY J. LOFTUS, Videographer

20

21

22

23

24          .

25

148

1      Q.    Where in the medical clinic did you go?

2      A.    Into the office area.

3      Q.    Did you receive any medical treatment?

4      A.    We were all scene by medical.

5      Q.    And were you injured?

6      A.    I don't recall.

7      MS. ROSENFELD:  Lynne, if we could please

8  mark this as L10.

9  The following was marked for Identification:

10     EXH. L10              Employee Incident/Accident

11                           Report - Bates stamped

12                           OSI292

13     BY MS. ROSENFELD:

14     Q.    Okay.  I'm handing you what we marked

15  for today as L10, which is Bates stamped OSI292.

16  This is titled employee accident/injury report.  Is

17  that your signature in box 13?

18     A.    Yes, ma'am.

19     Q.    And is this a report regarding the

20  injuries that you reported after the incident with

21  Mr. Taylor?

22     A.    Yes, ma'am.

23     Q.    So you reported that while you were

24  restraining Mr. Taylor you injured your left elbow

25  and you had right shoulder pain?

149

1     A.   That would be correct, ma'am.

2     Q.   How did you injure your right shoulder

3   when you were restraining Mr. Taylor?

4     A.   I probably bumped into the wall on the

5   right side or into a locker while trying to cuff

6   him or put flex cuffs on him.

7     Q.   How did you injure your left elbow?

8     A.   The bed was to the left, I believe

9   going up to put the handcuffs on him I struck my

10   elbow on the bed.

11     Q.   Did you ever follow up with your

12   primary care provider after this incident?

13     A.   I don't recall.

14     Q.   Did you apply for Workers' Compensation

15   after this incident as a result?

16     A.   Workers' Comp I believe is

17   automatically put in, but if I didn't see a doctor

18   or follow up, it wouldn't matter.

19     Q.   Okay.  Thank you.  You can hand that

20   back to me.  Were -- were any of the other officers

21   that you were with injured, to your knowledge?

22     A.   I don't recall.

23     Q.   I'm handing you back Exhibit 10.

24   Looking at this report, what time -- what time did

25   you get the radio call that there was a medical

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

1                              dated 7/2/2020 - Bates

2                              stamped Lewalski 244

3          BY MS. ROSENFELD:

4          Q.    Thank you.  I'm handing you what's been

5   marked as L24, which is Bates stamped Lewalski 244.

6   Did you apply for Workers' Compensation leave in

7   2020 that was denied?

8          A.    I've never been denied Workers'

9   Compensation leave.

10         Q.    This says that your claim due to an

11  alleged injury on 3/17/2020 is denied.  Do you see

12  that, the first sentence of the letter?

13         A.    Yes.

14         Q.    Okay.  What injury did you sustain on

15  March 17, 2020?

16         A.    That may have been, and I'm not

17  positive, COVID exposure.

18         Q.    Okay.  You can set that aside.

19         So on the issue of Workers' Compensation

20  have you ever received a lump sum payment for

21  Workers' Compensation of more than $25,000?

22         A.    Yes, ma'am.

23         Q.    How many times have you received a lump

24  sum of more than $25,000?

25         A.    I don't recall specifically.

245

1        Q.    More than five?

2        A.    No, ma'am.

3        Q.    And where you received a lump sum

4    payment for more than $25,000, were those -- was

5    that in connection with injuries that you had

6    reported you sustained in a use of force?

7        A.    Possibly, ma'am, I don't recall

8    the -- what injuries were in those claims.

9        Q.    Your Workers' Compensation attorney

10   would have those documents?

11       A.    I would imagine, I would imagine the

12   State Insurance Fund would have those documents,

13   too.

14       Q.    Are any of the disabilities that you

15   have for which you're going to be receiving

16   disability level retirement injuries you sustained

17   in uses of force?

18       A.    Yes, ma'am.

19       Q.    Which ones?

20       A.    I don't recall specifically, ma'am.

21       Q.    You don't recall which of your injuries

22   were sustained in uses of force?

23       A.    I don't recall which injuries were even

24   on my disability form, ma'am, as we sit here.

25       Q.    So you filled out a form which listed

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

246

1    all the disabilities you have?

2         A.   I filled out a form listing my

3    injuries, yes, ma'am.

4         Q.   And some of those injuries were

5    sustained in uses of force?

6         A.   Yes, ma'am.

7         Q.   And some of them were not; is that fair

8    to say?

9         A.   I don't recall, ma'am.

10        Q.   Okay.  As you sit here today, can you

11   remember any injuries you sustained in a use of

12   force?

13        A.   Yes, ma'am.

14        Q.   Okay.  Can you tell me about those?

15        A.   You want to know the exact injury that

16   I -- you want a date, what?

17        Q.   Yeah, have you sustained -- well, let's

18   start with significant injuries.  Have you

19   sustained any significant injuries that you allege

20   were caused in a use of force that caused you a

21   disability?

22        A.   Yes, ma'am.

23        Q.   Okay.  And in broad strokes, what are

24   those injuries?

25        A.   Right and left hip replacement.

247

1      Q.   And how is that caused in a use of

2   force?

3      A.   While restraining a combative inmate.

4      Q.   What else?

5      A.   What other injuries have I had over the

6   years?

7      Q.   Yeah, that you attribute to injuries

8   that you sustained from a use of force.

9      A.   Shoulder.

10     Q.   What did you do to your shoulder?

11     A.   Rotor cuff tears both shoulders.

12     Q.   And I believe you said that you can't

13  recall -- well, and I should ask you again.

14       The shoulder injury that you reported that

15  you sustained in the Dante Taylor incident, is that

16  one for which you applied for disability based on?

17     A.   No, ma'am.

18     Q.   Okay.  What else, you have rotator cuff

19  shoulder injuries on both sides that were sustained

20  in uses of force.  What else?

21     A.   I don't know.  I sustained different

22  injuries over the years.  You want specific to what

23  I applied for the retirement system for?

24     Q.   Yeah.

25     A.   Those are the only ones I recall right

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078