UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DARLENE McDAY, individually and as Executrix of the Estate of DANTE TAYLOR, | **DECISION AND AND ORDER** |
| Plaintiff, | 20-cv-00233(JLS)(JJM) |
| v. | |
| STEWART ECKERT, Superintendent Wende Correctional Facility, *et al.*, | |
| Defendants. | |

_____

The claims in this action arise from the October 7, 2017 suicide of Dante Taylor, an inmate in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") at the Wende Correctional Facility, and an alleged assault by correction officers that occurred the day before his death. *See* Amended Complaint [57].[1]

Before the court is defendant Timothy Lewalski's motion to quash Request Nos. 10 and 11 of the subpoena ([262-1] at 7-12) directed to non-party DOCCS for his Workers' Compensation and disability benefits records [262]. The motion has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [23]. Having considered the parties' submissions [262, 272-74], the motion is granted in part and denied in part.

---

[1] Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

## BACKGROUND

The parties' familiarity with the relevant facts is presumed. During Lewalski's December 12, 2023 deposition, he was asked about an October 6, 2017 use of force incident with Taylor. He testified that he injured his right elbow and had right shoulder pain from restraining Taylor. Deposition transcript [272-2] at 5. He could not recall if he followed up with his primary care provider for these injuries. Id. at 6. When asked whether he applied for Workers' Compensation benefits as a result of the incident with Taylor, he testified that "Workers' Comp I believe is automatically put in, but if I didn't see a doctor or follow up, it wouldn't matter." Id.

Lewalski was also asked about his Workers' Compensation history. He testified that in April 2020 he was on Workers' Compensation for a left foot injury, but could not recall how he sustained that injury or how long he remained on Workers' Compensation. Id. at 7-8. He had received lump sum Workers' Compensation payments, including one in excess of $25,000, but could not recall how many times or how much he collected in Workers' Compensation benefits. Id. at 8-10. He testified that he "possibly" received lump sum Workers' Compensation payments for a use of force incident, but ultimately he could not recall. Id. at 9, 11.

Lewalski was further questioned about his disability retirement. When asked if any of his "disability level retirement injuries were sustained in uses of force", he answered "Yes", but could not recall which injuries were sustained in uses of force. Id. at 11. However, when later asked if he "sustained any significant injuries" that were "caused in a use of force" and resulted in a disability, he testified "[r]ight and left hip replacement" and "[r]otator cuff tears" in both shoulders. Id. at 12-13. Lewalski confirmed that the shoulder injury that he

sustained in the incident with Taylor was not the subject of his application for disability benefits. Id. at 13.

Shortly after Lewalski's deposition, McDay served a subpoena on non-party DOCCS, seeking in relevant part:

> "10. All documents concerning claims for workers compensation benefits made by Timothy Lewalski, including but not limited to all documents submitted to or received from the New York State Workers' Compensation Board, in connection with injuries he allegedly suffered in the course of incidents involving incarcerated individuals in a DOCCS facility, including but not limited to use of force incidents.
>
> 11. All documents concerning claims for disability benefits, including disability retirement benefits, made by Timothy Lewalski, including but not limited to documents submitted to or received from the New York State and Local Retirement System, in connection with injuries he allegedly suffered in the course of incidents involving incarcerated individuals in a DOCCS facility, including but not limited to use of force incidents."

[262-1] at 11-12.

By letter dated January 22, 2024 [272-4], DOCCS responded to the subpoena, which was served upon it on December 21, 2023. McDay Declaration [274], ¶3. DOCCS did not expressly object to Request Nos. 10 and 11, but instead stated that its responses to these requests were pending the court's decision on the motion to quash. Id., ¶5; [272-4]. Although DOCCS did not move to quash the subpoena, it joins in Lewalski's motion, stating that the production, which would consist of approximately 1,000 pages of documents, is overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. May Declaration [274], ¶¶6-8.

## DISCUSSION

While a subpoena is initially governed by Fed. R. Civ. P. ("Rule") 45, "non-party subpoenas are also subject to the parameters of Rule 26. Both Rules 45 and 26 authorize the

court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." Louisiana Corral Management, LLC v. Axis Surplus Insurance Co., 650F.Supp.3d 491, 499 (E.D. La. 2023).

Under Rule 45(d)(3)(A), a subpoena may be quashed or modified if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

Although "a party must be afforded a meaningful opportunity to establish the facts necessary to support his claim", In re Agent Orange Product Liability Litigation, 517 F.3d 76, 103 (2d Cir. 2008), discovery under Rule 26 is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

"[R]elevance, for purposes of discovery, is an extremely broad concept". Austin Air Systems, Ltd. v. Sager Electrical Supply Co., Inc., 2022 WL 464230, *12 (W.D.N.Y. 2022), adopted, 2023 WL 540119 (W.D.N.Y. 2023). It "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case". Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "This principle is even more expansive in the context of civil rights litigation under §1983." Cornelius v. Luna, 2023 WL 3071414, *2 (D. Conn. 2023). See also Jackson v. Monin, 2015 WL 5714243, *3 (W.D.N.Y. 2015) (McCarthy, M.J.) ("[a]ctions alleging violations of § 1983 require especially generous

discovery"); Ivery v. Baldauf, 2015 WL 13877948, *1 (W.D.N.Y. 2015) ("[f]ederal policy favors broad discovery in civil rights actions").

"However, a party generally must demonstrate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." White v. City of Mount Vernon, 2022 WL 16578086, *2 (S.D.N.Y. 2022). "The party seeking the discovery bears the burden of establishing relevance." Id.

In opposing the motion, McDay argues that Lewalski does not have standing to raise relevance arguments, and that DOCCS waived any objection to the subpoena. McDay's Memorandum of Law [272] at §§III, V. Apart from these threshold issues, she contends that the requested documents are relevant and that Lewalski fails to establish a privacy interest in the documents. Id. at §§II, IV.

A.   **DOCCS Waived its Objections to the Subpoena**

Rule 45(d)(2)(B) requires that objections to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served". Such objections "must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena so that discovery does not become a game". Top Jet Enterprises, Ltd. v. Kulowiec, 2022 WL 280459, *4 (S.D.N.Y. 2022); In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998) ("[w]hile we are mindful that the investment of time necessary to review all responsive documents for privileged material does not lend itself to the limited fourteen (14) day time period, a person responding to a subpoena should at least assert any privileges within . . . 14 days").

Since DOCCS' January 22, 2024 letter was not timely[2] and failed to expressly object to Request Nos. 10 and 11, I agree with McDay that its objections have been waived.

### B. Lewalski may Challenge the Relevancy of the Requested Documents

The parties dispute whether Lewalski, who was not the recipient of the subpoena, has standing to challenge it on grounds other than privilege or privacy. *See* McDay's Memorandum of Law [272] at 9-10; Lewalski's Reply [273] at 7. Generally, "[a] non-recipient has standing to challenge a subpoena only if it has a privilege, privacy or proprietary interest in the documents sought." City of Almaty, Kazakhstan v. Ablyazov, 2020 WL 1130670, *1 (S.D.N.Y. 2020).

However, courts have recognized that a "non-recipient . . . may . . . raise the relevance of the evidence sought by a subpoena for purposes of balancing the relevance of the information sought against the litigant's protected interest." Silverstone Holding Group, LLC v. Zhongtie Dacheng (Zhuhai) Investment Management Co., 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023). Therefore, I will consider Lewalski's relevancy arguments for the purposes of weighing the relevance of the information sought against his privacy interests.

### C. Documents Related to the October 6, 2017 Taylor Use of Force Incident

McDay argues that any requested records created in connection with injuries sustained by Lewalski in the Taylor incident could "shed light on whether [Lewalski's] injuries are consistent with 'restraining' Mr. Taylor, as Lewalski maintains, versus beating him, as [she] alleges." McDay's Memorandum of Law [272] at 14.

---

[2] Compliance with the subpoena was required by January 19, 2024. [262-1] at 7.

While it seems unlikely from Lewalski's testimony and representations (Lewalski's Reply [273] at 5-6 ("[p]laintiff has his time and attendance records and knows that he didn't miss any time for work")) that he sought Workers' Compensation or disability retirement benefits in connection with the injuries he sustained in the Taylor incident, such records, if in existence, are relevant to McDay's claims and discoverable. *See* Hyatt v. Rock, 2016 WL 6820378, *5 (N.D.N.Y. 2016) (directing the production of "any reports prepared by a named Defendant pursuant to their job duties relating to any injuries received as a result of the two interactions with the Plaintiff that are the subject of this lawsuit"); Cruz v. Kennedy, 1998 WL 689946, *7 (S.D.N.Y. 1998) ("the Municipal Defendants are directed to produce [the defendant's] medical records to plaintiff to the extent they relate to the consequences of plaintiff's arrest").

The relevance of these materials outweighs Lewalski's privacy interest. *See* Hammond v. Bradley, 2008 WL 123892, *1 (W.D.N.Y. 2008) ("[n]otwithstanding the fact that defendants have not raised their alleged injuries as part of their defense, evidence concerning those injuries is highly probative with respect to plaintiff's case in chief, which alleges that the officers' written reports were entirely fabricated, and could potentially be used to impeach the officers' testimony at trial. As such, its value outweighs the defendants' individual privacy interests in those particular medical records"). However, as discussed below, McDay's entitlement to the remaining records is a different question.

D. **All Other Requested Documents**

McDay argues that these records are relevant to Lewalski's "credibility, intent/motive, and pattern of excessive force incidents against incarcerated people". McDay's

Memorandum of Law [272] at 13. In support of that argument, she contends that the requested documents could "bear on whether Lewalski's use of excessive force was motivated to some degree by the knowledge that he could receive Workers' Compensation and disability benefits if he was 'injured' in the process, and whether such knowledge was obtained because of [his] pattern of using excessive force on incarcerated people in hopes of obtaining Workers' Compensation and disability benefits." Id. at 14.

These arguments are not persuasive, given the absence of any evidence at this time that Lewalski sought Workers' Compensation benefits in connection with the October 6, 2017 Taylor incident and the fact that the subpoena seeks all documents concerning Workers' Compensation and disability benefits, even those unrelated to use of force incidents. *See* Subpoena [262-1] at 11-12.

McDay also argues that this evidence "is highly probative of the credibility of [Lewalski's] accounts of the incidents at issue". McDay's Memorandum of Law [272] at 15. She notes that "'prior deception in circumstances similar to those presented in the current litigation are most telling because they demonstrate the witness' untrustworthy behavior when confronted with analogous motives, risks, and potential benefits'". Id. (*quoting* Davidson Pipe Co. v. Laventhol & Horwath, 120 F.R.D. 455, 463 (S.D.N.Y. 1988)). That may be so, but she offers no support for her claim that Lewalski had a "history of exaggerating injuries sustained while working at DOCCS in order to miss work and collect benefits". Id. at 15.

It is that fact which distinguishes this case from Samuels v. Fisher, 13-cv-08287 (S.D.N.Y.) [272-5], the primary case relied upon by McDay. The plaintiff in Samuels similarly alleged that he was assaulted by two corrections officers, but unlike here, in Samuels there was evidence that both officers exaggerated their injuries from the incident with the plaintiff and

received large Workers' Compensation awards as a result. Id. at 3.  Additionally, one of the two corrections officers had been criminally convicted for attempted Workers' Compensation fraud related to another claim, the doctor who provided reports to the Workers' Compensation board on behalf of both corrections officers for the incident with the plaintiff was suspended by the Board due to fraud concerns, and the other correction officer, not charged with fraud, had missed months of work due to "an apparently superficial eye injury" sustained during another incident and testified that he "would see a 'Workers' Comp doctor' in order to seek benefits while absent from work." Id.  Under those circumstances, the plaintiff's argument that the discovery of the corrections officers' Workers' Compensation files was highly probative of the corrections officers' credibility had far more traction than the speculative theory of relevance McDay presents here.

"Relevance must be established with a concrete logical chain, as opposed to speculation, guesswork or hopes and wishes as to what the documents or information *might* reveal." Gilmore v. Safe Box Logistics, Inc., 2023 WL 361081, *3 (N.D. Cal. 2023) (emphasis in original).  McDay's current showing falls into the latter category.

Balanced against any relevance which these documents may have is McDay's privacy interest with respect to the medical information contained in his Workers' Compensation records. See Jacobs v. Connecticut Community Technical Colleges, 258 F.R.D. 192, 195 (D. Conn. 2009) ("plaintiff clearly has a personal privacy right and privilege with respect to the information contained in his psychiatric and mental health records. Hence, the plaintiff's interest in keeping this information gives him standing under Rule 45(c)(3)(A) to challenge the subpoena").[3] *See also* Miesegaes v. Allenby, 2020 WL 2542064, *4 (C.D. Cal. 2020)

---

[3]    McDay argues that Lewalski does not provide a basis for concluding that the subpoena "'*does* in fact call for [medical] information.'" *See* McDay's Memorandum of Law [272] at 10 (emphasis in

(recognizing a "significant privacy interest in medical records").  The burden on these privacy interests are minimized by the existence of the Stipulated Protective Order [125]. *See* Howard v. City of New York, 2013 WL 174210, *3 (S.D.N.Y. 2013) ("the burden on Mr. Ruiz's legitimate privacy interests can be . . . minimized by a protective order designating the unsealed records as 'attorney's-eyes-only' and restricting use of the documents to this litigation").  Nevertheless, those interests remain sufficient to overcome McDay's speculative showing of relevance, especially considering the breadth of medical information sought.

## CONCLUSION

For these reasons, Lewalski's motion [262] is denied to the extent that it seeks to quash that portion of the subpoena seeking records for any injuries allegedly sustained by Lewalski in the October 6, 2017 use of force incident with Taylor, but is otherwise granted.  SO ORDERED.

Dated: March 19, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

original).  Given the purpose of Workers' Compensation and disability benefit claims, that argument is a stretch.