UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE McDAY, individually and as Executrix of the Estate of DANTE TAYLOR,

Plaintiff,

v.

STEWART ECKERT, Superintendent Wende Correctional Facility, *et al.*,

Defendants.

**DECISION AND AND ORDER**

20-cv-00233(JLS)(JJM)

The claims in this action arise from the October 7, 2017 suicide of Dante Taylor, an inmate in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") at the Wende Correctional Facility, and an alleged assault by corrections officers that occurred the day before his death. *See* Amended Complaint [57].[1]

Before the court is the defendants'[2] motion to compel plaintiff Darlene McDay to provide authorizations permitting defendants to obtain a variety of Taylor's adolescent mental health, education, and court records [279]. The motion has been referred to me by District Judge

1 Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

2 Although the motion was filed on behalf of the "State defendants" (collectively identifying defendants Superintendent Stewart Eckert, Bertram Barall, Diane DiRienzo, R.N., Dana Mancini, Kelly Konesky, LCSW-R, Margaret Stirk, Kristen Muratore, Sergeant Scott Lambert, Lisa Prishel, R.N., Jill Olivieri, R.N., Debra Stubeusz, M.D., Anjum Haque, M.D., and Correction Officers Baron, Creighton, Freeman, Theal and Mark Collett), the motion states that it is "brought jointly on behalf of all defendants". Defendants' Memorandum of Law [279-1] at 2.

John L. Sinatra, Jr. for initial consideration [23]. Having considered the parties' submissions [279, 285, 287], the motion is granted.

**BACKGROUND**

The parties' familiarity with the relevant facts is presumed. McDay alleges that defendants were deliberately indifferent to Taylor's mental health needs. *See* Amended Complaint [57], First Claim. She also seeks compensatory damages for "mental anguish and distress, emotional distress . . . suffered by . . . Taylor". Id. at 44, Wherefore Clause, ¶b.[3]

At McDay's February 2, 2023 deposition she was asked a variety of questions about Taylor's mental health history preceding his DOCCS incarceration. She testified that Taylor had an inpatient hospitalization at Hope for Youth as part of an agreement resolving a petition brought by Taylor's school seeking to adjudicate him a person in need of supervision ("PINS"). *See* McDay deposition transcript [279-2] at 35-43. McDay also testified that Taylor was diagnosed with attention deficit hyperactivity disorder ("ADHD") for which he was prescribed Gabapentin, and that he was also diagnosed with depression and prescribed Concerta and Lexapro. Id. at 22-26.

Shortly after McDay's deposition, defendant Timothy Lewalski served a Second Request for Production of Documents, requesting that McDay provide authorizations for defendants to obtain Taylor's high and junior high school records, as well as the records from mental health providers that treated Taylor prior to his incarceration, including:

-- Central Islip Family Court, including the PINS petition filed against Taylor;
-- Hope for Youth Residential Home;
-- providers of counseling services for Taylor from 2009-2012; and

[3] McDay no longer has a claim for her own emotional distress damages. *See* Rosenfeld's October 30, 2023 letter [249]; October 30, 2023 Text Order [248].

-- providers who diagnosed Taylor with ADHD, depression, physical or sexual abuse, anxiety, and depression.

[279-2] at 73-74, Request Nos. 4-8.[4]

Defendants already possess Taylor's mental health records for the entirety of his DOCCS incarceration. *See* McDay's Memorandum of Law [285] at 5. McDay has also produced Taylor's mental health records from his time in the military, dating back to 2014. *See* McDay's Memorandum of Law [285] at 7. She has also subpoenaed additional records from Taylor's incarcerations in Suffolk and Nassau County Jails from 2014 through 2016 (immediately preceding his DOCCS incarceration) and represents that she will produce these records, if and when they are received. Id. at 6. However, she opposes any authorizations for any of the earlier records sought.

Defendants argue that this information has at least "potential relevance" to the claims and defenses in this action. Defendants' Reply Memorandum of Law [287-3] at 5. They also argue that it would be "patently unfair" for them to be "relegated to relying solely on Taylor and [McDay's] own account of his mental condition" without being "allowed to explore the veracity of such claims". Defendants' Memorandum of Law [279-1] at 12.

**DISCUSSION**

"[R]elevance, for purposes of discovery, is an extremely broad concept". Austin Air Systems, Ltd. v. Sager Electrical Supply Co., Inc., 2022 WL 464230, *12 (W.D.N.Y. 2022), adopted, 2023 WL 540119 (W.D.N.Y. 2023). It "encompass[es] any matter that bears on, or that

---

4 The State defendants also allege that they served McDay with an earlier authorization for Taylor's mental health records in December 2021. *See* Sleight's January 12, 2024 letter [279-2] at 88-89. Although I question why this issue is only now being raised by defendants, McDay has not opposed the motion on timeliness grounds.

reasonably could lead to other matter that could bear on, any issue that is or may be in the case". Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "This principle is even more expansive in the context of civil rights litigation under §1983." Cornelius v. Luna, 2023 WL 3071414, *2 (D. Conn. 2023). *See also* Jackson v. Monin, 2015 WL 5714243, *3 (W.D.N.Y. 2015) (McCarthy, M.J.) ("[a]ctions alleging violations of § 1983 require especially generous discovery"); Ivery v. Baldauf, 2015 WL 13877948, *1 (W.D.N.Y. 2015) ("[f]ederal policy favors broad discovery in civil rights actions").

"However, a party generally must demonstrate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." White v. City of Mount Vernon, 2022 WL 16578086, *2 (S.D.N.Y. 2022). "The party seeking the discovery bears the burden of establishing relevance." Id. "Courts have wide discretion to manage discovery". Woodward v. Afify, 2017 WL 279555, *1 (W.D.N.Y. 2017).

McDay placed Taylor's "medical records and mental health at issue by alleging that defendants were deliberately indifferent to his serious medical needs and by claiming damages for his mental or emotional distress." Hollis v. Bal, 2022 WL 1478927, *3 (E.D. Cal.), adopted, 2022 WL 3142372 (E.D. Cal. 2022). McDay does not dispute this. Instead, she contests the scope of Taylor's mental health placed in issue. She argues that only Taylor's "mental health *while he was incarcerated by* DOCCS, and the treatment he received *while he was incarcerated by DOCCS* from September 2016 to October 2017" is relevant. McDay's Memorandum of Law [285] at 12 (emphasis in original).

However, "in seeking emotional damages beyond the garden variety, Plaintiff has placed . . . mental health . . . at issue in this lawsuit, thus rendering . . . medical and treatment records, both before and after the incident at issue, highly relevant and, in this regard, has waived

any privileges she may assert thereto." Wilkinson v. Lewis, 2016 WL 11643758, *1 (N.D.N.Y. 2016).

Moreover, even without any claim for emotional distress damages, McDay has made certain allegations placing Taylor's adolescent mental health and trauma at issue. For example, the Amended Complaint [57] alleges that "[i]n or about 2009, Mr. Taylor attempted to hang himself in his grandmother's home" (id., ¶43), and that "[a]s a young teenager, Mr. Taylor was hospitalized for an extended period of time at an in-patient facility for young people". Id., ¶44. The Amended Complaint also alleges that Taylor suffered childhood abuse and that such "[c]hildhood trauma is a significant risk factor for suicidal behavior in prisons". Id., ¶¶42, 77. Defendants are entitled to explore these allegations through the authorizations sought in Lewalski's Second Request for Production of Documents ([279-2] at 73-74, Request Nos. 4-8). *See* Montgomery v. Comenity Bank, 2022 WL 1308044, *3 (M.D. La. 2022) ("[t]he discovery process allows Defendant to test allegations in the pleadings through discovery").

This even finds support in one of the primary cases upon which McDay relies, Doherty v. Bice, 2021 WL 4219696 (S.D.N.Y.), objections overruled, 2021 WL 5630816 (S.D.N.Y. 2021). In Doherty, an autistic plaintiff alleged violations of the Americans with Disabilities Act of 1990 ("ADA"). The court found that "simply by virtue of being autistic", a plaintiff does not "automatically waives his or her right to privacy in all mental health records whenever he or she files a suit under the ADA". Id. at *3. However, the Amended Complaint also contained allegations identifying "specific mental health conditions - severe anxiety, depression, and 'great stress' in particular situations - that [p]laintiff alleges he suffers as a result of [d]efendants' conduct". Id. (emphasis omitted). Therefore, the court ordered the plaintiff to

produce mental health records "limited in scope to the particulars aspects of [p]laintiff's mental health that he has specifically put at issue through his complaint". Id. at *4.

The same holds true here. The allegations of the Amended Complaint have put both Taylor's childhood mental health and any trauma that he may have sustained as an adolescent at issue. Although McDay raises concerns about the sensitive nature of these records (McDay's Memorandum of Law [285] at 21-23), the Stipulated Protective Order [125] appears to sufficiently mitigate those concerns, and if additional protections are necessary, I would consider proposed modifications.

**CONCLUSION**

For these reasons, defendants' motion [279] is granted. McDay shall provide the authorizations sought in Lewalski's Second Request for Production of Documents. [279-2] at 73-74, Request Nos. 4-8.

SO ORDERED.

Dated: April 8, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge