UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARLENE MCDAY, et al,

                        Plaintiffs,

          vs.

                                **Docket No. 20-cv-00233-JLS**

STEWART ECKERT, et al,

                        Defendants.

_____

## MEMORANDUM IN SUPPORT OF DEFENDANT ECKERT'S <u>MOTION FOR SUMMARY JUDGMENT</u>

LETITIA JAMES
Attorney General of the State of New York
JOEL J. TERRAGNOLI
*Attorney for Defendant Eckert*
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
Tel: (716) 853-8449
Joel.Terragnoli1@ag.ny.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS..................................................................................................... 3

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT........................................................................................................................ 4

    I.    ECKERT SHOULD BE GRANTED SUMMARY JUDGMENT ON
    PLAINTIFF'S EXCESSIVE FORCE CLAIM. ..................................................... 4

        a.    Negligent Supervision Claims are No Longer Viable post *Tangreti.*........................ 5

        b.    Plaintiff should not be Permitted to Amend Her Complaint to add
        a "Failure to Protect" Claim against Eckert to Circumvent *Tangreti.*............................ 6

        c.    Eckert was not Personally Involved in the Taylor UI.................................................. 7

        d.    Taylor was not Incarcerated under Conditions Posing a Substantial
        Risk of Serious Harm prior to the Taylor UI. .................................................. 8

        e.    Eckert was not Deliberately Indifferent to any Substantial Risk of
        Serious Harm to Taylor. .......................................................................................... 10

    II.    ECKERT IS ENTITLED TO QUALIFIED IMMUNITY.......................................... 13

        a.    The Level of Personal Involvement Sufficient to Maintain a Section 1983
        Claim based on a Supervisory Liability Theory was not Clearly Established.............. 14

        b.    Eckert's Conduct was Objectively Reasonable. ........................................................ 15

CONCLUSION ...................................................................................................................... 17

**PRELIMINARY STATEMENT**

Defendant Stewart Eckert, the former superintendent of Wende Correctional Facility ("Wende"), was not working when the unusual incident ("UI") involving incarcerated individual ("I/I") Dante Taylor occurred around 9:50 pm on October 6, 2017 (the "Taylor UI"). But Plaintiff alleges Eckert should still be liable for any excessive/improper force used on Taylor by Sgt. Timothy Lewalski, a correction sergeant under Eckert's supervision at the time, or by other Wende staff, during that UI. Summary judgment should be granted to Eckert for several reasons.

First, Plaintiff alleges Eckert did not properly monitor Lewalski's conduct and take appropriate "remedial action" (discipline him, limit his contact with inmates, etc.). But "negligent supervision" claims are no longer viable under 42 U.S.C. § 1983 post-*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), a case decided after the amended complaint was filed. Thus, Eckert can no longer be liable for being grossly negligent in his supervision of Wende staff, resulting in Taylor's harm. Allowing this claim to proceed would resurrect *respondeat superior* liability for Section 1983 claims, a premise *Tangreti* expressly rejected.

Second, Eckert was admittedly not present for the Taylor UI and thus could not have prevented any improper force used during that event. So, to survive summary judgment, Plaintiff presumably plans to argue Eckert was deliberately indifferent to the risk of someone else (i.e., Lewalski) using improper force on Taylor, causing him harm. This requires evidence that Eckert was aware of facts showing both that Lewalski posed an excessive risk of harm to Taylor, and also that Eckert drew the inference of that risk but disregarded it.

No such evidence exists. Lewalski and Taylor never interacted before the Taylor UI. Discovery has produced no evidence of any animus or hostility towards Taylor from Lewalski or any other Wende staff member either. Eckert was never warned that Lewalski was a problem

employee who used excessive or improper force, or that Lewalski was someone to keep an eye on. Plaintiff's claims that Eckert should have known Lewalski (one of 500+ officers he supervised) specifically posed a danger to Taylor is Monday-morning, armchair quarterbacking: an after-the-fact opinion based on cherry-picked documents from Lewalski's employment history viewed through the lens of this litigation. There was never any objective assessment of the evidence Eckert had available to him, let alone the evidence Eckert actually reviewed.

Objectively, Lewalski was never disciplined for using (or found by DOCCS or any other authority to have used) excessive or improper force. And when Eckert had questions about some prior UIs Lewalski was involved in, Eckert referred those matters to the DOCCS Office of Special Investigations ("OSI") for further review and action, if OSI felt discipline was appropriate. But OSI did not substantiate any claims of excessive force or similar misconduct against Lewalski, nor was any related discipline ever pursued. Plaintiff's belief that Eckert should have known Lewalski might use excessive or improper force on Taylor, let alone that he posed a substantial risk of doing so, is pure speculation.

Eckert should also be granted qualified immunity. The state of supervisory liability in the Second Circuit was in flux when the Taylor UI occurred. In fact, that standard changed between the filing of the amended complaint and the *Tangreti* decision four months later.

Eckert's actions were also objectively reasonable. Any claim that Eckert "failed" to terminate, suspend, re-assign or otherwise discipline Lewalski is ignorant at best. Even as Wende's superintendent Eckert could not change the bids, shifts, or job assignments of Wende's security staff for disciplinary reasons or for suspected misconduct. Collective bargaining restrictions and DOCCS directives prevented him from doing so. If an employee exhibited conduct Eckert believed might have violated DOCCS rules or policies, his job was to raise those

2

concerns with OSI and/or the DOCCS Bureau of Labor Relations ("BLR"), as BLR exclusively handled all disciplinary matters for DOCCS security personnel. Eckert made such OSI referrals for UIs involving Lewalski on several occasions, and he was not responsible for whether OSI referred Lewalski to BLR for disciplined after that. There is no evidence indicating Eckert was ever aware of Lewalski engaging in some ongoing criminality or other conduct that posed an imminent risk of harm to Wende I/Is such that Eckert might have asked BLR to temporarily suspend Lewalski from duty either. Plaintiff has not identified any other acts that Eckert could actually have taken that might have prevented the Taylor UI. Thus, Eckert's actions *vis-à-vis* Lewalski were objectively reasonable such that qualified immunity should attach here.

For the reasons further set forth below, the Court should grant Eckert summary judgment and dismiss Plaintiff's remaining claim against him.

## STATEMENT OF FACTS

The Court is respectfully referred to Eckert's Rule 56 Statement of Undisputed Facts ("SOF"), and the accompanying declarations, for the facts relevant to this motion.

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party cannot overcome summary judgment through self-serving "contrived assertions of disputed facts." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106-07 (2d Cir. 2011), *cert. denied* 132 S. Ct. 1744 (2012) ("To hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings (or, as here, to facts *not* alleged in their pleadings), would 'license the mendacious to seek windfalls in the litigation lottery.'"). Where, as here, the evidence produced

3

during discovery fails to add substance to the allegations of the complaint, summary judgment is appropriate. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A plaintiff seeking to defeat a motion for summary judgment, of course, must do more than make broad factual allegations and invoke the appropriate statute. The plaintiff must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.").

## ARGUMENT

### I.   ECKERT SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM.

Plaintiff's "excessive force" claim against the "Officer Defendants"[1] and Eckert was brought under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. ECF No. 57, ¶¶ 291-298. She first alleges that, on October 6, 2017, the Officer Defendants used excessive force against Taylor and/or failed to intervene against other staff that were doing the same. *Id.* ¶ 292. Plaintiff then specifically alleges Eckert:

> was personally involved in, and caused, the violation of Mr. Taylor's constitutional rights because, among other things, he was aware of the harassment and staff antipathy towards Mr. Taylor before Mr. Taylor's beating, he failed to take remedial action although the staff harassment and bullying was brought to his attention, and he was deliberately indifferent to the rights and safety of Mr. Taylor and other individuals confined at Wende. *Id.* ¶ 293.

Eckert was not present for the Taylor UI. SOF ¶ 59. Thus, while titled as an "excessive force" claim, Plaintiff's claim against Eckert seems to argues Eckert failed to properly supervise the correction staff under his control (the Officer Defendants), thereby facilitating/resulting in their using excessive or improper force on Taylor. That claims should be dismissed because:

---

[1] Collectively, defendants Lewalski, Lambert, Maldonado, Collett, White, Horbett, Janis, Creighton, Theal, Baron, McDonald, Freeman, and John Does 1-10. ECF No. 57, ¶ 37. Of this group, only the claims against Lewalski, White, Horbett and Janis remain. ECF No. 304.

4

a.  **Negligent Supervision Claims are No Longer Viable post *Tangreti.***

Shortly after Plaintiff filed her amended complaint, *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. Dec. 28, 2020) clarified the level of personal involvement necessary to state a 42 U.S.C. § 1983 claim against a supervisory employee. The Second Circuit found the five categories set forth in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), which previously set forth five options for establishing the liability of a supervisory official for a subordinate's conduct under Section 1983, had not survived *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Tangreti*, 983 F.3d at 616-18. It explained: "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own actions, has violated the constitution. . . . The violation must be established against the supervisory official directly." *Id.* at 618; *see also Faunter v. Quiros*, 2024 U.S. Dist. LEXIS 213857, at *8 (D. Conn. Nov. 25, 2024) ("*Tangreti* [ ] eliminated liability based on a supervisor's failure to supervise.").

Plaintiff specifically asserts Eckert failed to take appropriate "remedial action" with respect to security staff members he supervised (Lewalski and others), thereby exhibiting deliberate indifference to Taylor's constitutional rights. *See* ECF No. 57, ¶ 293. But *Tangreti* foreclosed that theory of liability. *Tangreti*, 983 F.3d at 620 ("it is not enough for [plaintiff] to show that [defendant] was negligent, or even grossly negligent, in [his] supervision of the correctional officers or in failing to act on the information [he] had."); *Cooper*, 2022 U.S. Dist. LEXIS 133532, at *23. Further, "an inmate has no constitutional right to have a correctional officer disciplined." *Saunders v. Doe*, 2024 U.S. Dist. LEXIS 96493, at *9-10 (D. Conn. May 30, 2024) (dismissing inmate claim alleging Warden exhibited deliberate indifference to the plaintiff's safety by failing to discipline officers under his control); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding a private citizen has no "judicially cognizable

5

interest in the prosecution or non-prosecution of another").

Therefore, the Court should grant Eckert summary judgment and dismiss Plaintiff's remaining claim Eighth Amendment claim against him, with prejudice.

### b. Plaintiff should not be Permitted to Amend Her Complaint to add a "Failure to Protect" Claim against Eckert to Circumvent *Tangreti*.

Plaintiff may try to avoid the effects of *Tangreti* by re-characterizing her "excessive force" claim as a "failure to protect" cause of action; that is, by alleging Eckert "failed to protect" Taylor from one of his subordinate officers (Lewalski). But because Eckert was not present for the Taylor UI, the result would be the same. There is no difference between alleging, "if Eckert had adequately monitored/overseen his employee (Lewalski), Eckert would have known he was problematic and likely to harm to Taylor, and Lewalski then did so" and claiming, "Eckert would have protected Taylor from his employee (Lewalski) if he had adequately monitored that employee before Taylor was harmed". The crux of Eckert's alleged failure remains the same; his purported failure to "properly" supervise Lewalski and discipline him/limit his contact with inmates, resulting in Taylor's harm.

In any event, the Court previously rejected Plaintiff's belated attempt to alter her pleading to specify "the particular defendants responsible for the alleged excessive force and those that allegedly failed to protect Taylor", an amendment which, at that time, did not even attempt to raise such a claim against Eckert. *Compare* ECF No. 299, at *2, pt.4 *with id.* at * (recommending that Plaintiff's proposed amendments be rejected as untimely under the existing case management order without an accompanying showing of good cause) *and* ECF No. 302 (adopting that recommendation). Thus, any effort by Plaintiff to similarly amend or "clarify" her "excessive force" claim as against Eckert now is also untimely, similarly lacks good cause, and should be rejected by the Court as law of the case. *See, e.g., Hamlen v. Gateway Energy Servs.*

*Corp.*, 2018 U.S. Dist. LEXIS 53287, at *5 (S.D.N.Y. 2018) (noting "law of the case doctrine is intended to keep rulings consistent throughout a litigation," and citing example of that rule being applied with respect to a magistrate judge's ruling on a motion to amend).

### c. **Eckert was not Personally Involved in the Taylor UI.**

Even if the Court were to construe Plaintiff's remaining claim as one of Eckert's "failure to protect" Taylor, it still fails as a matter of law. The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Brown v. Chappius*, 2016 U.S. Dist. LEXIS 107149, at *17 (W.D.N.Y. 2016). These "failure to protect" claims have two elements: the plaintiff must first show his conditions of confinement objectively posed an unreasonable risk of serious harm to their current or future health, and second, that the defendant acted with deliberate indifference towards that risk. *See Cooper v. Sheahan*, 2022 U.S. Dist. LEXIS 133532, at *34 (W.D.N.Y. 2022).

Personal involvement in an alleged constitutional violation is a prerequisite to liability under Section 1983. *Smith v. Conway*, 2013 U.S. Dist. LEXIS 111974, at *56 (W.D.N.Y. 2013) (citing *Spavone v. NYS Dep't of Corr. Svs.*, 719 F.3d 127, 137 (2d Cir. 2013)). And "a supervisor's liability in a § 1983 action cannot rest on *respondeat superior*," meaning the Plaintiff "must show the defendant's personal involvement in the alleged constitutional violation." *Id.* (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).

Plaintiff cannot show Eckert's personal involvement in the Taylor UI sufficient to maintain a Section 1983 claim against him. Eckert was not present when the Taylor UI. SOF ¶ 59. Nor did Eckert have any prior notice of a threat to Taylor's safety such that Eckert could be said to have failed to assess that threat and respond to it appropriately. SOF ¶ 60.

Eckert had no prior notice (from his superiors or staff under his control) that Lewalski or

7

any other Wende officers potentially posed any risk of harm to Taylor at any point either. *See id.* There is no evidence of any complaints of staff abuse or harassment having been made by Taylor contemporaneous to the UI or his death. But even if such a grievance had been made, and even if Eckert had reviewed and denied that grievance, that would still not be enough to establish his personal involvement under Section 1983. *See, e.g., Weston v. Bayne*, 2023 U.S. Dist. LEXIS 111615, at *13-14 (N.D.N.Y. 2023) (granting motion to dismiss claim against prison superintendent for lack of personal involvement under *Tangreti* standard involving alleged deficiencies an inmate's medical care where that individual was not involved int that care other than denying a related grievance).

Eckert's sole connection to the Taylor UI is that he was Wende's superintendent when it occurred, and Plaintiff believes Eckert should have acted differently towards one of his employees (Lewalski) before then. Such allegations are not sufficient to sustain a constitutional claim against Eckert. *Tangreti*, 983 F.3d at 617-19. Therefore, if considered, Plaintiff's "failure to protect" claim against Eckert should be dismissed for his lack of personal involvement.

### d. Taylor was not Incarcerated under Conditions Posing a Substantial Risk of Serious Harm prior to the Taylor UI.

Plaintiff also cannot establish either substantive element of his failure to protect claim. First, there is no objective evidence that Taylor was incarcerated under conditions posing a substantial risk of serious harm prior to the October 6, 2017 UI. *Salaam v. Stock*, 2023 U.S. Dist. LEXIS 32017, at *13-14 (N.D.N.Y. 2023) (citing *Farmer*, 511 U.S. at 834).

To sustain an Eighth Amendment claim, there must be evidence that the condition complained of was (objectively) "sufficiently serious," meaning one that "may produce death, degeneration, or extreme pain," and, the plaintiff must further show "that this grave harm was actual or imminent." *Hill v. Annucci*, 2019 U.S. Dist. LEXIS 205537, at *11 (N.D.N.Y. 2019).

8

Plaintiff must also show that substantial risk of harm arose from either "a specific assailant or a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive [or] well-documented." *Camacho v. Dubois*, 2022 U.S. Dist. LEXIS 228092, at *12 (S.D.N.Y. 2022).

Discovery has produced no evidence that Taylor personally faced an actual, imminent risk of substantial harm from any specific source before the Taylor UI. Nor is there any evidence that conditions at Wende generally (or in Taylor's block) suggested Taylor faced a heightened risk of assault based on longstanding, pervasive, or other well-documented attacks by staff or inmates, such that this notice could be imputed to a specific defendant like Eckert.

Discovery has produced no evidence that Taylor faced a specific risk of being assaulted by Lewalski. Lewalski had no history with Taylor, and their first interaction appears to have been the medical emergency that immediately precipitated the Taylor UI. SOF ¶ 93. Lewalski was involved in several UIs during Eckert's time as Superintendent where force was used on an inmate and those incidents investigated by OSI. SOF ¶¶ 98-100. But none of those instances involved Taylor or anyone associated with Taylor. SOF ¶ 93. Before the Taylor UI, Eckert was not aware of Lewalski having ever been disciplined for using unnecessary or excessive force, or for otherwise being violent towards I/Is. SOF ¶ 107. Lewalski's prior disciplinary infractions for insubordination and abuse of sick leave (SOF ¶ 97) were not indicative of any propensity to use excessive or improper force against I/Is either. *See, e.g., Laws v. Cleaver*, 140 F. Supp. 2d 145, 145 (D. Conn. 2001) (citing *Ricketts v. City of Hartford*, 74 F.3d, 1397, 1414 (2d Cir. 1996)) (holding trial court properly excluded evidence of prior disciplinary incidents, noting "the Second Circuit has stated that 'we would consider it an abuse of discretion to admit similar act evidence if the other act were not sufficiently similar to the conduct at issue.").

Therefore, objectively, Taylor was not incarcerated under conditions that posed to him a substantial risk of serious harm, whether that risk was allegedly created by Lewalski, some other unnamed Wende staff member or I/I, or conditions at the jail generally.

### e.    Eckert was not Deliberately Indifferent to any Substantial Risk of Serious Harm to Taylor.

Nor was Eckert deliberately indifferent to any substantial risk of serious harm faced by Taylor prior October 6, 2017, assuming one ever existed. *See, e.g., Glover v. Doe*, 2022 U.S. Dist. LEXIS 123943, at **7-8 (W.D.N.Y. 2022) (to show deliberate indifference, the prison official must "both be aware of facts from which [an] inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw that inference.'). In the Section 1983 context, the mental state of deliberate indifference is "equivalent to subjective recklessness, as that term is used in criminal law." *Id.* (citing *Salahuddin v. Goord*, 467 F.3df 263, 280 (2d Cir. 2006)).

There is no record of Eckert communicating with Taylor during the nineteen months that Eckert was superintendent at Wende before the Taylor UI. Discovery has also produced no evidence (such as written or verbal complaints) that Taylor feared being assaulted by Wende staff in the time contemporaneous to his death, or, if Taylor harbored such fears, that they were ever communicated to/known by Eckert. SOF ¶ 108. Plaintiff's allegations that Eckert knew Taylor faced a serious risk of being assaulted by staff due to their "animus and hostility" (ECF No. 57, ¶ 293) is completely conclusory and lacks any factual support in the record. *See Cooper*, 2022 U.S. Dist. LEXIS 133532, at *27-28 (holding plaintiff's "metaphysical speculation as to [defendant's] state of mind and as to the chain of causation leading to the [attack] does not constitute evidence from which a reasonable jury could find [defendant] liable.").

Eckert was also not aware of, nor did he consciously disregard, any alleged risk of harm Lewalski might have posed to Taylor. Prior to becoming Wende's superintendent Eckert was

10

briefed by DOCCS higher-ups in Albany who discussed various facility-specific issues with him. SOF ¶¶ 15-18. Eckert was not told any Wende officers had violent tendencies or a propensity to attack I/Is, or that staff's excessive or improper use of force on I/Is was an ongoing problem there. *See id.* No one at Wende told Eckert otherwise after he started either. *Id.* Nor was Eckert told to monitor or look into Lewalski or any specific Wende staff member for using excessive or improper force. *Id.*

Lewalski had no history of being disciplined for using excessive or improper force such that Eckert would have known of or learned about by reviewing Lewalski's personal file. SOF ¶ 107. Eckert had no knowledge of any prior lawsuits or settlements against Lewalski where the use of excessive force was alleged or proven. SOF ¶ 102. The Superintendent's grievance tracking system that had been put into place around January 2014 showed only two grievances against Lewalski prior to the October 6, 2017 UOF. SOF ¶¶ 94-96. And the documentation from the UIs related to those grievances provided Eckert with no evidence of misconduct by Lewalski either, and neither incident was referred to OSI for further investigation. *See id*.

In summary, Plaintiff has no evidence that Eckert knew about, was complicit in, or should otherwise be responsible for, the alleged wrongdoing of other Wende employees, such as Lewalski. *See, e.g., Mitchell v. Chappius*, 2024 U.S. Dist. LEXIS 173597, at *58-60 (W.D.N.Y. Sept. 25, 2024) (granting summary judgment dismissing failure to protect claim against prison superintendent because there was no evidence that Superintendent Eckert was deliberately indifferent to staff brutality at Wende, nor evidence that he was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed). Truly, this case stands in stark contrast to others where an issue of fact was found as to a prison Superintendent's deliberate indifference concerning the risk a correction officer posed to an inmate where that

11

officer had been repeatedly identified to that Superintendent as a problem employee with a propensity for using excessive or improper force, but those warnings were ignored. *See, e.g., Ramsay-Nobles v. Keyser*, 2019 U.S. Dist. LEXIS 147693, at \*45-48 (S.D.N.Y. 2019) (issue of fact existed on deliberate indifference prong where prison Superintendent was initially warned about a specific officer's propensity to use excessive or improper force on multiple occasions before taking his job, the Superintendent was told to "pay closer attention to" any uses of force by that officer, then subsequently failed to review any uses of force by that officer, and was later asked to compile a list of the officer's uses of force over the past two years, after which the Superintendent still failed to review those incidents).[2]

Even if Eckert had suspected Lewalski was guilty of misconduct during specific UIs reports he reviewed, Eckert could not personally discipline, suspend, or reassign Lewalski (SOF ¶¶ 70-71, 76), so he took the only steps that were available to him. Namely, in such cases Eckert referred those incidents to OSI for its investigation. SOF ¶¶ 98-100. Whatever happened after that (such as if OSI investigated and found no evidence of malfeasance, or if OSI found potential malfeasance, forwarded it to BLR, and BLR subsequently took no disciplinary action) was out of Eckert's control. SOF ¶¶ 73-76, 101. Eckert had no ability to suspend Lewalski or move him to a non-inmate contact position for disciplinary reasons or suspected misconduct (even temporarily) even if he had wanted to. SOF ¶¶ 70-71, 76.

While Eckert could theoretically have called BLR to ask that Lewalski be locked out,

---

[2] It is highly doubtful that even with this extreme factual scenario similar claims against a prison superintendent would survive *Tangreti*, as the supervisory claims in the *Ramsay-Nobles* case relied on the very same "grossly negligent supervision" theory of liability that *Tangreti* did away with. *See Ramsey-Nobles*, 2019 U.S. Dist. LEXIS 147693, at \*54-55 (citing *Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002)). Moreover, the Court's findings in *Ramsay-Nobles* relied heavily on the unopposed expert opinion of Joseph Ponte, former commissioner of the NYC Department of Corrections, who made claims about what disciplinary or other remedial actions the defendant superintendents should have done pending an investigation into staff misconduct (*see id.* at \*50-51, 60-61), acts that Eckert and his expert have explained were not actually available to him. SOF ¶¶ 61-85.

placed on administrative leave, or otherwise placed in a non-inmate contact post pending an investigation into suspected misconduct, Eckert never had grounds to make such a request. SOF ¶ 109. Specifically, there is no evidence that Eckert was aware of Lewalski being engaged in ongoing criminal conduct, or that Eckert knew Lewalski posed an imminent threat to the safety or security of the inmates or staff at Wende such that his seeking Lewalski's immediate removal from his bid job would have been warranted. *See id.* While Plaintiff might subjectively disagree based on his expert's litigation-skewed, after-the-fact review of Lewalski's entire employment history, there is certainly no evidence that Eckert was aware of and personally drew the inference Lewalski posed a substantial risk of harm to Taylor, and then acted with criminal reckless with respect to such a risk. *Glover*, 2022 U.S. Dist. LEXIS 123943, at *7-8.

Therefore, there is no evidence that Eckert was deliberately indifferent to any risk of harm that Taylor faced during his time at Wende. Plaintiff's claim against Eckert fails on the merits and should be dismissed as a matter of law.

## II.    ECKERT IS ENTITLED TO QUALIFIED IMMUNITY.

The Court should also find Eckert is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Cuomo*, 2023 U.S. Dist. LEXIS 97669 (W.D.N.Y.) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The issues on qualified immunity are: (1) whether the plaintiff has shown facts making out a violation of a constitutional right; (2) if so, whether the right was 'clearly established'; and (3) even if the right was 'clearly established', whether it was 'objectively reasonable' for the office to believe the conduct at issue was lawful." *Id.* (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)).

13

Qualified immunity is a "demanding standard" which "protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015) (similarly, as the Second Circuit explained, "[t]he qualified immunity defense provides ample protection to all but the plainly incompetent or those who knowingly violate the law . . . if officers of reasonable competence could disagree on the issue, immunity should be recognized."). Where the material facts are undisputed, the issue of whether qualified immunity applies should be determined as a matter of law. *Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006).

### a. The Level of Personal Involvement Sufficient to Maintain a Section 1983 Claim based on a Supervisory Liability Theory was not Clearly Established.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

"To be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Gibson*, 2023 U.S. Dist. LEXIS 97669, at *23 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts consider whether: "(1) the right was defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has confirmed the existence of that right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Id.* (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). This consideration should be made "in light of the specific context of the case, not a broad general proposition. *Id.*

"[T]he *Tangreti* court specifically stated that 'the scope of supervisory liability under § 1983 for violations of the Eighth Amendment was not clearly established at the time of the relevant conduct.' " *Santos v. Wood*, 2022 U.S. Dist. LEXIS 56079, at *36-37 (W.D.N.Y. Mar.

14

28, 2022) (citing *Tangreti*, 983 F.3d at 620)) (dismissing supervisory liability claim on qualified immunity grounds for events occurring from October 2018 through August 2021).

The UI at issue occurred on October 6, 2017. The scope of Eckert's potential supervisory liability was not clearly established at that time. Nor did Taylor have a clearly established right to be protected from a certain correction officer Plaintiff's attorneys now argue was dangerous, based on their after-the-fact assessment of the incident and review of Lewalski's entire employment and litigation history. This is particularly true because even that information does not suggest any incident involving Taylor and Lewalski was likely to occur on October 6, 2017, or, if such information existed, that it was known by Eckert before that incident occurred.

### b. **Eckert's Conduct was Objectively Reasonable.**

Eckert is also entitled to qualified immunity if it was objectively reasonable for Eckert to believe that his acts did not violate the plaintiff's constitutional rights. *Goodwin v. Napoli*, 2016 U.S. Dist. LEXIS 122572, at *28-*29 (W.D.N.Y. 2016). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995).

Eckert could not have understood that his conduct violated Plaintiff's constitutional rights. It was reasonable for Eckert to comply with DOCCS procedures for the investigation into allegations of staff misconduct, and to defer to OSI and BLR for their decisions of whether discipline should be pursued, and/or whether Lewalski's conduct warranted the immediate removal from his job. Eckert had no authority to unilaterally suspend, remove, terminate, or alter the job duties of Wende security staff for disciplinary reasons or suspected misconduct, even temporarily. SOF ¶¶ 77-79. If Eckert suspected staff misconduct or otherwise felt an incident involving significant inmate injuries warranted further investigation, he was required to refer that

15

matter to OSI for its investigation, and, if appropriate, OSI would make a report of misconduct to BLR, who would ultimately decide whether discipline should follow. SOF ¶¶ 35-36, 70-80. He did that. Plaintiff identifies no actions Eckert could have actually taken to (objectively) reduce the risk of harm Lewalski posed to Taylor before the UI at issue occurred.

But even if Eckert had been afforded the discretion to decide whether to move or not move staff members from non-inmate contact positions and chose not to do so based on his subjective assessment of that risk, that would not change his entitlement to qualified immunity. *See Cummings v. Paterson*, 2021 U.S. Dist. LEXIS 116528, at \*21-22 (W.D.N.Y. 2021) ("Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities."). Supervisors of reasonable competence might disagree on the merits of discretionary personnel decisions, such as what should be done with one employee out of hundreds based on their subjective interpretations of the documents reflecting that person's employment history. But in cases like this where a supervisor like Eckert had no such discretion and lacked the authority to the very thing on which Plaintiff's failure to protect claim hinges (i.e. the ability to remove certain staff members from inmate contact positions through disciplinary means or otherwise), it cannot be argued that, objectively, Eckert acted unreasonably by failing to take acts he had no ability to take.

Therefore, Eckert should be granted qualified immunity from Plaintiff's remaining Eighth Amendment claim.

## **CONCLUSION**

Therefore, Defendant Eckert's motion for summary judgment should be granted and the

Plaintiff's claims against him should be dismissed, with prejudice.


Dated: January 21, 2025
       Buffalo, New York


                              LETITIA JAMES
                              Attorney General of the State of New York
                              *Attorney for Defendant Eckert*

                    By:    */s/ Joel J. Terragnoli*
                           JOEL J. TERRAGNOLI
                           Assistant Attorney General of Counsel
                           Main Place Tower, Suite 300A
                           350 Main Street
                           Buffalo, NY 14202
                           (716) 853-8449
                           Joel.Terragnoli1@ag.ny.gov